IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NATIONAL SHOOTING | ) | |
| SPORTS FOUNDATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:11-cv-01401 (RMC) |
| KENNETH MELSON, | ) | |
| Acting Director, | ) | **ORAL ARGUMENT REQUESTED** |
| BUREAU OF ALCOHOL, | ) | |
| TOBACCO, FIREARMS & EXPLOSIVES | ) | |
| | ) | |
| Defendant | ) | |

_____

**THE NATIONAL SHOOTING SPORTS FOUNDATION'S
MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

_____

M. King Hill, III (D.C. Bar No. 462966)
Vincent E. Verrocchio (D.C. Bar No. 460429)
VENABLE LLP
575 7th Street, NW
 Washington, DC 20004
(202) 344-4496
mkhill@venable.com
veverrocchio@venable.com

James B. Vogts (admitted *pro hac vice*)
Andrew A. Lothson (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611
(312) 923-8266
jvogts@smbtrials.com
alothson@smbtrials.com

Lawrence G. Keane (admitted *pro hac vice*)
NATIONAL SHOOTING SPORTS FOUNDATION, INC
Flintlock Ridge Office Center
11 Mile Hill Road
Newtown, CT 06470-2359
(203)426-1320
lkeane@nssf.org

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………..1

STATEMENT OF FACTS…………………………………………………………………..1

1.   ATF'S LETTER DEMAND FOR INFORMATION
     ON FIREARM SALES………………………………………………………………....1

2.   RECORDS THAT FIREARMS LICENSEES MUST PREPARE
     AND KEEP REGARDING SALES TRANSACTIONS AND
     RECORD INFORMATION THEY MUST REPORT TO ATF
     UNDER THE GUN CONTROL ACT……………………………………………………3

     A.   Records That Federally Licensed Firearms Dealers Must
          Prepare and Keep As Part of Their Records……………………………………....3

     B.   Reports That Federally Licensed Firearms Dealers
          Must Submit to ATF…………………………………………………………………4

3.   FEDERAL FIREARMS LICENSEES ARE NOT REQUIRED BY
     STATUTE OR REGULATION TO TRACK MULTIPLE SALES OF
     RIFLES OR PREPARE RECORDS REFLECTING THOSE SALES…………………...6

4.   ATF'S LETTER DEMAND FOR INFORMATION ON MULTIPLE
     RIFLE SALES REQUIRES THAT RECORD INFORMATION BE SENT
     TO A GOVERNMENT FACILITY……………………………………………………8

ARGUMENT………………………………………………………………………………...9

1.   STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF…………………………9

2.   NSSF IS LIKELY TO SUCCEED ON THE MERITS OF ITS
     CLAIM THAT ATF HAS EXCEEDED ITS AUTHORITY
     AND VIOLATED FEDERAL LAW…………………………………………………10

     A.   Congress Has Plainly Stated That Licensees Are Only Required
          to Submit Information From Records to ATF That Congress
          Expressly Required Them to Submit Under the Gun Control Act………………12

     B.   Congress Has Prohibited ATF From Prescribing a Rule After
          Enactment of the FOPA That Requires Records or Record
          Information to Be Sent to a Government Facility………………………………..17

3.   NSSF MEMBERS WILL SUFFER IRREPARABLE
     INJURY ABSENT INJUNCTIVE RELIEF…………………………………………..19

A.      Imminent, Non-recoverable Pecuniary Losses Caused
        By Federal Agency Action Constitute Irreparable Harm *Per Se*………………..19

B.      Federally-Licensed Firearms Dealers Located in California,
        Texas, Arizona and New Mexico Have Been and Will Continue
        To Be Irreparably Injured by ATF's Demand For Reports on Multiple
        Sales of Certain Rifles……………………………………………………………...21

4.   THE REMAINING PRELIMINARY INJUNCTION
     FACTORS FAVOR NSSF………………………………………………………………22

CONCLUSION………………………………………………………………………………………24

## TABLE OF AUTHORITIES

## CASES

*American Arms Int'l. v. Herbert*,
563 F.3d 78 (4th Cir. 2009)……………………………………………………….3

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166 (D.C. Cir. 2003)…………………………………………………11

*Amalgamated Transit Union, AFL-CIO v. Brock*,
809 F.2d 909 (D.C. Cir. 1987)………………………………………………...12

*American Airlines v. Dept. of Transportation*,
202 F.3d 788 (5th Cir. 2000)……………………………………………………18

*American Methyl Corp. v. EPA*,
749 F.3d 826, 835-36 (D.C. Cir. 1995)…………………………………….…13

*Amoco Prod. Co. v. Gambell*,
480 U.S. 531 (1987)……………………………………………………………..22

*Article II Gun Shop, Inc. v. Gonzales*,
441 F.3d 492 (7th Cir. 2006)…………………………………………………...3

*Brendsel v. Office of Fed. Hous. Enter. Oversight*,
339 F.Supp.2d 52 (D.D.C. 2004)……………………………………………..19

*Blaustein & Reich, Inc. v. Buckles*,
365 F.3d 281 (4th Cir. 2004)……………………………………….………14, 15, 16

*Blum v. Schlegel*,
830 F.Supp. 712 (W.D.N.Y.1993) *aff'd,* 18 F.3d 1005 (2d Cir. 1994)…………………..19

*Bracco Diagnostics v. Shalala*,
963 F.Supp. 20 (D.D.C. 1997)………………………………………………..20

*Chamber of Commerce v. Edmondson*,
594 F.3d 742 (10th Cir. 2010)………………………………………..…...21, 22

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995)………………………………………………….9, 19

*City of West Chicago v. U.S. Nuclear Regulatory Commission*,
701 F.2d 632 (7th Cir.1983)………………………………………………..18

*Clarke v. Office of Fed. Housing Enter. Oversight*,
    355 F.Supp.2d 56 (D.D.C. 2004)……………………………………………...20

*Colo. River Indian Tribes*,
    383 F.Supp.2d 123 (D.D.C. 2005)……………………………………………12

*Cuomo v. United States Nuclear Regulatory Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985)……………………………………………...10

*Davis v. Michigan Dept. of Treasury*,
    489 U.S. 803 (1989)………………………………………………………...16

*Davis v. Pension Benefit. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009)……………………………………………10

*Elipso, Inc. v. Mann and Mann Tech.*,
    480 F.3d 1153 (D.C. Cir. 2007)……………………………………………...9

*Express One Int'l, Inc. v. U.S. Postal Serv.*,
    814 F. Supp. 87 (D.D.C. 1992)……………………………………………..20

*\*FDA v. Brown & Williamson*,
    529 U.S. 120 (2000)……………………………………………………11, 16

*FDIC v. Meyer*,
    510 U.S. 471 (1994)……………………………………………………..20

*\*Feinerman v. Bernardi*,
    558 F.Supp.2d 36  (D.D.C. 2008)……………………………………19, 20

*Fund for Animals v. Clark*,
    27 F. Supp. 2d 8 (D.D.C. 1998)……………………………………………23

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997)……………………………………………...17

*Hercules v. EPA*,
    598 F.2d 91 (D.C.Cir.1978)……………………………………………...18

*Indep. Ins. Agents of Am., Inc. v. Hawke*,
    211 F.3d 638 (D.C. Cir. 2000)……………………………………………...13

*In re Griffith*,
    206 F.3d 1389 (11th Cir. 2000)……………………………………………13

v

*Jasperson v. Fed. Bureau of Prisons*,
  460 F.Supp.2d 76 (D.D.C. 2006)……………………………………………...12

*\*J & G Sales, Ltd. v. Truscott*,
  473 F.3d 1043 (2007)…………………………………………………14, 15, 16

*Lyng v. Payne*,
  476 U.S. 926, 937 (1986)………………………………………………………..10

*McGregor Printing Corp. v. Kemp*,
  1992 WL 118794 (D.D.C. May 14, 1992)……………………………………………23

*Motion Picture Ass'n of America v. Oman*,
  969 F.2d 1154 (D.C. Cir. 1992)………………………………………………18

*\*Nalco Co. v. U.S. EPA*,
  No. 11-760, 2011 WL 1882397 (D.D.C. May 18, 2011)…………………………10, 17

*Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*,
  963 F. Supp. 1 (D.D.C. 1997)………………………………………………23

*Pilon v. United States*,
  73 F.3d 1111 (D.C. Cir. 1996)………………………………………………...10

*Port Auth. v. U.S. Dep't of Transp.*,
  479 F.3d 21 (D.C. Cir. 2007)………………………………………………12

*Qi-Zhuo v. Meissner*,
  70 F.3d 136 (D.C. Cir. 1995)………………………………………………17

*\*RSM, Inc. v. Buckles*,
  254 F.3d 61 (4th Cir. 2001)……………………………………………...13, 14, 16

*Sampson v. Murray*,
  415 U.S. 61 (1974)………………………………………………………19

*Serono Lab., Inc. v. Shalada*,
  158 F.3d 1313 (D.C. Cir. 1998)………………………………………………9

*\*Smoking Everywhere, Inc. v. FDA*,
  680 F.Supp.2d 62 (D.D.C. 2010)………………………………………………..20

*Stark v. Wickard*,
  321 U.S. 288 (1944)………………………………………………………..10

vi

*United States v. Canals-Jimenez*,
943 F.2d 1284  (11th Cir. 1991)……………………………………….......11

*United States v. Menasche*,
348 U.S. 528 (1955)……………………………………………………..11

*United States v. New York*,
708 F.2d 92 (2d Cir.1983) (*per curiam*), *cert. denied,* 466 U.S. 936 (1984)……………19

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)…………………………………………………………9

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977)……………………………………………...10

*Wieck v. Sterenbuch*,
350 A.2d 384 (D.C. Cir. 1976)……………………………………………..19

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008)……………………………………………………..9, 10

*Woerner v. U.S. Small Bus. Admin.*,
739 F. Supp. 641 (D.D.C. 1990)……………………………………………20

*Yesler Terrace Community Council v. Cisneros*,
37 F.3d 442 (9th Cir. 1994)……………………………………………...18

## FEDERAL STATUTES

Administrative Procedure Act,

5 U.S.C. §702…………………………………………………………21
5 U.S.C. §706(2)(C)…………………………………………………..11

The Gun Control Act, 18 U.S.C. §921 *et seq*.,

18 U.S.C. §921(a)(7)……....……………………………………………7
18 U.S.C. §922(b)(1)……………………………………………………7
18 U.S.C. §923(e)……………………………………………...…21, 22
18 U.S.C. §923(g)(1)(A)………………………………………..…..passim
18 U.S.C. §923(g)(2) *et seq*……………………………………4, 6, 15, 16
18 U.S.C. §923(g)(3) *et seq*…………………………………………passim
18 U.S.C. §923(g)(4)………………………………………………6, 16
18 U.S.C. §923(g)(5)(A)……………………………………………passim
18 U.S.C. §923(g)(6)………………………………………………...4, 6

18 U.S.C. §923(g)(7)……………………………………………………...6, 13, 16
18 U.S.C. §924 *et seq*……………………………………………………….3, 21, 22
18 U.S.C. §926(a)……………………………………………………..passim

Federal Tort Claims Act,

    28 U.S.C. 2680(a)……………………....……………………………………..21

## OTHER

Cal. Penal Code §12072(a)(9)……………………………………………………….8

The Consolidated Appropriations Act,
    2010, Pub.L. 111-117, div. B, tit. 2, 123 Stat. 3034, 3128 (2009)………………………18

The Department of Defense and Full-Year Continuing Appropriations Act
for the 2011 fiscal year,
    Pub.L. 112-10, div. B., tit. 1, § 1101(a)(6), 125 Stat. 38, 102-03 (2011)………………18

131 Cong. Rec. S0171 (daily ed. July 9, 1985)…………………………………………..5

27 CFR Part 478 *et seq*.,

    27 CFR Part 478.124(c)(1)………………………………………………………3, 4
    27 CFR Part 478.125(e)………………………………………………………4, 8
    27 CFR Part 478.126(a)………………………………………………………...4
    27 CFR Part 478.39(a)………………………………………………………….4

75 Fed. Reg. 79,021 (2010)………………………………………………………...23

76 Fed. Reg. 24,058 (2011)………………………………………………………...23

Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*,
    17 CUMB. L. REV. 585 (1986)……………………………………………………….5

## PRELIMINARY STATEMENT

The National Shooting Sports Foundation, Inc. ("NSSF") seeks to preliminarily enjoin Kenneth Melson, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), from requiring that all federally licensed firearms dealers and pawnbrokers in Arizona, California, New Mexico and Texas report information regarding multiple sales of certain rifles to the same person at one time or during five consecutive business days. ATF is statutorily prohibited from demanding these reports from federal firearms licensees. ATF may only demand information regarding firearms sales that licensees are expressly required by statute or regulation to report.  There is no statutory or regulatory requirement that federal firearms licensees prepare and keep records of sales of multiple sales of rifles to the same person or report information regarding those sales to ATF.  ATF's demand for this information has created a new extra-statutory recordkeeping and reporting requirement that some but not all federal firearms licensees must satisfy.  As a result, ATF's actions are in violation of the Gun Control Act, 18 U.S.C. §921 *et seq*., and should be enjoined.

## STATEMENT OF FACTS

### 1.      ATF'S LETTER DEMAND FOR INFORMATION ON FIREARM SALES

By letter dated July 12, 2011, the ATF demanded that all federally licensed firearms dealers and pawnbrokers in Arizona, California, New Mexico and Texas do the following:

> [S]ubmit to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) reports of multiple sales or other dispositions whenever, at one time or during five consecutive business days, you sell or otherwise dispose of two or more semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber) to an unlicensed person. You are required to report all such sales that occur on or after **August 14, 2011**. You must continue reporting multiple sales for the rifles subject to this demand letter until we provide notice to stop.

1

> The required information must be submitted on ATF Form 3310.12, Report of Multiple Sale or Disposition of Certain Rifles, no later than the close of business on the day the multiple sale or other disposition takes place.

(Verified Complaint, ¶ 7, Dkt. 1 ("Ver. Comp.")).  The information demanded includes the dates on which the rifles were sold; the firearm dealer's business or trade name; the name, address, sex, race and date of birth of the buyer; and the model, serial number, manufacturer and caliber of the rifles.  The reports are to be sent to ATF's National Tracing Center, where the information on the sale and ownership of the rifles will be recorded in a government database.[1]

The letter was sent to approximately 8,500 licensees in the four states, including 789 NSSF members doing business as retail firearms dealers. (Ver. Comp., ¶¶ 2 & 8, Dkt. 1).  ATF's stated reason for demanding this information is to "assist its efforts in investigating and combating the illegal movement of firearms along and across the Southwest border" (Ver. Comp., Dkt. 1).  More specifically, ATF has stated that the information it collects will be "used to determine whether the buyer (transferee) may be involved in unlawful activity, such as straw purchasing." *Id.*  ATF has not indicated that its demand for information is made in the context of ongoing criminal investigations into the business activities of any one of the more than 8,500 licensees who received the letter or into the activities of any buyer of rifles from these licensees.  In fact, ATF has acknowledged that the information it receives from approximately 8,500 retail

---

[1]      The firearms that are subject to the reporting requirement include many of the most commonly used firearms for sporting purposes, including target shooting and hunting.  *See* www.nssf.org/share/PDF/MSR_Consumer_Report%20210.pdf.  Pejoratively and wrongly described by some as "assault weapons", these rifles are simply semi-automatic rifles that are designed to fire just one round fed from a detachable magazine with each pull of the trigger.  They are purchased in substantial numbers by law-abiding citizens and used for lawful sporting purposes in Arizona, California, New Mexico and Texas, and across the country.

2

sellers on multiple rifle sales will be used to determine if criminal investigations should be initiated against buyers, not to further ongoing investigations. [2]

Because ATF has stated that compliance with this reporting requirement is mandatory and required under 18 U.S.C. §923, any failure to comply with ATF's demand would subject a licensee to criminal penalties, including fines and imprisonment under 18 U.S.C. §924. Licensees would also be subject to license revocation, even if a failure to comply was inadvertent or *de minimis*. "A single uncontested violation of the regulatory requirements of the [GCA] suffices to uphold a firearms license revocation. . . ." *American Arms Int'l. v. Herbert*, 563 F.3d 78, 86 (4th Cir. 2009).[3]

## 2. RECORDS THAT FIREARMS LICENSEES MUST PREPARE AND KEEP REGARDING SALES TRANSACTIONS AND RECORD INFORMATION THEY MUST REPORT TO ATF UNDER THE GUN CONTROL ACT

### A. Records That Federally Licensed Firearms Dealers Must Prepare and Keep As Part of Their Records.

Federal law expressly specifies the records that federal firearms licensees must prepare and keep as part of their records. Under 18 U.S.C. §923 and corresponding regulations found at 27 CFR Part 478 Subpart H, federal firearms licensees are required to prepare and keep the following records regarding sales of firearms to unlicensed persons:

- A Firearms Transaction Record, Form 4473. This record shows the buyer's name, sex, residence address, date, place of birth, height, weight, race, country of

---

[2] *See* Information Collection Request, Supporting Statement, Department of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives, ¶A.2., at www.atf.gov/firearms/industry/051711-supporting-ststement-multiple-sales-rifles.pdf (last visited on August 15, 2011).

[3] Courts have rejected claims made in license revocation proceedings that licensee violations of the Gun Control Act were inadvertent when it is shown that the licensee was aware of its legal obligation and was plainly indifferent to a record keeping requirement. *See, e.g.*, *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497-98 (7th Cir. 2006).

citizenship, INS-issued alien or admission number, state of residence and the certification of the seller that the buyer is not prohibited from purchasing the firearm. 27 CFR Part 478.124(c)(1);

- A bound permanently maintained record of the seller's receipt and disposition of firearms. This record includes the date each firearm was received, the name and address from whom the firearm was received, and the manufacturer, model, serial number and caliber or gauge of the firearm. The record also must include the date on which the firearm was sold and the name and address of the buyer. 18 U.S.C. §923(g)(2); 27 CFR Part 478.125(e);

- A record of sales of two or more pistols or revolvers to an unlicensed person at one time or during any five consecutive business days. 18 U.S.C. §923(g)(3)(A); 27 CFR Part 478.126(a); and

- A record documenting the theft or loss of a firearm from the licensee's inventory. 18 U.S.C.§923(g)(6); 27 CFR Part 478.39a.

There is no statutory or regulatory requirement that federally licensed firearm dealers prepare and keep a record reflecting multiple sales of rifles to the same person during five consecutive business days.

### B.    Reports That Federally Licensed Firearms Dealers Must Submit to ATF.

Section 923(g)(1)(A) of the Gun Control Act provides that federal firearms licensees shall be required to submit reports and information from their records only "as expressly required by this section:"

Each licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form,

4

as the Attorney General may by regulations prescribe. *Such importers, manufacturers, and dealers shall not be required to submit to the Attorney General reports and information with respect to such records and the contents thereof, except as expressly required by this section.*

18 U.S.C. §923(g)(1)(A) (emphasis added).  This provision became law in 1986 with the passage of the Firearms Owners Protection Act ("FOPA"), which amended the Gun Control Act and was generally intended to reduce the regulatory burdens on licensed sellers and law-abiding firearms owners.  Section 923(g)(1)(A) and a parallel requirement in §926(a) that rules and regulations prescribed under the Gun Control Act be "necessary to carry out" its provisions were added to "provide[] needed guarantees against . . . incidents of regulatory overstepping in the future . . . . [R]egulations must be necessary as a matter of fact, not merely reasonably necessary as a matter of judgment".  131 Cong. Rec. S0171 (daily ed. July 9, 1985). The provisions were added to the Gun Control Act to ensure that rules and regulations adopted under Act "represent the least restrictive method of carrying out the intent of the law." *Id.*[4]

Section 923(g) requires federally licensed firearms dealers to submit the following reports and information to ATF:

- A report reflecting the sale of two or more two or more pistols or revolvers to an unlicensed person at one time or during any five consecutive business days must be submitted to the ATF and the state or local law enforcement agency in the jurisdiction where the sale took place by the close of business on the day of the multiple sale.  18 U.S.C. §923(g)(3)(A).

---

[4]    *See* Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 Cumberland Law Review 585 (1986) for a comprehensive summary of the legislative history of FOPA.

-   When a licensee goes out of business, its records are to be delivered within 30 days to ATF's Out-of-Business Records Center.  18 U.S.C. §923(g)(4).

-   A report reflecting the theft or loss of a firearm from the licensee's inventory must be submitted to ATF and local law enforcement authorities within 48 hours of discovery of the theft or loss.  18 U.S.C. §923(g)(6).

-   A report of "information . . . as may be required for determining the disposition" of a firearm when requested "in the course of a bona fide criminal investigation".  18 U.S.C. §923(g)(7). This is the statutory provision conferring authority in ATF to request firearms trace information from federal firearm licensees. [5]

Lastly, ATF has statutory authority to demand by letter "all record information required to be kept" by licensees under the Gun Control Act, or "lesser record information" for a specified "period" and at a specified "time".  18 U.S.C. §923(g)(5)(A). Reconciliation of ATF's statutory demand letter authority under §923(g)(5)(A) with the restriction on ATF's authority in §923(g)(1)(a), prohibiting it from requiring reports and information "except as expressly required" by §923(g) lies at the heart of this case.

### 3.    FEDERAL FIREARMS LICENSEES ARE NOT REQUIRED BY STATUTE OR REGULATION TO TRACK MULTIPLE SALES OF RIFLES OR PREPARE RECORDS REFLECTING THOSE SALES

By statute, Congress required federal firearms licensees to report the sale of two or more pistols or revolvers to an unlicensed person at one time or during any five consecutive business

---

[5]    In addition to the "express" requirements imposed on licensees to submit reports to ATF, Congress gave ATF limited rights to inspect a licensee's records on a licensee's premises.  ATF may do so after first securing a warrant based on a finding of reasonable cause to believe that a violation of federal law has occurred.  18 U.S.C. §923(g)(1)(A).  Inspection of the records may take place without reasonable cause and a warrant in the course of a criminal investigation of a person other than the licensee.  18 U.S.C. §923(g)(2)(i).  Finally, ATF may inspect the records of a licensee on the licensee's premises not more than once every 12 months for the purpose of ensuring compliance with record-keeping requirements.  18 U.S.C. §923(g)(2)(ii).

days. 18 U.S.C. §923(g)(3)(A). Congress has not required federal firearms licensees to report multiple sales of rifles. Congress could have readily done so.  It provided a definition of "rifle" in §921(a)(7) of the Gun Control Act and decided to treat rifles differently from pistols and revolvers.  Whereas a person must be 21 years old to purchase a pistol or revolver, Congress enacted a specific statutory provision that permits persons who are 18 years old to purchase rifles. 18 U.S.C. §922(b)(1).

This pistol and revolver reporting requirement requires federally licensed dealers to have mechanisms in place to track pistol and revolver sales over time and by different salespersons to ensure that any sales made to the same person on different days within the five day period are captured and reported.  Because entries in a licensee's permanently bound record are made chronologically by firearm acquisition date, a record search for a reportable disposition within the previous five business days of a current sale can require significant time and resources.  For those licensees who sell substantial numbers of pistols and revolvers or employ numerous salespersons, the challenge to comply with the reporting requirement is even more difficult. Determining if a sale of a pistol or revolver qualifies as a "multiple sale" is not a small task, particularly under the "close of business" reporting deadline imposed by Congress.  The information needed to comply with this reporting requirement is not captured on the face of the basic Firearms Transaction Record, Form 4473 if the sales are made on different days to the same person.  Accurately tracking "multiple sales" of pistols and revolvers under this circumstance requires additional record-keeping and record analysis.[6]

---

[6]     For example, if a retail dealer acquired a pistol from the pistol's manufacturer on January 1, 2008, the initial entry in the permanently bound book for the firearm would be made on January 1, 2008.  If the pistol is sold two years later on December 31, 2009, the name of the buyer and the date of sale are added to complete the two year old January 1, 2008 record entry. If the same buyer were to return to purchase a pistol within the next five business days, the retail

Federal firearms licensees in California are impacted by the new multiple rifle sale reporting requirement to a greater extent.  California licensees do not report multiple sales of pistols and revolvers to ATF because under California law, an unlicensed person may only purchase one pistol or revolver every 30 days.  Cal. Penal Code §12072(a)(9).  These licensees do not have any mechanisms in place to track "multiple sales" of firearms of any type, and the requirement that they begin reporting multiple sales of certain rifles has a disproportionate impact on their businesses.

4. **ATF'S LETTER DEMAND FOR INFORMATION ON MULTIPLE RIFLE SALES REQUIRES THAT RECORD INFORMATION BE SENT TO A GOVERNMENT FACILITY**

ATF is prohibited from requiring that information in the "records required to be maintained" under the Gun Control Act be transferred to a government facility, unless the requirement existed before FOPA was enacted in 1986:

> No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established.  Nothing in this section expands or restricts the Attorney General's authority to inquire into the disposition of any firearm in the course of a criminal investigation.

---

dealer would have to search through two years of record entries to locate the prior purchase.  For retail dealers who have not computerized their acquisition and disposition records, the time required to complete this record search can be overwhelming and the ability to do so by the close of business impossible.  *See* Table 4: Firearms Acquisition and Disposition Record, 27 CFR Part 478.125(e).

18 U.S.C. §926(a). ATF's demand that licensees prepare and submit reports of multiple rifle sales to ATF's National Tracing Center in West Virginia, or face criminal penalties and license revocation, has the force of a rule or regulation and violates §926(a).[7]

## ARGUMENT

### 1.    STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In deciding whether to grant injunctive relief, the court must consider whether: (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably harmed if an injunction is not granted; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). A positive showing must be made by the plaintiff on each of these factors. However, the factors are to be balanced on a sliding scale, with more of a showing on one factor compensating for less of a showing on another. "[I]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Elipso, Inc. v. Mann and Mann Tech.*, 480 F.3d 1153, 1157 (D.C. Cir. 2007); *see also Serono Lab., Inc. v. Shalada*, 158 F.3d 1313, 1318 (D.C. Cir. 1998) ("These factors interrelate on a sliding scale and must be balanced against each other"). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The necessary level or degree of likelihood of success that must be shown will vary according to

---

[7]    The requirement that an out-of-business dealer turn its records over to ATF and the requirement that reports of multiple pistol and revolver sales be submitted to ATF both existed before FOPA was enacted in 1986 and do not violate the prohibition found in §926(a).

the Court's assessment of the other factors. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–45 (D.C. Cir. 1977).

In sum, an injunction may be issued "with either a high probability of success and some injury, or *vice versa.*" *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). Here, the facts favor issuing a preliminary injunction to reestablish the status quo and return the record-keeping and reporting obligations owed by federally licensed dealers in Arizona, California, New Mexico and Texas to those statutorily imposed by Congress.[8]

2.     **NSSF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT ATF HAS EXCEEDED ITS AUTHORITY AND VIOLATED FEDERAL LAW**

NSSF will likely prevail on the merits of its claim that ATF exceeded its statutory authority and violated federal law in demanding by letter that federally-licensed firearms dealers in Arizona, California, New Mexico and Texas submit reports of multiple sales of rifles. When Congress empowers administrative agencies to carry on governmental activities, "the power of those agencies is circumscribed by the authority granted." *Stark v. Wickard*, 321 U.S. 288, 309 (1944); *see also Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated by Congress."). To determine the scope of statutory authority given by Congress to an administrative agency, the plain meaning of the statute is to be examined. *Pilon v. United States,* 73 F.3d 1111, 1119 (D.C. Cir. 1996). NSSF does not minimize the seriousness of

---

[8]     The sliding scale approach remains viable in this District despite the United States Supreme Court's decision in *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008), which reversed a lower court ruling that a preliminary injunction may be entered based only on a "possibility" of irreparable harm when a strong likelihood of prevailing on the merits is presented. *Id.* at 21. The Court did not reject the sliding scale approach but held that a plaintiff seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original). *Winter* simply stands for the proposition that a plaintiff seeking preliminary injunctive relief must make a positive showing on all four factors. *See Davis v. Pension Benefit. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *Nalco Co. v. U.S. EPA*, No. 11-760, 2011 WL 1882397, at *6 (D.D.C. May 18, 2011).

illegal trafficking in firearms. But courts must "take care not to extend the scope of the statute beyond the point where Congress indicated it would stop" despite "anxiety to effectuate the congressional purpose of protecting the public." *FDA v. Brown & Williamson*, 529 U.S. 120, 160 (2000)(citations omitted). [9]

Here, the plain meaning of §923 of the Gun Control Act has been placed in issue by ATF's claim that it has authority under §923(g)(5)(A) to demand that federally licensed firearms dealers begin reporting of multiple sales of certain rifles. ATF's claim, however, is at odds with the language of §923(g)(1)(A), which prohibits ATF from requiring reports and information from licensees "except as expressly required" elsewhere in §923. ATF's claim also cannot be reconciled with §923(g)(3)(A), in which Congress chose to limit reporting of multiple sales to pistols and revolvers.

A basic canon of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant or mere surplusage. *U.S. v. Canals-Jimenez*, 943 F.2d 1248, 1287 (11th Cir.1991). "The cardinal rule of statutory construction is to save and not to destroy." *United States v. Menasche*, 348 U.S. 528, 538 (1955). Despite these well-accepted canons of statutory construction, ATF maintains that §923(g)(5)(A) gives it authority to demand that licensees report multiple sales of rifles, even though to do so renders the prohibition on reporting found in §923(g)(1)(A) and Congress' limitation on multiple sales reporting in §923(g)(3)(A) meaningless.

---

[9]     Under the Administrative Procedure Act ("APA"), the Court may review and set aside agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). "[T]he case law in this circuit is clear that judicial review is available when an agency acts *ultra vires*" because "[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on [its] authority." *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003).

Simply put, the ATF has assumed authority it does not have. When an agency's action exceeds the scope of it authority under the plain language of the statute, the action will not withstand scrutiny.  *See Port Auth. v. U.S. Dep't of Transp.*, 479 F.3d 21, 31 (D.C. Cir. 2007) (finding that the plain language of the statue must be given effect, because "the plain language of a statute is strong evidence of Congress' intent"); *Jasperson v. Fed. Bureau of Prisons*, 460 F.Supp.2d 76 (D.D.C. 2006) (granting a preliminary injunction against the Bureau of Prison's regulation that did not comply with the plain language of a statute); *Amalgamated Transit Union, AFL-CIO v. Brock*, 809 F.2d 909 (D.C. Cir. 1987) (the Secretary exceeded his statutory authority because the language and legislative history of the UMT Act precluded him from certifying labor protective provisions under §13(c) before a provision for a dispute mechanism was in place); *Colo. River Indian Tribes*, 383 F.Supp.2d 123 (D.D.C. 2005) (holding that the agency exceeded the scope of its authority where no provisions in the relevant statute "remotely gives" the agency the power to regulate the day-to-day gaming activities at Class III operations, and where the legislative history confirmed the plain language of the statute).

### A.   Congress Has Plainly Stated That Licensees Are Only Required to Submit Information From Records to ATF That Congress Expressly Required Them to Submit Under the Gun Control Act.

Congress did not empower ATF to create new obligations for federally licensed firearms dealers to report information from the records they are required to keep under the Gun Control Act.   Congress' intent was clear and its statutory language is plain: "except as expressly required" by §923, "dealers shall not be required to submit . . . reports and information" with respect to the "records of . . . sale[,] or other disposition of firearms at his place of business . . ." 18 U.S.C. §923(g)(1)(A).   There is no provision in the Gun Control Act or corresponding regulations that requires licensees in the first instance to track multiple sales of rifles and record

the information in their records.  Moreover, there is no provision in §923 that "expressly" requires licensees to report such information to ATF.  Congress could have required reporting of multiple rifle sales, as it required reporting of multiple handgun sales, but it did not. That silence is controlling. *See In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) ("When Congress knows how to say something but chooses not to, its silence is controlling"); *see also American Methyl Corp. v. EPA*, 749 F.3d 826, 835-36 (D.C. Cir. 1995) ("mention of one thing implies the exclusion of another thing"); *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 643-44 (D.C. Cir. 2000) (applying canon of construction *expression unius est exclusion alterius*: "where the context shows that the 'draftsmen's mention of one thing, like a grant of authority, does really necessarily, or at least reasonably, imply the preclusion of alternatives,' the canon is a useful aid.") (citation omitted).

ATF's claim that it has authority to demand "record information concerning multiple sales of certain rifles" under §923(g)(5) ignores the express limitation on its authority found in §923(g)(1)(A).  (Ver. Comp., ¶7, Dkt. 1).  In *RSM, Inc. v. Buckles*, 254 F.3d 61, 67 (4th Cir. 2001), the court correctly observed that "[s]ection 923(g)(1)(A)'s express limitation on the Secretary's authority would be nullified if section 923(g)(5) were interpreted to permit the Secretary to issue demand letters *for any purpose*." (emphasis in original).  It is "clear that section 923(g)(5) is not a limitless delegation of authority to BATF to request information" and it "cannot be construed in an open-ended fashion." *Id*.  "Congress did not intend to give BATF carte blanche with regard to informational requests from federal firearms licensees." *Id.* at 69.

In *RSM*, the court nevertheless upheld ATF's authority to issue the demand letter in question because it was "narrowly tailored to a specific grant of positive statutory authority, specifically, ATF's power under . . . §923(g)(7) to require licensees to respond to trace requests

13

within 24 hours." 254 F.3d at 69. The demand letter at issue was sent to just 41 licensees whom ATF had already determined to be "uncooperative" in responding to trace requests. The letter required these non-compliant licensees (less than 0.1% of all licensees nationwide) to submit copies of the permanent record they were already required to prepare and  maintain—the record of firearm transactions for the previous three years and on a monthly basis thereafter. *Id*. at 63.

In this case, ATF's demand is not tied to a specific grant of legislative authority. In fact, it is contrary to Congress' controlling intent that multiple sales reporting be limited to handgun sales. ATF's letter demand for information is not tailored to any licensee's prior non-compliance with a required reporting obligation and is not directed to a discreet subset of licensees who have been identified as involved or even possibly involved in the problem that ATF seeks to address—illegal cross border trafficking in firearms. The approximately 8,500 licensees who received the demand letter have only one thing in common: they do business in a state that shares a border with Mexico. Yet, they all received the demand letter regardless of whether any gun they sold was recovered by law enforcement in Mexico and traced back to them. Some of the licensees who received ATF's demand letter are many hundreds-of-miles from the Mexican border. The information they are now required to gather regarding sales of two or more rifles and the reports they are required to now prepare and submit to ATF cannot reasonably be characterized as narrowly tailored to develop potential investigative leads.

Two other federal appellate courts have addressed the interplay between §923(g)(1)(A) and §923(g)(5)(A)—*Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281 (4th Cir. 2004) and *J & G Sales, Ltd. v. Truscott*, 473 F.3d 1043 (9th Cir. 2007). In both cases, licensees challenged ATF's authority to require them to submit information regarding their acquisition of second hand firearms during the previous year—information they had already chronologically recorded in

their permanently bound record under §923(g)(2). ATF's letter demand was sent to only 450 dealers, each of whom had been specifically linked to ten or more traces of firearms, which had been recovered by law enforcement within three years of sale by the dealer. The letter demand was designed to remedy ATF's inability to trace second hand firearms and reflected a "narrowly tailored approach" by ATF "[a]fter analyzing data indicating that a small number of FFL dealers accounted for a majority of firearms that were traced". *J &G Sales*, 473 F.3d at 1049.

In both *Blaustein & Reich* and *J &G Sales*, the courts upheld ATF's authority to issue the demand letters for record information from the dealers.  Neither court reconciled the apparent conflict between the authority provided to ATF in §923(g)(5)(A) to demand reporting of record information and the restriction on its authority to require reporting found in §923(g)(1)(A). Nonetheless, in *dicta*, the courts unnecessarily subscribed to an analytical framework in which §923(g)(5)(A) demand letter authority eviscerates the restriction imposed in §923(g)(1)(A) and renders it meaningless.  In the courts' view, the condition imposed under §923(g)(1)(A) on submission of reports and information to that which is  "expressly required" under §923(g) is satisfied whenever ATF asks for information in a demand letter sent under §923(g)(5)(A):

> Section 923(g)(5)(A) contains a condition precedent. It requires an FFL to submit record information to the Bureau but only if the Bureau issues a demand letter requesting it. This condition precedent does not negate the fact that §923(g)(5)(A) contains an express requirement that is provided for in §923(g)(1)(A).

*J & G Sales*, 473 F.3d at 1049 (citing *Blaustein &  Reich*, 365 F.3d at 287 n.14).[10]

The courts' open-ended reading of ATF's §923(g)(5)(A) authority makes little sense in light of the observation made by the court in *J & G Sales* that "[i]t is certainly true that

---

[10]    The court in *Blaustein & Reich* articulated the circular analysis in this way: the "except as expressly required condition under §923(g)(1)(A)" is met because "Section 923(g)(5)(A) expressly requires an FFL to produce record information when the Bureau issues a letter demand seeking it."  365 F.3d at 287.  In other words, reports of information on firearm sales transactions are "expressly required" so long as ATF demands them.

§923(g)(1)(A) limits the Bureau's authority to procure information from FFLs to the express requirements of §923." 473 F.3d at 1049.  The broad interpretation of §923(g)(5)(A) authority also ignores the "fundamental canon of statutory construction that that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989).

Statutes are to be interpreted "as a symmetrical and coherent regulatory scheme" and all parts are to be fit "into a harmonious whole." *FDA v. Brown & Williamson*, 529 U.S. at 133 (citations omitted).   The only way to reconcile §923(g)(1)(A) and §923(g)(5)(A) under the canons of statutory interpretation so that both survive is to examine §923(g) as a whole and the specific provisions within the section that contain express reporting requirements.  When done, Congress' intent becomes clear: ATF's §923(g)(5)(A) demand letter authority is restricted by the "except as expressly required" condition of §923(g)(1)(A) and is therefore defined by the subject matters on which reporting is expressly required under §§923(g)(2), (g)(3), (g)(4), (g)(6) and (g)(7).

The letter demands upheld in *RSM*, *Blaustein & Reich* and *J &G Sales* each requested information incidental to ATF's authority to trace firearms under §923(g)(7).  *See RSM*, 254 F.3d at 68 (demand had a "direct relationship to BATF's explicit statutory duties to conduct trace requests in particular criminal investigations"); *J & G Sales*, 473 F.3d at 1049 ("demand letter at issue seeks a limited amount of information . . . in order to help remedy the problem posed by tracing secondhand firearms").  In this case, ATF's letter demand does not fit into any expressly required category of information that must be reported.  A licensee's obligation to report multiple sales of firearms under §923(g) is limited to reports of multiple handgun sales under

16

§923(g)(3)(A). ATF's demand letter in this case cannot be seen as narrowly tailored or incidental to its authority under §923(g)(3)(A) or any other provision in §923(g).

The broad reading ATF gives to §923(g)(5)(A) renders §923(g)(1)(A) meaningless, in violation of the "endlessly reiterated principle of statutory construction . . . that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage." *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995); *see also Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) ("Congress cannot be presumed to do a futile thing."). Accordingly, ATF does not have the authority to create by letter demand new reporting obligations, which is exactly what ATF's July 12, 2011 demand letter has done in this case.[11]

### B.   Congress Has Prohibited ATF From Prescribing a Rule After Enactment of the FOPA That Requires Records or Record Information to Be Sent to a Government Facility.

Section 926(a) of the Gun Control Act plainly provides that the only records a federal firearms licensee is required to send to a government facility are those records that were required to be sent before enactment of the FOPA in 1986:

> No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established. Nothing in this section expands or restricts the Attorney General's authority to inquire into the disposition of any firearm in the course of a criminal investigation.

---

[11]    ATF itself questioned its authority to require reporting of multiple rifle sales. (Ver. Comp.¶ 12) ("ATF . . . noted that [a requirement for multiple sales of long guns] may require a change to the Gun Control Act, which is beyond ATF's and the Department's authority."). "[A]n agency's change in direction from a previously announced intention is a danger signal that triggers scrutiny to ensure that the agency's change of course is not based on impermissible or irrelevant factors." *Nalco Co. v. U.S. EPA*, No. 11-760, 2011 WL 1882397, at *5 (D.D.C. May 18, 2011) (citation omitted) (agency action  enjoined as arbitrary and capricious).

18 U.S.C. §926(a). The July 12, 2011 demand letter sets forth a rule that each of the 8,500 federally licensed dealers in Arizona, California, New Mexico and Texas must follow. It requires licensees to transfer record information to ATF's National Tracing Center in West Virginia. The rule was prescribed by ATF after FOPA was enacted in 1986 and it violates the prohibition found in §926(A).[12]

ATF's demand letter also violates the appropriations rider that funds ATF's activities. Specifically, the rider prohibits the ATF from spending funds for salaries and administrative expenses "in connection with consolidating or centralizing . . . the records, or any portion thereof, of acquisition and disposition of firearms maintained by" federally-licensed dealers. *See* The Consolidated Appropriations Act, 2010, Pub.L. 111-117, div. B, tit. 2, 123 Stat. 3034, 3128 (2009).[13]   By receiving and retaining such records or portions thereof at the National Tracing Center, ATF will certainly be "consolidating or centralizing" records and will continue to do so in violation of Pub.L. 111-117 and Pub.L. 112-10. As a result, the ATF's demand letter is unauthorized, unlawful and an otherwise *ultra virus* act in excess of Congressional authority.

---

[12]     The demand letter is not a mere "adjudication." *City of West Chicago v. U.S. Nuclear Regulatory Commission*, 701 F.2d 632, 644 (7th Cir.1983) ("Informal adjudications constitute a residual category including 'all agency actions that are not rulemaking and that need not be conducted through on the record hearings.'") (citation omitted). A rule produces a decision which is of general application and affects the rights of broad classes of unspecified individuals. *Motion Picture Ass'n of America v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992); *see also Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 448 n. 5 (9th Cir. 1994). A rule is prospective and has a definitive effect on individuals only after the rule is subsequently applied. *Hercules v. EPA*, 598 F.2d 91, 117 (D.C.Cir.1978); *Yesler Terrace Community Council*, 37 F.3d at 448 n. 5.   Conversely, an "adjudication" occurs when agency action affects specific individuals in specific cases. *American Airlines v. Dept. of Transportation*, 202 F.3d 788, 798 (5th Cir.2000), *cert. denied,* 530 U.S. 1274; *Yesler Terrace Community Council*, 37 F.3d at 448 n. 5; *Motion Picture Ass'n of America*, 969 F.2d at 1157.

[13]     The Department of Defense and Full-Year Continuing Appropriations Act for the 2011 fiscal year, Pub.L. 112-10, div. B., tit. 1, § 1101(a)(6), 125 Stat. 38, 102-03 (2011), continued the Consolidated Appropriations Act, 2010, in effect until September 30, 2011.

### 3.   NSSF MEMBERS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF

NSSF members will suffer irreparable harm if the ATF is permitted to demand by letter that federally-licensed firearms dealers in California, Texas, Arizona and New Mexico submit reports of multiple sales of certain rifles.  Having demonstrated a "particularly strong likelihood of success on the merits," "even . . . a relatively slight showing of irreparable injury" is sufficient for NSSF to prevail at the preliminary injunction stage.  *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3 738, 747 (D.C. Cir. 1995).

### A.   Imminent, Non-recoverable Pecuniary Losses Caused By Federal Agency Action Constitute Irreparable Harm *Per Se*.

Irreparable harm exists to when the (1) "threat of injury is imminent" and (2) the "injury itself would be incapable of being redressed after a final hearing on the merits."  *Wieck v. Sterenbuch*, 350 A.2d 384, 388 (D.C. Cir. 1976); *see also Sampson v. Murray*, 415 U.S. 61, 88 (1974) ("the basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies").  Economic, financial and pecuniary injuries constitute irreparable harm if: (1) the "movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity." *Brendsel v. Office of Fed. Hous. Enter. Oversight*, 339 F.Supp.2d 52, 66–67 (D.D.C. 2004); and (2) the economic losses are, *inter alia*, imminent. *Feinerman v. Bernardi*, 558 F.Supp.2d 36, 51 (D.D.C. 2008).[14]

---

[14]     Other Federal Circuits follow this logical approach.  Where pecuniary losses cannot later be recovered because the defendant enjoys immunity (as the ATF does here), such losses are irreparable for purposes of preliminary injunctive relief.  *See United States v. New York*, 708 F.2d 92, 93 (2d Cir.1983) (*per curiam*), *cert. denied,* 466 U.S. 936 (1984); *Blum v. Schlegel,* 830 F.Supp. 712, 725 (W.D.N.Y.1993) ("[T]he Second Circuit has determined that in cases where the defendant is protected by the Eleventh Amendment which thus renders the plaintiff unable to recover monetary damages, the injury will be irreparable."), *aff'd,* 18 F.3d 1005 (2d Cir.1994).

Where, as here, NSSF members cannot recover damages from a governmental agency because the agency has sovereign immunity, "any loss of income suffered by [the] plaintiff is irreparable *per se.*" *Feinerman*, 558 F.Supp.2d at 51; *see also Clarke v. Office of Fed. Housing Enter. Oversight*, 355 F.Supp.2d 56, 65 (D.D.C. 2004) (noting that "courts have recognized that economic loss may constitute 'irreparable harm' where a plaintiff's alleged damages are unrecoverable"); *Smoking Everywhere, Inc. v. FDA*, 680 F.Supp.2d 62, 77 n. 19 (D.D.C. 2010) ("It is also worth noting that even if the claimed economic injury did not threaten plaintiffs' viability, it is still irreparable because plaintiffs cannot recover money damages against FDA. Where a plaintiff cannot recover damages from an agency because the agency has sovereign immunity, any loss of income suffered by [the] plaintiff is irreparable *per se.*") (quotations and citations omitted) *aff'd*  627 F.3d 891, 2010 WL 4942132, slip. op. (D.C. Cir. Dec. 7, 2010); *Bracco Diagnostics v. Shalala*, 963 F.Supp. 20, 29 (D.D.C. 1997) (noting that alleged irretrievable economic harm would result in "significant and irreparable" injury as plaintiffs were small companies—"Plaintiffs' greater financial costs, which are on-going, can never be recouped.  While the injury to plaintiffs is 'admittedly economic,' there is 'no adequate compensatory or other corrective relief' that can be provided at a later date, tipping the balance in favor of injunctive relief") (internal citations omitted); *Express One Int'l, Inc. v. U.S. Postal Serv.*, 814 F. Supp. 87, 91 (D.D.C. 1992); *see also Woerner v. U.S. Small Bus. Admin.*, 739 F. Supp. 641, 650 (D.D.C. 1990) ("Plaintiffs do not claim that [their] very existence will be threatened if their motion is denied. Rather, they claim, persuasively, irreparable injury because the government is immune from damage suits").[15]

---

[15]     Absent a waiver, sovereign immunity shields the federal government and its agencies, like the ATF, from suit. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). While the Administrative Procedure Act ("APA") waives sovereign immunity for federal agencies, it does so only in

**B.**    **Federally-Licensed Firearms Dealers Located in California, Texas, Arizona and New Mexico Have Been and Will Continue To Be Irreparably Injured by ATF's Demand For Reports on Multiple Sales of Certain Rifles**.

ATF's demand imposes additional record keeping obligations and devotion of additional resources to meeting those obligations.  Impacted dealers will be required to devote additional, significant time and resources to training employees on the record keeping requirement, and will have to create new and additional record keeping procedures and systems to track sales of the rifles on different days to the same person. The additional obligations imposed by ATF's demand and its related impact on the federally licensed firearms dealers in these four states are not shared by federally licensed firearms dealers nationwide. (*See* August 18, 2011 Statement of Matt French, attached to Vogts Certification as <u>Exhibit A</u>).  Further, because ATF has characterized "[t]he information as mandatory and required by statute (18 U.S.C. 923(g)(5)(A))" those licensees receiving the demand letters are subject to criminal penalties pursuant to 18 U.S.C. §924(a)(1)(D), including fines and imprisonment, for failing to comply with the obligation described in the demand letters, even though their actions are inadvertent or *de minimis*. These licensees are also subject to license revocation proceedings pursuant to 18 U.S.C. §923(e) for failing to comply with the obligation described in the demand letters.

*Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010), is illustrative.  In *Edmondson*, the court reiterated the principle that the "imposition of monetary damages that

---

actions "seeking relief other than money damages." 5 U.S.C. § 702.  Likewise, even though the Federal Tort Claims Act ("FTCA") waives immunity for damages in some instances, it does not do so here. Claims "based upon an act or omission of an employee of the Government . . . in the execution of a statute or regulation, whether or not such statute or regulation be valid," which most likely applies in this case, is excluded from the FTCA's general waiver of sovereign immunity for torts. 28 U.S.C. § 2680(a).  As a result, with no apparent avenue for obtaining damages against ATF, any economic loss suffered by federally-licensed firearms dealers in Arizona, California, New Mexico and Texas resulting from ATF's demand for reporting on multiple sales of certain rifles can never be recovered and is therefore *per se* "irreparable."

cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury." *Id.* at 770–71. The irreparable injury identified in *Edmondson* is similar to the harm suffered by federally-licensed dealers in this case. The trade association plaintiffs' members faced imminent "investigation and other consequences" for failing to comply with the challenged state law on employment of illegal immigrants, including "liability" and the potential "disbarment from public contracts." *Id.* at 771. As the court noted, "[t]hese consequences, in and of themselves, demonstrate a likelihood of irreparable harm." *Id.* at 771.

NSSF retail dealer members in the four states will be forced to change procedures, train staff and take on added burdens to continue to sell certain rifles, while also subjecting themselves to criminal penalties pursuant to 18 U.S.C. §924(a)(1)(D), including fines and imprisonment, for failing to comply with obligations described in ATF's demand letter. These federally-licensed dealers are also subject to license revocation proceedings pursuant to 18 U.S.C. §923(e) for failing to comply with the obligation described in the demand letters, a penalty that is similar to the "disbarment of public contracts" injury identified in *Edmondson*. 594 F.3d at 771.

The harm to NSSF members is anything but theoretical or reparable. The reporting requirements took effect on August 14, 2011. These compliance requirements and the procedures and costs required to maintain compliance are certainly "on-going" and "can never be recouped." That is *per se* irreparable harm.

### 4. THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR NSSF

The remaining two factors for consideration in connection with a preliminary injunction also strongly favor granting NSSF's relief. First, the balance of equities tips in NSSF's favor. *See Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987) (the court "must balance the competing claims of injury and must consider the effect on each party of the granting or

22

withholding of the requested relief"). ATF would suffer little hardship by being forced to act within its statutory authority.  Because NSSF has demonstrated it is likely to succeed on the merits and its members will suffer irreparable injury, there is no doubt NSSF members will suffer significantly more harm if the request for an injunction is denied, than any harm theoretically suffered by ATF.  NSSF seeks to only maintain the status quo and preclude the implementation and enforcement of the demand letter until a full hearing on the merits is held. [16]

Second, a preliminary injunction is in the public interest. The public interest is "best served by having federal agencies comply with the requirements of federal law."  *Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 963 F. Supp. 1, 6 (D.D.C. 1997); *see also McGregor Printing Corp. v. Kemp*, 1992 WL 118794, at *6 (D.D.C. May 14, 1992) ("there is also a strong public policy . . . that federal agencies will exercise their discretion in compliance with their governing statutes."); *Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 15 (D.D.C. 1998) (granting the preliminary injunction and noting that "public has a general interest in the meticulous compliance with the law by public officials.").  Here, ATF has exceeded the scope of its statutory authority and has failed "comply with the requirements of federal law." *See Patriot, Inc.*, 963 F. Supp. at 6.  This fact alone demonstrates that the public interest supports the granting of preliminary injunctive relief.

---

[16] ATF's proposal to collect reports of multiple rifles sales in the four border states was first published in the Federal Register on December 17, 2010 under the emergency review procedures of Paperwork Reduction Act of 1995. 75 Fed. Reg. 79,021 (2010). The Office of Management and Budget denied ATF's request for emergency review and the proposal was published again for an additional 30-days of public comment on April 29, 2011. 76 Fed. Reg. 24,058 (2011). Any hardship claimed by ATF resulting from issuance of a preliminary injunction and additional delay should be rejected.

**CONCLUSION**

For the foregoing reasons, the National Shooting Sports Foundation, Inc. respectfully requests that the Court grant Plaintiff's Motion for Preliminary Injunction.  A proposed Order for Preliminary Injunction is attached.

Dated:  August 22, 2011.

Respectfully submitted,

**THE NATIONAL SHOOTING
SPORTS FOUNDATION, INC.,**
Plaintiff

By:  /s/ *James B. Vogts*

M. King Hill, III (D.C. Bar No. 462966)
Vincent E. Verrocchio (D.C. Bar No. 460429)
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4496
mkhill@Venable.com
veverrocchio@Venable.com

James B. Vogts (admitted *pro hac vice*)
Andrew A. Lothson (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611
(312) 923-8266
jvogts@smbtrials.com
alothson@smbtrials.com

Lawrence G. Keane (admitted *pro hac vice*)
NATIONAL SHOOTING SPORTS FOUNDATION, INC
Flintlock Ridge Office Center
11 Mile Hill Road
Newtown, CT 06470-2359
(203)426-1320
lkeane@nssf.org

## **CERTIFICATE OF SERVICE**

I hereby certify on this 22nd day of August, 2011, that a true and correct copy of the

foregoing **Memorandum of Law in Support of Motion for Preliminary Injunction** was

served via ECF, to the following:

> **Daniel Riess**
> U.S. DEPARTMENT OF JUSTICE
> 20 Massachusetts Avenue, NW
> Washington, DC 20530
> (202) 353-3098
> Fax: (202) 616-8460
> Email: daniel.riess@usdoj.gov
>
> **Lesley R. Farby**
> U.S. DEPARTMENT OF JUSTICE
> Civil Division, Federal Programs
> 20 Massachusetts Avenue, NW
> Washington, DC 20530
> (202) 514-3481
> Fax: (202) 616-8470
> Email: lesley.farby@usdoj.gov

> /s/*James B. Vogts*
> James B. Vogts

25