IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| J & G SALES, LTD. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FOOTHILLS FIREARMS, LLC | ) | |
| | ) | |
|         Plaintiffs | ) | |
| | ) | |
|     v. | ) | 11-1401-RMC |
| | ) | |
| KENNETH MELSON | ) | |
| | ) | |
|         Defendant | ) | |

**PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

COME NOW Plaintiffs, by counsel, and move the court, pursuant to Rule 65(a), Fed.R.Civ.Pro., and LcvR 65.1(c), for a preliminary injunction, enjoining Defendant from initiating any administrative, civil, or criminal actions or proceedings against Plaintiffs for not submitting information required by the letter addressed to "Dear Federal Firearms Licensee" and dated July 12, 2011, from Charles Houser, Chief, National Tracing Center, the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF")(hereafter "the letter").

<u>BACKGROUND</u>

On or about July 29, 2011, Plaintiffs J&G Sales, Ltd. (hereinafter "J&G") and Foothills Firearms, LLC (hereinafter "Foothills") received the letter directing them to submit a report of sale or other disposition to unlicensed persons of two or more semi-automatic rifles of greater than .22 caliber (including .223/5.56) capable of accepting a detachable magazine within five (5) consecutive business days.  The letter demands record information purportedly pursuant to the ATF's

authority under 18 U.S.C. § 923(g)(5)(A).  The letter enclosed ATF Form 3310.12 (Report of Multiple Sale Or Other Disposition of Certain Rifles), which requires J&G and Foothills to report the following information about the purchaser and the firearms purchased: name, residence address, sex, race, identification number, identification type, identification State, date and place of birth, and the serial numbers, manufacturers, importers, models, and calibers of the rifles. The letter requires that the reports be provided to the ATF beginning with sales made on August 14, 2011 and until ATF provides written notice to stop.  The reports are required to be sent to ATF's National Tracing Center.  A similar letter has been, or will be, sent to all federal firearms licensees in Texas, New Mexico, Arizona, and California.  The ATF has estimated that 8,479 licensees are subject to the requirements of the letter,[1] or 13.3% of the approximately 63,535 licensees nationwide.[2]

J&G is a federally-licensed dealer in firearms pursuant to 18 U.S.C. § 923, which is incorporated under the laws of Arizona and has its principal place of business in Prescott, Arizona.  Foothills is a federally-licensed dealer in firearms pursuant to 18 U.S.C. § 923, which is incorporated under the laws of Arizona and has its principal place of business in Yuma, Arizona.  J&G and Foothills have sold two or more semi-automatic rifles capable of accepting a detachable magazine

---

[1]  60-Day Emergency Notice of Information Collection Under Review, 75 F.R. 79021 (Dec. 17, 2010).

[2]  Information derived from licensee information on ATF's website, www.atf.gov.

and with a caliber greater than .22 (including .223/5.56) to the same person within five (5) consecutive business days, and will continue to sell such rifles to the same person within five (5) consecutive business days.

Defendant Kenneth Melson is Acting Director, ATF, a bureau of the United States Department of Justice.   The Attorney General has delegated the administration and enforcement of Chapter 44 of Title 18, U.S.C. to the ATF.

<u>ARGUMENT</u>

A plaintiff seeking a preliminary injunction must establish that:

> he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 10 (2008).

1) <u>Likely to succeed on the merits</u>.   A) It is asserted in the letter that the authority for demanding the information is 18 U.S.C. § 923(g)(5)(A), which provides:

> Each licensee shall, when required by letter issued by the Attorney General, and until notified to the contrary in writing by the Attorney General, submit on a form specified by the Attorney General, for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the Attorney General in such letter may specify.

When viewed in context, § 923(g)(5)(A) does not provide Melson the authority for demanding the information sought.

A court's objective in construing a statute "is to ascertain the congressional intent and give effect to the legislative will."

*Philbrook v. Glodgett,* 421 U.S. 707, 713 (1975). Further, it "is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989). More recently, the Supreme Court has explained:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning--or ambiguity--of certain words or phrases may only become evident when placed in context. . . . A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," . . . and "fit, if possible, all parts into an harmonious whole . . . ."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)(citations omitted).

In *Mastro Plastics Corp. v. Labor Board,* 350 U.S. 270, 285 (1956), the Court rejected an interpretation of a statute which read words in isolation:

> If the above words are read in complete isolation from their context in the Act, such an interpretation is possible. However, "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (citations omitted).

350 U.S. at 285.

Thus, in determining the scope of Melson's authority under § 923(g)(5)(A), the court must look not only to the language of § 923(g)(5)(A) itself, but to other statutory provisions to ascertain Congress' intent and give effect to the legislative will.[3]

---

[3]   The D.C. Circuit has noted: "Context serves an especially important role in textual analysis of a statute when Congress has not expressed itself as univocally as might be wished." *Bell Atlantic Telephone Companies* v. *F.C.C.*, 131 F.3d 1044, 1047 (D.C. Cir. 1997).

Section 923(g)(5)(A) was enacted as part of the Firearms Owners' Protection Act ("FOPA"), P.L. 99-308, 100 Stat. 449 (1986). FOPA, however, also amended § 923(g)(1)(A) to provide that licensees "shall not be required to submit to the Secretary reports and information with respect to such records and the contents thereof, except as expressly required by this section"; to require reasonable cause and a warrant "for the purpose of inspecting or examining" licensee records; amended § 923(g)(1)(B)(i) to authorize inspection of licensee records "without such reasonable cause or warrant" in the "course of a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee"; and amended § 923(g)(1)(B)(iii) to authorize inspection of licensee records when "required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation."[4] Eight years later, the 1994 Crime Act enacted § 923(g)(7), which provides:

> Each licensee shall respond immediately to, and in no event later than 24 hours after the receipt of, a request by the Secretary for information contained in the records required to be kept by this chapter as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation.

In *Colautti v. Franklin,* 439 U.S. 379 (1979), the Court held that it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." 439 U.S. at

---

[4]  § 923(g)(1)(B) was amended not only to limit ATF's physical intrusion into a licensee's premises, but to limit ATF's ability to obtain record information, as evidenced by the fact that the very purpose of the inspections authorized by § 923(g)(1)(A) and (B) is to obtain access to records.  *Cf. Colonnade Corp.* v. *United States*, 397 U.S. 72  (1970), where the statute authorized searches for "any articles or objects subject to tax" (397 U.S. at 77).

392.[5]  Melson's apparent construction of § 923(g)(5)(A) violates this canon of construction by effectively rendering a nullity the specific grants of authority established by § 923(g)(1)(A), § 923(g)(1)(B)(i), § 923(g)(1)(B)(iii), and § 923(g)(7).   Under Melson's reasoning, ATF could simply send a demand letter for the records, and need not comply with the reasonable cause and warrant requirement of § 923(g)(1)(A). This view of § 923(g)(5)(A) would also allow Melson to circumvent the limits of § 923(g)(1)(B)(i) and (iii) by sending a demand letter for records without there being any criminal investigation.   Finally, Melson's interpretation would allow ATF to circumvent § 923(g)(7)'s "bona fide criminal investigation" requirement and compel information to be reported within 24 hours through the demand letter provision. Indeed, Melson's interpretation of § 923(g)(5)(A) does not articulate any restraints imposed by the above provisions on ATF's demand letter authority.   As the Fourth Circuit has noted: "section 923(g)(5)(A) is not a limitless delegation of authority to BATF to request record information," and "[o]ther provisions of the statute . . . make clear that section 923(g)(5)(A) cannot be construed in an open-ended fashion." *RSM, Inc. v. Buckles,* 254 F.3d 61, 67 (4th Cir. 2001).

The express limitations on ATF's authority in § 923(g)(1)(A), § 923(g)(1)(B)(i) and (iii), and § 923(g)(7) must thus be construed as limitations on ATF's authority under § 923(g)(5)(A).   The only reading

---

[5]   See also *United States v. Menasche,* 348 U.S. 528, 538-539 (1955): "'The cardinal principle of statutory construction is to save and not to destroy.' (citation omitted).   It is our duty 'to give effect, if possible, to every clause and word of a statute' (citation omitted), rather than to emasculate an entire section, as the Government's interpretation requires."

of § 923(g)(5)(A) which does not render a nullity the limitations
established by § 923(g)(1)(A), § 923(g)(1)(B)(i) and (iii), and §
923(g)(7), and which allows all provisions to fit "'into an harmonious
whole'" (*Brown & Williamson*, *supra*, 529 U.S. at 133), is to read the
record submission authority in § 923(g)(5)(A) as authorizing ATF to
require the submission of information needed "to conduct legitimate
tracing activities in connection with bona fide criminal
investigations." S.Rep. 98-583, 98th Cong., 2d Sess., at 18 (1984).[6]
To construe § 923(g)(5)(A) to authorize ATF to demand records which are
not for tracing and which are not in the course of a bona fide criminal
investigation would violate the basic rule of statutory construction
that, "[w]hen a statute limits a thing to be done in a particular mode,
it includes a negative of any other mode." *Christensen v. Harris
County,* 529 U.S. 576, 583 (2000).[7] As ATF does not, however, contend
that the record information demanded is required for determining the
disposition of firearms in the course of a bona fide criminal
investigation, ATF exceeds its authority under § 923(g)(5)(A) in
demanding the record information it demands here.

The construction of § 923(g)(5)(A) adopted by Melson is also
inconsistent with § 923(g)(3)(A) (submission of reports of multiple

---

[6] "There was no Senate Report on [FOPA,] Pub.L. No. 99-308. S.Rep. No.
98-583 accompanied S. 914, the substantially similar predecessor to S. 49, the
Senate bill which was the basis for Pub.L. No. 99-308." *National Rifle Ass'n
v. Brady*, 914 F.2d 475, 477 n.1 (4th Cir. 1990), *cert. denied* 499 U.S. 959
(1991).

[7] See also *Bulova Watch Co. v. United States*, 365 U.S. 753, 758
(1961)("It is familiar law that a specific statute controls over a general
one").

handgun sales)[8] and § 923(g)(4) (submission of out of business records).[9]   It is well-established that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174 (2001) (internal quotation marks omitted).   Melson's construction of § 923(g)(5)(A) renders § 923(g)(3)(A) and § 923(g)(4) superfluous and insignificant since, if § 923(g)(5)(A) broadly permitted ATF to demand records, § 923(g)(3)(A) and § 923(g)(4) would be unnecessary as ATF could use the authority of § 923(g)(5)(A) to require the submission of reports of multiple handgun sales and of out of business records.   That Congress deemed necessary the enactment of both § 923(g)(3)(A) and § 923(g)(4) reveals that Congress did not intend that § 923(g)(5)(A) have the broad reach ascribed to it by ATF.   Indeed, the fact that Congress expressly required in § 923(g)(3)(A) that licensees submit reports of multiple sales of only handguns, when it could have applied the requirement to

---

[8] "Each licensee shall prepare a report of multiple sales or other dispositions whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totalling two or more, to an unlicensed person.  The report shall be prepared on a form specified by the Attorney General and forwarded to the office specified thereon and to the department of State police or State law enforcement agency of the State or local law enforcement agency of the local jurisdiction in which the sale or other disposition took place, not later than the close of business on the day that the multiple sale or other disposition occurs."

[9] "Where a firearms or ammunition business is discontinued and succeeded by a new licensee, the records required to be kept by this chapter shall appropriately reflect such facts and shall be delivered to the successor. Where discontinuance of the business is absolute, such records shall be delivered within thirty days after the business discontinuance to the Attorney General. However, where State law or local ordinance requires the delivery of records to other responsible authority, the Attorney General may arrange for the delivery of such records to such other responsible authority."

all firearms, emphasizes that Congress did not intend that § 923(g)(5)(A) have the broad reach ascribed to it by ATF. See *Christensen,* supra, 529 U.S. at 583 ("[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode.").

Melson's view of the breadth of § 923(g)(5)(A) also runs contrary to Congress' will as expressed § 926(a), which provides in part that the Attorney General may not promulgate a "rule or regulation" which would:

> require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States . . . .

> In *RSM*, the Fourth Circuit stated:

> [W]hile section 926(a) does not directly prohibit BATF's issuance of the letter in this case, that provision clearly demonstrates Congress' concern about any attempt by BATF to establish a national firearms registry. Section 926(a) would be rendered meaningless if BATF could issue limitless demand letters under section 923(g)(5)(A) in a backdoor effort to avoid section 926(a)'s protections for law-abiding firearms owners. Congress clearly did not intend such a result.

*Id*. at 67.

The demand letter at issue in *RSM* was issued to 41 licensees nation-wide and demanded "a description of the firearms including the models, serial numbers, and types, as well as the purchasers' names, addresses, and federal firearms license numbers"; with "the exception of the purchaser's name," ATF "entered all the information into an electronic database." 254 F.3d at 63. In stark contrast, the letter here was sent to some 8,479 licensees and the information which will be

entered into an electronic database will include the purchaser's name, residence address, sex, race, identification number, identification type, identification State, date and place of birth, as well as the serial numbers, manufacturers, importers, models, and calibers of the rifles.  Thus, the letter here results in exactly the national firearms registry about which Congress expressed grave concern.  The fact that the registry encompasses only record information from 13% of licensees is immaterial because, for the first time in United States history, the ATF will have a database of the names of firearms purchasers.

While Plaintiffs believe that the statutory scheme plain evidences that Congress intended that § 923(g)(5)(A) not be an open-ended grant of authority, the interplay of the various provisions discussed above could be viewed as rendering Congress' will ambiguous.  See, *e.g.*, *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)("plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole") and *Bell Atlantic Telephone Companies* v. *F.C.C.*, *supra*, 131 F.3d at 1048 ("inconsistency between" statutory provisions "constitutes an independent source of ambiguity in the statute.").[10]  That lack of clarity can be resolved by resort to the legislative history.  *Blum v. Stenson,* 465 U.S. 886, 896 (1984)(court must "look first to the statutory language and then to the

---

[10]  This case is not controlled by *Ratzlaf* v. *United States*, 510 U.S. 135, 147-148 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear") because *Ratzlaf* involved the meaning of a single word, and there was no argument that the ambiguity of a phrase was evident because of its context.

legislative history if the statutory language is unclear.").[11]
Moreover, "[r]eference to statutory design and pertinent legislative
history may often shed new light on congressional intent,
notwithstanding statutory language that appears 'superficially clear.'"
*Natural Resources Defense Council, Inc.* v. *Browner*, 57 F.3d 1122, 1127
(C.A.D.C., 1995).

As the Supreme Court noted of another statute in *K Mart Corp. v.
Cartier, Inc.,* 486 U.S. 281 (1988):

> Even if the language of § 526 clearly covered all affiliates
> of foreign manufacturers, "[i]t is a `familiar rule, that a
> thing may be within the letter of the statute and yet not
> within the statute, because not within its spirit, nor within
> the intention of its makers.'"  It is therefore appropriate
> to turn to our other "traditional tools of statutory
> construction" for clues of congressional intent.  *INS v.
> Cardoza-Fonseca,* 480 U.S. 421, 446 (1987).

486 U.S. at 300.

The original demand letter regulation (27 C.F.R. § 178.126) was
promulgated under, and became effective on the same date as, the Gun
Control Act of 1968, December 16, 1968.  § 105(a), P.L. 90-618, 82
Stat. 1213 (1968); 33 F.R. 18555, 18556 (Dec. 14, 1968).  Harold Serr,
Director of the Alcohol and Tobacco Tax Division, wrote to Senator
Frank Church, on December 17, 1968:

> [U]nder no circumstances does the Alcohol and Tobacco Tax
> Division intend to require licensed firearms dealers to

---

[11]  Even if resort to the legislative history is not required, it may be
reviewed to confirm the statutory construction. *Cf. Negonsott v. Samuels,* 507
U.S. 99, 106 (1993)("Although we think resort to secondary materials is
unnecessary to decide this case, the legislative history of the Kansas Act
supports our construction"); *Airports Auth. v. Citizens for Noise Abatement,*
501 U.S. 252, 267 (1991)("Although the legislative history is not necessary
to our conclusion that the Board members act in their official congressional
capacities, the floor debates in the House confirm our view").

submit all records of firearms transactions to a central location.  This would be in effect gun registration and the Congress clearly showed its desires in this area when gun legislation was voted on.

131 Cong. Rec. S9129 (July 9, 1985).

Serr wrote that the demand letter regulation would be used "when we become aware of violations of the law by an unscrupulous dealer." *Id*.  An example would be a dealer illegally selling handguns to out-of-state residents who stated that "they could give him any name they chose."  In such a situation, "we would require the dealer to submit records of his sales, not for the purpose of registration, but for the purpose of proceeding against the dealer for a criminal violation of the law."  *Id*.  Serr emphasized, however, that ATF had "no intention of requiring law-abiding gun dealers to report their firearms transactions to us."  *Id*.

Section 103 of FOPA, 100 Stat. 454, amended § 923(g)(1)(A) to provide that licensees "shall not be required to submit to the Secretary reports . . . except as expressly required by this section." Such records "include, for instance, multiple sales reports and certain informational reports used in connection with tracing." S.Rep. 98-583, at 15.  "See, e.g., proposed 18 U.S.C. 923(g)(4)and (5),[12] discussed in more detail infra."  *Id*. n.32.

Subparagraph (4) would be enacted as the demand letter provision. § 103 of FOPA, 100 Stat. 455.  That provision "is based on existing

---

[12] Subparagraph (5) would be enacted as § 923(g)(3), which provides that a licensee shall report to the Secretary the sale of two or more handguns in a five-day period.

Treasury regulations describing activities which facilitate the
Secretary's ability to trace the disposition of firearms in connection
with criminal investigations."[13]   S.Rep. 98-583, at 17.   The Report
continues:

> The purpose of Paragraph (4) is to clarify and ensure the
> Secretary's authority to conduct legitimate tracing
> activities in connection with bona fide criminal
> investigations.  The authority granted to the Secretary under
> this Paragraph is intended to provide access to all
> information legitimately needed in sensitive criminal
> investigations, such as the investigation of President
> Reagan's attempted assassination.  However, because of the
> breadth of the authority granted, limitations on the use of
> such information, which do not exist under current
> regulations, were included to restrict any potential for the
> abuse of the rights of law-abiding licensees.

*Id*. at 18.

The use of § 923(g)(5)(A) in relation to traces would be limited
not only to "bona fide criminal investigations," but would be further
confined by what would be enacted as § 926(a).[14]  As the Senate report,
which referred to the demand-letter provision as the "tracing
provision[]" below, further explained:

---

[13]  As noted above, in 1994, Congress enacted § 923(g)(7), which created
an explicit duty of a licensee to respond to a trace request, "orally or in
writing, as the Attorney General may require" within 24 hours and authorized
the Attorney General to make such requests by telephone.  A trace request
pursuant to § 923(g)(7) was, however, only for the purpose of "determining the
disposition of 1 or more firearms in the course of a bona fide criminal
investigation."

[14]  § 926(a) provides in part that the Attorney General may not
promulgate a "rule or regulation" which would:

> require that records required to be maintained under this chapter
> or any portion of the contents of such records, be recorded at or
> transferred to a facility owned, managed, or controlled by the
> United States . . . .

-13-

> The multiple sales, out-of-business records, and tracing provisions, which, in certain respects, codify existing regulations, were included in the Committee amendment to achieve an appropriate balance between legitimate law enforcement needs and the Committee's determination to substantially restrict the circumstances under which inspections are authorized. This, in turn, reduces the potential for unwarranted intrusions into the business affairs of law-abiding licensees. However, . . . the authority granted under 18 U.S.C. 923(g)(3), (4) and (5), as well as that contained in paragraph (1), as amended, are not to be construed to authorize the United States . . . to use the information obtained from any records or form which are required to be maintained for inspection or submission by licensees under Chapter 44 to establish any system of registration of firearms, firearms owners, or firearms transactions or dispositions.

*Id*. at 18.

Specifically, § 106 of FOPA, 100 Stat. 459-60, amended § 926(a) to prohibit BATF from requiring that licensee records "be recorded at or transferred to" a government facility or establishing any registration system, but allowing the authority to conduct traces "in the course of a criminal investigation." The report states that "this 'tracing' authority is codified in the Committee's amendment," obviously referring to what would be enacted as § 923(g)(5)(A). Senate Report 98-583 at 27.

Senator Orrin Hatch, floor manager of FOPA, explained of the demand letter regulation: "The Senate bill explicitly codifies regulations permitting tracing of firearms used in crimes." 132 Cong. Rec. S5351 (May 6, 1986).

In later Senate debate, Senator Hatch explained of § 926(a) that "the authority to request tracing information for dealers can never be used to establish any centralized or regional registration system for

firearms or firearm owners." 131 Cong. Rec. S8691 (June 24, 1985). Senator Hatch also clarified the understanding of the 1968 demand letter regulation which FOPA would codify as follows:

> *In order to facilitate tracing of firearms used in violent crimes, licensed dealers currently are required to provide the Secretary of Treasury with information about specific weapons upon request.* Further a dealer must report multiple handgun sales to the same person which occur within 5 consecutive business days, and if the dealer is going out of business, he must send his records to the BATF rather than destroy or otherwise dispose of them. These tracing authorities are included currently in Federal regulations.

131 Cong. Rec. S8691 (June 24, 1985) (emphasis added).

Senator Hatch added that "the authority to request tracing information for dealers can never be used to establish any centralized or regional registration system for firearms or firearm owners." *Id*. Hatch stated about § 923(g)(5)(A) that "Congress had no intent to require all law-abiding gun dealers to report all their firearms transactions" to BATF. *Id.* at S9129 (July 9, 1985).[15] For the purpose of "clarifying the record information submission requirement for firearms licensees," Senator Hatch inserted into the record ATF Director Serr's explanation of the purpose of the demand letter regulation quoted above.

Not a single senator voiced a contrary view of the purpose of § 923(g)(5)(A). Thus, the canon of statutory construction that it "is the sponsors that we look to when the meaning of the statutory words is

---

[15] Senator James McClure, the chief FOPA sponsor, provided the following concise explanation: "The central compromise of the Gun Control Act of 1968 – the *sine qua non* for the entry of the Federal Government into any form of firearms regulation was this: Records concerning gun ownership would be maintained by dealers, not by the Federal Government and not by State and local governments." 131 Cong. Rec. S9163-64 (July 9, 1985).

in doubt," *Schwegmann Bros. v. Calvert Corp.,* 341 U.S. 384, 394-395 (1951), applies with particular emphasis with respect to § 923(g)(5)(A).

When the bill was being considered by the House after Senate passage, Edward T. Stevenson, Deputy Assistant Secretary, Enforcement and Operations, Department of the Treasury, explained the understanding of the United States of the language which became § 923(g)(5)(A):

> Initially, the bill could be interpreted to remove the statutory authority by which the Government may require licensees to report information from required records. Based on this authority, licensees are currently required by regulations to provide information about <u>particular firearms transactions</u> on request, to report multiple sales of handguns to the same person, and to turn in to the Government out-of-business records upon ceasing business. Under S. 49, as passed by the Senate, these existing reporting requirements would be preserved and now specifically required by statute.

Legislation to Modify the 1968 Gun Control Act: Hearings Before the Committee on the Judiciary, House of Representatives, 99th Cong., 1st & 2d Sess., 1139 (1986) (emphasis added).

As discussed, *supra*, the "existing reporting requirements" referred to by Deputy Assistant Secretary Stevenson were "existing Treasury regulations describing activities which facilitate the Secretary's ability to trace the disposition of firearms in connection with criminal investigations." S.Rep. 98-583, at 17. Thus, it was the clear understanding of both Congress and the executive branch prior to the enactment of § 923(g)(5)(A) that both the original regulation and the statute as enacted by FOPA were limited in scope to (1) information from dealers who were in violation of the law, and (2) information from any dealers about specific firearms dispositions necessary for bona fide criminal investigations. Because the letter does not demand

record information for those purposes, the letter exceeds Melson's authority.

The Ninth Circuit's opinion in *J&G Sales Ltd.* v. *Truscott*, 473 F.3d 1043 (9th Cir. 2007) does not assist Melson.  The Ninth Circuit first explained that ATF sent demand letters to certain licensees "to combat the difficulties of tracing secondhand firearms . . . ."  473 F.3d at 1046.  Further, the letters were sent "to the approximately 450 FFL dealers who in 1999 had been linked to ten or more trace requests with a time-to-crime of three years or less," which "comprised just 0.6% of FFL dealers . . . ."  *Id.*  The licensees were required to provide only the following information regarding secondhand firearm acquisitions:

> the name of the manufacturer and/or importer; the acquisition date; the model; the caliber or gauge; and the serial number. Recipients of the demand letters were expressly directed not to provide either the name of the person from whom the secondhand firearm was acquired or to whom the firearm was transferred.

*Id.*

The court summarized this approach in stating that ATF "set out to remedy its inability to trace secondhand firearms by using a narrowly-tailored approach" in that the demand letter at issue was sent only "to a small fraction of FFLs and sought only a limited subset of information from FFLs regarding a limited subset of firearms."  473 F.3d at 1049.  By contrast, the instant letter was sent to every licensee in four (4) states, without regard to whether the licensee had been "linked to" to any form of even remotely questionable activity and without any showing of need for the information that could not be

obtained any other way.  Most importantly, for purposes of the conflict with Congress' will as expressed in § 926(a), the letter at issue in *J&G Sales Ltd.* v. *Truscott* expressly prohibited the licensee from providing either the name of the person from whom the secondhand firearm was acquired or to whom the firearm was transferred, whereas the letter at issue here expressly requires that information.

There is no deference due to the ATF's interpretation of § 923(g)(5)(A).  As stated in *Chevron U.S.A. Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 866 (1984):

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. (Citations omitted).  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

467 U.S. at 843, n.9.

Only if a statute is silent or ambiguous with respect to a specific issue may a court defer to the agency, and then only if the agency's interpretation is expressed in a regulation.  *Christensen v. Harris County,* 529 U.S. 576, 586-587 (2000)("court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute").  This is especially true where the statute is intended to limit the powers of the agency:

> [C]ourts construing statutes enacted specifically to prohibit agency action ought to be especially careful not to allow dubious arguments advanced by the agency in behalf of its proffered construction to thwart congressional intent expressed with reasonable clarity, under the guise of deferring to agency expertise on matters of minimal ambiguity. . . .  Congress enacted the CEBA moratorium to stop federal banking agencies from taking certain actions for

-18-

a one-year interval so that Congress itself could have the
opportunity to decide how to resolve certain controversies in
the banking field.   An enactment of that sort must not be
given a crabbed interpretation that risks undermining its
purpose.

*Independent Insurance Agents* v. *Board of Governors of Federal Reserve
System*, 838 F.2d 627, 632 (2d Cir. 1988).

In the instant case, when all the court's tools of statutory
construction have been utilized, including legislative history,
Congress' intent is evident and clear, and that intent must be given
effect; that the ATF may not use § 923(g)(5)(A) to require the
reporting of required by the letter.

B) In addition to being likely to succeed on the merits of their
argument that Melson has exceeded his authority under § 923(g)(5)(A),
Plaintiffs are also likely to succeed on the merits of their argument
that the reporting requirement violates the proviso in the Consolidated
Appropriations Act, 2010, Pub.L. 111-117, div. B, tit. 2, 123 Stat.
3034, 3128 (2009).   That act provides appropriations for necessary
expenses of the ATF, with the following proviso:

> Provided, That no funds appropriated herein shall be
> available for salaries or administrative expenses in
> connection with consolidating or centralizing, within the
> Department of Justice, the records, or any portion thereof,
> of acquisition and disposition of firearms maintained by
> Federal firearms licensees . . . .

The Department of Defense and Full-Year Continuing Appropriations
Act for the 2011 fiscal year, Pub.L. 112-10, div. B., tit. 1, §
1101(a)(6), 125 Stat. 38, 102-03 (2011), continued the Consolidated
Appropriations Act, 2010, in effect until September 30, 2011.

It cannot be disputed that ATF's National Tracing Center is

"within the Department of Justice."  It also cannot be disputed that the reports required to be created by Plaintiffs are records of the "disposition of firearms maintained by Federal firearms licensees." Further, in view of the fact that the information is to be sent to the ATF's National Tracing *Center*, it cannot be disputed that the records are being "centraliz[ed]" within the Department of Justice.  Finally, it cannot be disputed that processing of the reports will involve ATF employees who receive salaries from appropriated funds.  Thus, processing the reports will violate the Consolidated Appropriations Act.

2) <u>Likely to suffer irreparable harm in the absence of preliminary relief</u>: In the attached affidavits, J&G and Foothills both state that, because of the reporting requirement, they will suffer irreparable economic loss as a result of having to devote employee time to preparing the reports, establishing and maintaining a system to determine whether a customer has purchased a qualifying rifle within the past five (5) consecutive business days, and the loss of business from both in-state and out-of-state potential purchasers of qualifying rifles who would have bought such rifles but have been dissuaded from doing so because they wish to protect their privacy rights.  Further, the privacy rights of their customers will be irreparably harmed because the customers' personal information will be provided to, and maintained by, the National Tracing Center.[16]  Accordingly, Plaintiffs

---

[16]  J&G and Foothills have standing to raise their customers' privacy rights under *Powers v. Ohio,* 499 U.S. 400, 410-411 (1991)("We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an

are not just likely to, but will certainly, suffer irreparable harm in the absence of preliminary relief.

3) <u>Balance of equities tips in Plaintiffs' favor</u>: In *Sherley* v. *Sebelius*, 644 F.3d 388, 398-399 (D.C. Cir. 2011), the court viewed this factor as balancing the hardships on the parties with and without a preliminary injunction and determining whether the preliminary injunction would maintain the status quo. In the instant case, if ATF was enjoined from enforcing the reporting requirement, ATF would suffer no hardship, whereas, in the absence of an injunction, Plaintiffs will suffer the irreparable economic losses discussed above and their customers' privacy interests will be irreparably harmed. Moreover, in the absence of an injunction, if Plaintiffs' systems for determining whether a customer has purchased a qualifying rifle within the past five (5) consecutive business days are not functioning perfectly and a report was not filed because a customer purchased two qualifying rifles within five (5) consecutive business days, Plaintiffs would be subject to revocation of their licenses under 18 U.S.C. § 923(e)[17] and possibly criminal prosecution.[18]   The equities tip strongly in favor of

_____

"injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, (citation omitted); the litigant must have a close relation to the third party, (citation omitted); and there must exist some hindrance to the third party's ability to protect his or her own interests.").

[17]   "(e) The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ."

[18]   Plaintiffs do not believe that criminal prosecution is possible.  18 U.S.C. § 924(a)(1)(D) punishes any person who "willfully violates any other provision of this chapter" with five years imprisonment.  Failure to respond

Plaintiffs.

Granting an injunction will also maintain the status quo as the reporting requirement at issue here is something that has never been required in the quarter century since § 923(g)(5)(A) was enacted.

4) <u>An injunction is in the public interest</u>: It is in the public interest not to impose reporting obligations that Congress has not clearly imposed because it is "in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers." *Mylan Pharmaceuticals, Inc.* v. *Shalala*, 81 F.Supp.2d 30, 45 (D.C. 2000).  Whether ATF (or the court) believes that the reporting requirement imposed on Plaintiffs is good public policy is irrelevant.  Thus, the D.C. Circuit has noted: "Our polity would be very different indeed if the courts could decline to enforce clear laws merely because they thought them contrary to the public interest; we decline to embark on that path." *Mova Pharmaceutical Corp.* v. *Shalala*, 140 F.3d 1060, 1066, n.6 (D.C. Cir. 1998).  It is thus in the public interest to belay the reporting requirement at issue until it has been definitively determined that ATF has the authority to require such reporting.

---

to a demand letter is not a "violation" of "this chapter."  This refers to crimes specified in § 922, not to civil obligations specified in § 923. Moreover, § 924(a)(3)(B) is not applicable, as it punishes any licensee who knowingly "violates subsection (m) of section 922" with no more than one year imprisonment.  § 922(m) makes it unlawful for a licensee knowingly "to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder."  Failing to report is not the same as making an appropriate entry in or fail to properly maintain a required record.

<u>CONCLUSION</u>

The court should grant a preliminary injunction.


                         Respectfully submitted,

                         J & G SALES, LTD.
                         FOOTHILLS FIREARMS, LLC
                         By Counsel


                         /s/_____
                         Richard E. Gardiner
                         D.C. Bar # 385916
                         Suite 403
                         3925 Chain Bridge Road
                         Fairfax, VA 22030
                         (703) 352-7276
                         (703) 359-0938 (fax)
                         regardiner@cox.net


                         /s/_____
                         Stephen P. Halbrook
                         D.C. Bar # 379799
                         Suite 403
                         3925 Chain Bridge Road
                         Fairfax, VA 22030
                         (703) 352-7276
                         (703) 359-0938 (fax)
                         protell@aol.com