UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE NATIONAL SHOOTING SPORTS FOUNDATION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 11-1401 (RMC) (consolidated with 11-1402 (RMC)) |
| B. TODD JONES, Acting Director, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES,[1] | ) ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON PRELIMINARY INJUNCTION AND SCHEDULE**

This matter comes before the Court on the motions for preliminary injunction filed by Plaintiffs in these consolidated cases. Plaintiffs are The National Shooting Sports Foundation, Inc. ("NSSF"), J & G Sales, Ltd., and Foothills Firearms, LLC.[2] Plaintiffs seek to enjoin the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") from requiring that all federally licensed firearms dealers in states bordering Mexico (California, Arizona, New Mexico and Texas) report to the ATF information regarding sales of more than one semi-automatic rifle to the same person at one time or during a period of five consecutive business days. The Department of Justice, of which ATF is a constituent agency, announced the multiple sales reporting requirement on July 11, 2011. The

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), B. Todd Jones is substituted for his predecessor, Kenneth Melson, Acting Director of the Bureau of Alcohol, Tobacco, Firearms & Explosives.

[2] The first of these Plaintiffs, NSSF, is a nonprofit trade association based in Connecticut. Its members include 6,000 federally licensed firearms manufacturers, distributors, and retailers. The latter two, J & G and Foothills, are firearms dealers located in Arizona.

ATF sent a letter to all dealers in those states on the next day.[3] The requirement went into effect on August 14, 2011.

Plaintiffs filed their Complaints on August 3, 2011. A similar complaint was filed in the District of New Mexico on the same day, and three days later, another complaint was filed in the Western District of Texas; ATF has filed motions to transfer venue of those cases to this Court.[4]

Plaintiffs contend that while the ATF has previously required them to keep records on multiple hand gun sales, it has not done so with regard to sales of rifles. Moreover, dealers have previously been required to report sales to the ATF only when certain criteria were met, such as when law enforcement was actively investigating a crime. Plaintiffs assert that while Congress intended dealers to maintain records, it never intended any national registration or reporting of firearms sales and thus ATF has overstepped its authority. Further, Plaintiffs claim that they have had to hire and train additional employees and set up new recording and reporting systems in order to meet the reporting requirement imposed. This, they claim, is expensive and is causing them irreparable harm because these costs cannot be recovered from the federal government due to sovereign immunity. *See* NSSF's Mem. in Support of Mot. for Prelim. Inj. [Dkt. # 11-1] ("NSSF's Mem.") at 20 n.15 ("[W]ith no apparent avenue for obtaining damages against ATF, any economic loss suffered by federally-licensed firearms dealers in Arizona, California, New Mexico and Texas

---

[3] The ATF delegated its authority to the Acting Director to the Chief of the National Tracing Center, Charles Houser. The July 12, 2011 letter is signed by Mr. Houser. *See* Compl. [Dkt. # 1], Ex. A (July 12, 2011 Letter).

[4] *See Ron Peterson Firearms, LLC v. Melson*, 1:11-cv-678 (D.N.M. filed Aug. 3, 2011); *10 Ring Precision, Inc. v. Melson*, 5:11-cv-663 (W.D. Tex. filed Aug. 5, 2011). Plaintiffs in those cases have not yet responded to the motions to transfer, but the courts have agreed not to consider any motion for preliminary injunction until they resolve the transfer issue.

resulting from ATF's demand for reporting on multiple sales of certain rifles can never be recovered and is therefore *per se* 'irreparable.'").

The parties presented legal arguments on their requests for preliminary injunction at a hearing on September 1, 2011. At this hearing, the parties also presented their views on expediting these cases. The Court will deny the motions for preliminary injunction and will require expedited briefing on the merits as set forth below.

### I. Standard for Preliminary Injunction

A district court may grant a preliminary injunction "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). An injunction is an equitable remedy so its issuance is one which falls within the sound discretion of the district court. *See Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). A plaintiff seeking a preliminary injunction must establish that:

> (a) he is likely to succeed on the merits;
>
> (b) that he is likely to suffer irreparable harm in the absence of preliminary relief;
>
> (c) that the balance of equities tips in his favor; and
>
> (d) that an injunction is in the public interest.

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The D.C. Circuit has further instructed that "the movant has the burden to show that all four factors . . . weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

In the past, courts have balanced the four factors on a "sliding scale," *i.e.*, a lesser showing on one factor could be surmounted by a greater showing on another factor. *CSX Transp.,*

*Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005). The Supreme Court called this approach into question: "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm [despite finding a strong likelihood of success on the merits] is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The D.C. Circuit has interpreted *Winter* to require a positive showing on all four preliminary injunction factors. *Davis*, 571 F.3d at 1292.

## II. Analysis Regarding Irreparable Harm

A plaintiff faces a high burden to demonstrate irreparable injury. The injury "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "The moving party must show the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks omitted). The injury must also be without remedy. As the Circuit has held: "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id*. at 297-98 (quoting *Virginia Petroleum Jobbers Ass'n. v. Federal Power Com.*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

The "general rule [is] that economic harm does not constitute irreparable injury." *Davis*, 571 F.3d at 1295. Harm that is "merely economic" in character is typically not sufficiently grave under the irreparable injury standard. *See, e.g., Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 14 (D.D.C. 2009); *Coal. for Common Sense in Gov't Procurement v. United States*,

576 F. Supp. 2d 162, 168 (D.D.C. 2008) (noting that where the alleged injury was admittedly economic, movant must compensate by demonstrating the severity of its alleged economic harm).

Alleged economic injury must be "more than simply irretrievable," *Mylan Labs., Inc. v. Leavitt*, 484 F. Supp. 2d 109, 123 (D.D.C. 2007); it must also be "serious in terms of its effect on the plaintiff." *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008); *accord Toxco Inc. v. Chu*, 724 F. Supp. 2d 16, 31 (D.D.C. 2010). Therefore, an inability to recover lost profits or payments does not always constitute irreparable harm. *See LG Electronics, U.S.A., Inc. v. Dep't of Energy*, 679 F. Supp. 2d 18, 35–36 (D.D.C. 2010) (noting that "[e]ven assuming [the plaintiff] will not be able to recover monetary damages from DOE . . . the financial impact [the plaintiff] claims it will suffer does not rise to the level of irreparable harm" as those losses represented "a minuscule portion of the company's worldwide revenues"); *Coal. for Common Sense in Gov't Procurement*, 576 F. Supp. 2d at 169–70 (holding that the plaintiff's claims of lost income, even if irretrievable, did not rise to the level of irreparable harm because the losses amounted to a fraction of the plaintiff's overall business); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31–32 (D.D.C. 2006) (holding that even if the court were to credit the plaintiff's allegations of thirty one million dollars in irretrievably lost sales during the pendency of the litigation, the economic loss was insufficiently severe in the context of the plaintiff's overall business operations to warrant a finding of irreparable harm); *Apotex, Inc. v. FDA*, Civ. No. 06-0627, 2006 WL 1030151, *16 (D.D.C. Apr. 19, 2006) (concluding that the plaintiff's lost sales during the pendency of the litigation, even if irretrievable, were insufficiently severe to constitute irreparable harm).[5]

---

[5] *But see Smoking Everywhere, Inc. v. FDA*, 680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010) ("It is also worth noting that even if the claimed economic injury did not threaten plaintiffs' viability, it is still irreparable because plaintiffs cannot recover money damages against FDA.

Plaintiffs have not shown that the economic outlay required to comply with the ATF's reporting requirement is costly, *i.e.*, Plaintiffs have not shown that the harm is "great" or "serious." The ATF points out that federal firearms licensees have long been required to maintain records regarding the purchase and sale of firearms under 18 U.S.C. 923(g)(1)(A). Every time a licensee transfers a firearm to a non-licensee, a Firearms Transaction Record (ATF Form 4473), must be completed, including the name and address of the purchaser and identifying information regarding the firearm. 27 C.F.R. § 478.124. Licensees are required to retain these forms, alphabetically by purchaser name, chronologically by date of sale, or numerically by transaction number. *Id*. § 478.124(b). Thus, firearms dealers cannot show that there was a new cost imposed by the need to complete and retain these forms. Plaintiffs contend, however, that additional costs have been imposed because (1) they needed to amend their recording systems to permit them to search for multiple rifle sales to the same purchaser within a five-day period and (2) they are now required to report this information to the ATF. Plaintiffs have already paid most of these costs, as they readied their recording systems in advance of August 14, 2011 when the new reporting requirement went into effect. *See* NSSF's Mem., Ex. A (French Aff.) ¶¶ 6-8 (time to set up computer system for reporting was estimated to be more than 40 hours)). Further, their continuing costs do not appear to be substantial. *Id*., Ex. A (French Aff.) ¶ 8 (the time for reporting each day will be 10–60 minutes,

---

Where a plaintiff cannot recover damages from an agency because the agency has sovereign immunity, any loss of income suffered by [the] plaintiff is irreparable *per se*.") (quotations and citations omitted), *aff'd* 627 F.3d 891 (D.C. Cir. 2010). Taken out of context, the district court's statement that "any loss of income" that cannot be recovered is irreparable is overbroad. The Circuit clearly requires that harm be both certain and great. *Wisconsin Gas*, 758 F.2d at 674. On appeal, the Circuit affirmed the district's decision in *Smoking Everywhere*, finding that harm was certain and great. The Circuit noted that the FDA's refusal to admit plaintiff's products into the United States destroyed the firm's ability to cover its cost of purchase or production and constituted irreparable harm. 627 F.3d at 898.

depending on that day's rifle sales). Plaintiffs have not shown that they will suffer great or serious harm.

Because Plaintiffs' prospective loss does not rise to the level of irreparable harm, Plaintiffs have failed to make a positive showing on one of the four factors required to show that Plaintiffs are entitled to a preliminary injunction. Without a positive showing on all four factors, the motion for preliminary injunction must be denied. *See Davis*, 571 F.3d at 1292 (interpreting *Winter*, 555 U.S. at 22).

### III. Briefing Schedule

While the ATF opposes preliminary injunction, it has agreed to prepare the administrative record and to brief the merits on an expedited basis. After hearing Plaintiffs' and ATF's views on briefing, the Court will further shorten the schedule proposed by the ATF and require briefing as set forth below.

Accordingly, it is hereby

**ORDERED** that Plaintiffs' motions for preliminary injunction [Dkts. ## 11, 16] are **DENIED**; and it is

**FURTHER ORDERED** that Defendant shall file the administrative record no later than September 12, 2011; Defendant shall file a motion for summary judgment no later than September 23, 2011; Plaintiffs shall file responses no later than October 12, 2011 at 12:00 p.m.; Defendant may file a reply no later than October 21, 2011 at 12:00 p.m.; a summary judgment hearing is scheduled for October 25, 2011 at 2:00 p.m.

**SO ORDERED.**

Date: September 2, 2011                             /s/
                                   ROSEMARY M. COLLYER
                                   United States District Judge