

# NATIONAL SHOOTING SPORTS FOUNDATION, INC.
11 Mile Hill Road • Newtown, CT 06470-2359 • Tel (203) 426-1320 • Fax (203) 426-7182
E-mail lkeane@nssf.org • www.nssf.org

LAWRENCE G. KEANE
SENIOR VICE PRESIDENT
& GENERAL COUNSEL

February 14, 2011

VIA FACSIMILE
(202) 395-3504                                    (202) 648-9640

Office of Management and Budget               Barbara Terrell
Office of Information and Regulation Affairs   Firearms Industry Programs Branch
725 17th Street, N.W.                          Bureau of Alcohol, Tobacco, Firearms and
Washington, D.C. 20503                         Explosives
                                              99 New York Avenue, N.E.
                                              Washington, D.C. 20226

>  **Re:    60-Day Emergency Notice of Information Collection Under Review: Report of
>  Multiple Sale or Other Disposition of Certain Rifles. 75 Fed. Reg. 79021 (Dec. 17, 2010).
>  OMB Number 1140-NEW**

To Whom It May Concern:

The National Shooting Sports Foundation (NSSF), the trade association for the firearms, ammunition, hunting and shooting sports industry, welcomes this opportunity to share with you our comments on the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) information collection request concerning multiple sales of certain rifles, which was published in the Federal Register on December 17, 2010.

### Preliminary Comments

Members of the firearms industry are proud of their longstanding cooperative relationship with ATF. This relationship is exemplified by the decade-long partnership between ATF and NSSF in the *Don't Lie for the Other Guy* anti-straw purchase public awareness and dealer education campaign. The campaign, which is fully funded by the firearms industry, has been focused on the southwest border region for the last couple of years and just last week, NSSF and ATF partnered to re-launch the *Don't Lie for the Other Guy* campaign in Houston.

NSSF continues to strongly encourage firearms retailers to contact ATF whenever they suspect straw purchases or other efforts to acquire firearms for illegal purposes, such as to illegally smuggle them into Mexico. In fact, ATF has consistently stated that firearms retailers are a critical source of information that can lead to illegal firearms trafficking investigations. ATF has reported to us that it has a very good working relationship with firearms retailers along the southwest border and that they are very cooperative. This helps to explain why ATF, after recently inspecting approximately 2,000 firearms dealers in Texas and Arizona, did not charge a single dealer with any wrongdoing and only revoked two (or 0.01%) licenses for unknown reasons that could have no relationship with firearms trafficking to Mexico. NSSF, and the firearms industry which it represents, looks forward to continuing to work cooperatively with ATF even though we respectfully oppose this proposed information collection for the reasons more fully set forth below.

ATF AR 0697

NSSF opposes the proposed information collection for three primary reasons. First, we do not believe Congress has provided ATF the legal authority under the Gun Control Act to impose this reporting requirement. Second, even if ATF does have the authority, the proposed implementation of this rule is inappropriate. Third, and perhaps more important, we believe that this reporting requirement will make it more difficult for firearms retailers to help law enforcement as illegal firearms traffickers will easily modify their illegal schemes to circumvent the new reporting requirement.

## Congress Has Not Permitted Multiple Sales Reporting of Rifles

ATF proposes to send demand letters to selected federally-licensed firearms dealers requiring the reporting of multiple sales or other dispositions whenever the licensee transfers to the same individual within five consecutive business days two or more semi-automatic rifles in a caliber greater than .22 with the ability to accept a detachable magazine. ATF Form 3310.12, on which the report must be made and submitted to ATF, will contain the transferee's name, residential address, relevant identification number and a list of applicable firearms purchased.

The Gun Control Act of 1968 (GCA) requires federal firearms dealers to report the multiple sale of handguns. 18 U.S.C. § 923(g)(3)(A), 27 C.F.R. 478.126a. It does not, however, contain a similar provision requiring the reporting of multiple sales of rifles. The absence of a provision, such as a multiple rifle sales reporting requirement, limits ATF to enforce only what is actually set forth in the law. "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576 (2000). Had Congress intended to require long gun reporting, it could have done so, but it did not.

Less than two months prior to the publication of the information collection in the Federal Register, ATF itself raised doubts about its authority in this matter. In response to a Department of Justice's (DOJ) Office of the Inspector General (OIG) report recommending that ATF "explore options for seeking a requirement for [the] reporting of multiple sales of long guns," ATF Acting Director Melson questioned whether the GCA grants ATF the authority to impose this reporting requirement. Acting Director Melson wrote that "ATF concurs, but notes that [mandating the report of multiple sales of long guns] may require a change to the Gun Control Act which is beyond ATF's and the Departments authority." *Review of ATF's Project Gunrunner* http://www.justice.gov/oig/reports/ATF/e1101.pdf at Appendix V, ATF letter dated Oct. 21, 2010).

Moreover, the Firearm Owners Protection Act (FOPA), which amended the GCA, in 18 U.S.C. § 926(a) specifically prohibits ATF from prescribing any regulation that "require[s] that records required to be maintained under this chapter, or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States . . . nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established." If ATF argues that this requirement concerns records required under the chapter, then FOPA prohibits their transfer to a government facility. However, if ATF instead argues that these records are not required under this chapter, then ATF is not permitted to request them via demand letters. In either case, this attempt to collect firearms sales information from dealers is surely what the FOPA intended to prohibit absent a bona fide criminal investigation.

### Multiple Sales Reporting of Certain Rifles Exceeds ATF's "Demand Letter" Authority

ATF's proposed use of demand letters to implement the collection of multiple sales reporting of certain rifles from all 8,500 dealers in Texas, New Mexico, Arizona and California exceeds ATF's authority under Section 923(g)(5)(A).

The GCA and ATF's implementing regulations require a federal firearm licensee (FFL) to submit to ATF upon request by letter "all record information required to be kept by this chapter or such lesser record information as the Attorney General in such letter may specify." 18 U.S.C. 923(g)(5), 27 C.F.R. 478.126(a). This section, which allows ATF to "demand" information from licensees, also expressly limits the information

2

ATF can demand to only that which is required the GCA and regulations. Since the GCA makes no mention of multiple rifle sale reporting requirements, requiring a dealer to provide such information is more than what is permitted since it is not within the scope of "required to be kept by this chapter or lesser."

Under ATF's interpretation of Section 923(g)(5)(A), its authority is essentially limitless, If ATF is allowed to collect information from licensees in these four states on the multiple sale of certain rifles for one year, then it could seek that same information for a) a longer time period if not on a permanent basis and b) from *all* licensees in every state (for whatever time period ATF decided) or c) seek any other piece of information it wants (besides the multiple sale of certain rifles). Surely Congress did not grant to ATF such sweeping authority by simply by sending licensees a letter invoking authority under Section 923(g)(5)(A).

Previously, ATF demand letters have only been authorized when two standards have been met. First, courts have allowed "demand letters" only when the "letter was limited to federal firearms licensees who had violated federal law." *RSM v. Buckles*, 254 F.3d 61 (4th Cir. 2001). Second, the Firearm Owner's Protection Act amended the GCA so that "demand letter" can only be sent concerning "firearms in the course of a bona fide criminal investigation." 18 U.S.C.A. § 923(g)(7).

In this case, ATF is imposing a blanket requirement on all dealers in four states without any allegation that any of them violated the GCA or any ATF regulations. ATF's purpose in collecting this information is in hope of coming upon "actionable law enforcement intelligence." At the time ATF receives this information it will necessarily not be part of a current bona fide criminal investigation.

The proposed demand letters by ATF contradicts Congress' original intent in enacting Section 923(g)(5)(A). It also contravenes ATF's own understanding of its demand letter authority. Harold Seer, who was the Director of ATF at the time the original demand letter regulation was promulgated, wrote that ATF would only use the demand-letter regulation "when we become aware of violations of the law by an unscrupulous dealer." Yet, here ATF is not alleging that any of the 8,500 dealers who will receive a demand letter are "unscrupulous." To the contrary, as noted above, after inspecting 2,000 dealers ATF did not charge a single dealer with committing a crime. Former Director Serr told Congress "[ATF has] no intention of requiring law-abiding gun dealers to report their firearms transactions to us." 131 Cong. Rec. S9129 (July 9, 1985). Yet that is precisely what these demand letters will accomplish and what Congress has prohibited.

### ATF Has Improperly Attempted to Implement This Rule

The information collection request published by ATF in the Federal Register (75 Fed. Reg. 79021, Dec. 17, 2010) is inconsistent with public statements by ATF (*See* remarks by Acting ATF Director Ken Melson, December 20, 2010 at http://www.atf.gov/press/releases/2010/12/122010-hdqrts-melson-webcast.html, "ATF Remarks") and subsequent news reports. First, the information collection request itself applies to *all* federal firearms licensees everywhere in the United States. It is not geographically limited to licensed firearms dealers located in Texas, New Mexico, Arizona and California (*See* ATF Remarks, *supra*). The notice does not say the collection of information will be for one year, as stated by Acting Director Melson.

The notice also underestimates the burden on licensees. ATF appears assume that only one form per dealer will be filled out per year. Not basis is set forth for this conclusion and we are left to speculate. The time estimate of 12 minutes we believe underestimates the burden on small dealers especially those that have not sold handguns and are not familiar will completing the multiple sales form for handguns. The burden and cost to dealers is also not limited to filling out the form itself. ATF underestimates the burden and cost to dealers – particularly small dealers – to implement processes to ensure compliance wit this new reporting requirement, e.g. that one employee doesn't accidentally sell and fail to report a perfectly legal rifle to a customer to whom another employee sold a rifle within the five day window.

3

**ATF AR 0699**

Buyers will no longer be protected by FOPA. Never before, not even in situations where demand-letters have been permitted, has the required information included the identity of the transferors. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281 (4th Cir. 2004).

### Multiple Sales Reporting of Certain Rifles Will Make it More Difficult for Dealers to Provide ATF with Actionable Intelligence; Illegal Firearms Traffickers will Evade Detection

Even if ATF does have the authority to require multiple sales reporting of certain rifles, we believe it is an ill-advised policy because it will make it more difficult for firearms retailers to assist ATF. Illegal firearms traffickers engaged in acquiring firearms to smuggle into Mexico will simply and rapidly modify their illegal schemes to circumvent the reporting requirement. For example, rather than purchase multiple rifles from one dealer in the specified time period, they will recruit more straw purchasers to illegally purchase firearms or they will have straw purchasers illegally buy firearms from multiple dealers. They can also simply shift their trafficking activities outside the four-states of this proposed requirement.

### Conclusion

For the above reasons, Congress has not granted ATF the authority require this reporting requirement and, even if it did, the policy is ill-advised as it will make it more difficult for firearms dealers to cooperate with ATF as illegal firearms traffickers will alter their illegal schemes to avoid the reporting requirement. However, should ATF move forward with the reporting requirement ATF should provide dealers with the option to report the information via a web-based interface and ATF should refrain from collecting any purchaser information. Despite our disagreement with ATF on this particular matter, NSSF continues to support and encourage firearms retailers to contact ATF whenever they suspect straw purchases or other efforts to acquire firearms for illegal purposes, such as to illegally smuggle them into Mexico. NSSF also remains fully committed to continuing to cooperate with ATF on just activities as our joint "Partnership for Progress" dealer education seminars and the *Don't Lie for the Other Guy* campaign.

Sincerely,

Lawrence G. Keane

LGK/rc/mas

4

**ATF AR 0700**



# Brady Center

## To Prevent Gun Violence

February 15, 2011

Office of Management and Budget
Office of Information and Regulation Affairs
Attention: Department of Justice Desk Officer
Washington, D.C. 20503

Barbara A. Terrell
Barbara.Terrell@atf.gov
Firearms Industry Programs Branch
fipb@atf.gov
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, N.E.
Washington, D.C. 20226

**Re: Federal Register Notice of December 17, 2010 (Volume 75, Number 242, Page 79021), 60-Day Emergency Notice of Information Collection Under Review: Report of Multiple Sale or Other Disposition of Certain Rifles**

To Whom it May Concern:

The Brady Center to Prevent Gun Violence supports the Administration's proposal to require reporting of multiple sales of certain long guns by Federal Firearms Licensees in the Southwest Border States of California, Arizona, New Mexico and Texas.

## The Problem Posed By Guns Sold In The U.S. Supplying Mexican Drug Cartels

Weak firearms laws in the United States have contributed to massive numbers of guns, including military-style weaponry, being sold in the United States, to be trafficked to Mexican drug cartels who wreak havoc on citizens, visitors, law enforcement, and government officials in Mexico. The gun violence that has resulted has cost the lives of Americans, as well as thousands of Mexicans who have been shot and killed, and has threatened Mexico's security. Since 2006, fourteen U.S. Custom and Border Patrol Agents have been killed, most recently Agent Brian Terry, who was killed on December 15, 2010 with an AK-47, one of the weapons covered by this proposed rule.[1] Mexican officials report that since December 2006 "a total of 915 municipal police, 698 state police and 463 federal agents have been killed at the hands of criminal gangs."[2]

The violence fueled by our weak gun laws threatens to cause a major foreign policy crisis for the U.S. Indeed, Homeland Security Secretary Janet Napolitano has warned that "[t]here is a possibility, remote as it may be, but there is a possibility of [Mexico] becoming a narcostate."[3]

ATF AR 0701

A report by the U.S. Joint Forces Command on worldwide security threats listed Mexico as one of two countries (along with Pakistan) that "In terms of worse case scenarios ... bear consideration for a rapid and sudden collapse."[4] The Joint Forces Command pointed to the drug cartel violence as the cause of this potential threat: "The Mexican possibility may seem less likely, but the government, its politicians, police and judicial infrastructure are all under sustained assault and pressure by criminal gangs and drug cartels. How that internal conflict turns out over the next several years will have a major impact on the stability of the Mexican state."[5] Mexico's "politicians, police and judicial infrastructure are all under sustained assault and pressure by criminal gangs and drug cartels."[6] The Command made clear that this potential crisis would have serious homeland security implications for the U.S., requiring an American response. "Any descent by Mexico into chaos would demand an American response based on the serious implications for homeland security alone."[7]

The crisis fueled by our weak gun laws threatens America's security as well. The Department of Homeland Security has warned that "Mexican Drug Trafficking Organizations constitute the greatest organized crime threat to the United States."[8] The violence and kidnappings that are trademarks of Mexican drug traffickers are no longer confined to Juarez and Tijuana. In Las Vegas, a 6-year-old boy was abducted; in Atlanta, a man was chained and tortured; in Texas, a truck driver was taken across the border – all the work of thugs tied to the Mexican drug cartels.[9] Phoenix, Arizona has now become "the kidnapping capital of the United States," due to drug-related violence crossing the border into the U.S.[10]

Semi-automatic "long guns" sold in the U.S. make up a significant segment of the drug cartels' arsenal. The Department of Justice, Office of the Inspector General has reported that 48% of the crime guns recovered and traced in Mexico in 2009 were long guns, up from 20% in 2004.[11] According to ATF, semi-automatic long guns such as AR-15s and AK-47s are weapons of choice for the Mexican cartels.

## The Problem Posed By Gun Trafficking into Mexico

According to reports, during the past four years more than 60,000 U.S. guns have been recovered in Mexico.[12] Estimates of the guns flowing into Mexico from the U.S. are as high as 2,000 guns every day,[13] a figure that is even more staggering given that Mexico only has about 6,000 legally registered guns.[14] A vast majority of crime guns recovered and traced in Mexico are sold in the U.S., primarily the southwest border states.[15] It is not surprising that Mexican criminals look to the U.S. to obtain guns, because Mexico has strong gun laws that make it difficult for criminals to get guns there. Across the border in the U.S., however, traffickers for drug cartels can easily find countless sellers at gun shops and gun shows willing to provide them with all the firepower they can afford.

## The Problem Posed By Assault Rifles Trafficked from the U.S. to Mexico

The ease of buying high-powered assault weapons in the U.S., following the expiration of the Assault Weapon Ban in 2004, is facilitating drug cartel violence.[16] Data shows a surge in seizures of assault rifles and .50-caliber guns,[17] and according to ATF, cartels favor more powerful weapons like AK-47s, AR-15s, and FN 5.7 mm caliber pistols, known in Mexico as "Cop Killers" because they can pierce body armor.[18] ATF commented, "You're looking at the same firepower here on the border that our soldiers are facing in Iraq and Afghanistan."[19]

1225 Eye Street, NW, Suite 1100, Washington, DC 20005 • (202) 289-7319 • FAX (202) 408-1851
www.bradycenter.org

2

ATF AR 0702

Between December 1, 2006 and March 12, 2009, the Mexican government seized 35,025 firearms, including 19,231 long guns, most of which are assault rifles, along with 4,708,337 rounds of ammunition.[20]  Tony Garza, Ambassador to Mexico under President George W. Bush, explained that Mexico "would not be the center of cartel activity or experiencing this level of violence, were the United States not the largest consumer of illegal drugs and the main supplier of weapons to the cartels."[21]

## The Problem Posed By Undetected Multiple Sales to Gun Traffickers

Law enforcement has reported that assault weapons are the weapons of choice for drug traffickers, gangs, terrorists, and paramilitary extremist groups. Law enforcement officers are at particular risk from these weapons because of their high firepower, which often leaves them outgunned by criminals.

Assault weapons, as opposed to hunting rifles, are commonly equipped with features that have no sporting value, such as high-capacity ammunition magazines, flash suppressors and pistol grips, which facilitate shooting from the hip. While many of these military-style weapons were banned under the federal Assault Weapon law, since Congress declined to renew that law in 2004, these weapons are available to be sold by thousands of licensed gun dealers.

Many of these guns are trafficked to Mexico after being purchased in bulk sales from U.S. dealers in the Southwest. For example, between January and November 2003, Adan Rodriguez purchased more than 150 guns from U.S. gun dealers for Mexican drug gangs, one of which was connected to the shooting of a police officer in Reynosa.[22]  In one purchase from Ammo Depot in Mesquite, Texas, he bought nine AR-15 assault weapons.[23]

John Hernandez, a 25-year-old unemployed machinist living with his parents in Houston, purchased 23 guns for $24,819, including buying five Bushmaster rifles in one day in September 2006 from Carter's Country gun shop in Spring, Texas.[24]  ATF contends Hernandez purchased at least one of the guns used in the bloody Acapulco massacre.[25]  Hernandez is said to have enlisted a 23-year-old former high school classmate, who authorities say bought 37 guns for $42,763, including buying 8 Bushmasters on May 12, 2007, also from Carter's Country in Spring, Texas.[26]

As recently as January 2011, grand juries have returned multi-count indictments in five cases against 34 defendants accused of assisting Mexican Drug Trafficking Organizations with illegally trafficking firearms from the United States to Mexico.[27]  One of the five indictments alleges that from approximately September 2009 to December 2010, the defendants conspired to purchase hundreds of firearms, including AK-47s, to be illegally exported to Mexico.[28]

Sean Christopher Steward, one of 20 people charged in one indictment with trafficking about 700 firearms to Mexico,[29] purchased more than 100 AK-47s in a single month. Over two days in early December 2009, Steward purchased 50 assault weapons at two stores.[30]  Then, on Christmas Eve, he purchased another 40 at a store in Glendale, Arizona.[31]  Another trafficker in this ring, Uriel Patino, bought hundreds of firearms in several purchases from Lone Wolf Trading Co. in Glendale, Arizona, including 5 AK-47 type rifles on November 24, 2009; 20 AK-47 type rifles on December 11, 2009; 10 AK-47 type rifles on January 15, 2010; 15 AK-47 type rifles on January 30, 2010; 5 AK-47 type rifles on February 8, 2010; 3 AK-47 type rifles on February 11, 2010; 2

ATF AR 0703

AK-47 type rifles on February 12, 2010; 8 AK-47 type rifles on February 13, 2010; 40 AK-47 type rifles on March 15, 2010; 26 AK-47 type rifles on March 25, 2010; 6 AK-47 type rifles on March 26, 2010; 3 Barrett .50 caliber rifles on April 16, 2010; 10 AK-47 type rifles and 1 Bushmaster AR-15 type rifle on June 2, 2010; 10 AK-47 type rifles on July 6, 2010; 16 AK-47 rifles on July 8, 2010; and 12 AK-47 type rifles on August 5, 2010.[32] ATF investigators believe the weapons were meant to arm the Sinoloa drug cartel.[33]

If these bulk sales were for handguns, the gun dealer would be required to complete a form 3310.4, which would notify ATF of the multiple sale. But for multiple sales of AK-47s and other semi-automatic long guns such as these, ATF does not receive notification.

Law Enforcement Needs Additional Tools To Combat Gun Trafficking Into Mexico

Under current law, ATF and other law enforcement agencies have neither the tools nor the resources to adequately stem the flow of trafficked guns. These same weaknesses in the law and law enforcement resources result in many guns being trafficked to criminals on our side of the border as well, and not simply from gun stores in the border states. The federal government needs to implement a comprehensive approach to combat gun violence in the United States as well as Mexico, and Congress needs to provide law enforcement the tools to keep guns out of criminal hands, including requiring background checks for all gun sales, giving ATF increased enforcement authority to crack down on corrupt gun dealers, and restricting the sale of military-style weaponry, such as large capacity ammunition magazines. Yet, while the Administration could – and should – implement other common sense proposals beyond this reporting requirement in order to stop the flow of weapons to criminals in Mexico – and the U.S. – the proposed reporting requirement would create a very helpful tool for law enforcement.

Reporting of multiple handgun sales provides ATF with real-time notification of bulk gun sales, giving law enforcement an opportunity to immediately contact the gun dealer making the sale, and promptly investigate and stop a potential trafficker. The proposed reporting requirement would provide ATF with similar law enforcement tools to investigate and stop the multiple sales of certain long guns by dealers in border states, which should assist ATF in cracking down on the gun trade supplying the Mexican drug cartels and causing such bloodshed in our neighbor to the South.

Requiring federal firearms licensees to report multiple sales of specific long guns would help ATF crack down on gunrunners to Mexico and contribute to security in Mexico and the United States.

Sincerely,

Paul Helmke

Paul Helmke
President
Brady Center to Prevent Gun Violence

ATF AR 0704

[1] Devin Dwyer, *Agent Brian Terry shot in Back with AK-47 During Gunfight, Family Says*, ABC News, Dec. 15, 2010, *available at*: http://abcnews.go.com/US/border-patrol-agent-shot-killed-us-mexico-border/story?id=12401948
[2] Tim Johnson, *As death toll rises, Mexico rethinks drug war strategy*, McCLATCHY NEWSPAPERS, Aug. 13, 2010, *available at*: http://www.kansascitystar.com/2010/08/13/2149024/as-death-toll-rises-mexico-rethinks-html.
[3] Mark Hosenball & Dan Ephron, *Q&A – The Mexican Problem*, NEWSWEEK.COM, Mar 14, 2009.
[4] Diana Washington, *U.S. military report warns 'sudden collapse' of Mexico is possible*, EL PASO TIMES, Jan. 13, 2009; U.S. JOINT FORCES COMMAND, *Joint Operating Environment 2008: Challenges and Implications for the Future Joint Force* 26 (Nov. 25, 2008).
[5] *Id.*
[6] *Id*
[7] *Id.*
[8] Testimony of Director of the Office of Operations Coordination and Planning at the U.S. Department of Homeland Security Roger Rufe Before the Committee on Homeland Security, Subcommittee on Border, Maritime and Global Counterterrorism, *Border Violence: An Examination of DHS Strategies and Resources*, Mar. 12, 2009, *available at*: http://www.dhs.gov/ynews/testimony/testimony_1236961963205.shtm.
[9] Sam Quinones & Richard A. Serrano, *Mexico drug wars spill across the border*, LOS ANGELES TIMES, Nov. 16, 2008, *available at*: http://www.latimes.com/news/nationworld/nation/la-na-cartels16-2008nov16,0,1692616.story.
[10] Mark Hosenball & Dan Ephron, *Q&A – The Mexican Problem*, supra note 2.
[11] James V. Grimaldi & Sari Horwitz, *As Mexico drug violence runs rampant, U.S. guns tied to crime south of border*, THE WASHINGTON POST, Dec. 13, 2010.
[12] *Id.*
[13] THE BROOKINGS INSTITUTION, *Rethinking U.S.-Latin American Relations: A Hemispheric Partnership for a Turbulent World*, Nov. 2008; Kevin Johnson, *ATF takes aim at deep 'iron river of guns'*, USA TODAY, Mar. 18, 2009.
[14] Donna Leinwand, *Authorities try to keep guns from drug cartels*, USA TODAY, Dec. 10, 2008; John Asbury, *Guns move south via inland gangs*, THE PRESS-ENTERPRISE, Sept. 28, 2008.
[15] Mayors Against Illegal Guns, Issue Brief: The Movement of Illegal Guns Across the U.S.-Mexico Border, at 2 ("Three out of four crime guns recovered in Mexican crimes and submitted for tracing were originally sold in a Southwest border state.")
[16] *Id.*
[17] *Id*
[18] Statement of William Hoover, ATF Assistant Director for Field Operations, before the U.S. House of Representatives Committee on Foreign Affairs Subcommittee on the Western Hemisphere, Feb. 7, 2008.
[19] Manuel Roig-Franzia, *U.S. guns behind drug cartel killings in Mexico*, SOUTH FLORIDA SUN-SENTINEL, Nov. 6, 2007.
[20] Data from Mexico Attorney General's Office, Mar. 2009.
[21] *Flow of guns to Mexico endangers Texas safety*, HOUSTON CHRONICLE, Dec. 7, 2008.
[22] James Verini, *Arming the Drug Wars*, PORTFOLIO, July 2008, *available at*: http://www.portfolio.com/news-markets/international-news/portfolio/2008/06/16/Examining-the-USMexico-Gun-Trade; David McLemore, *U.S., Mexico launch unprecedented effort to disrupt cross-borderweapons smuggling*, THE DALLAS MORNING NEWS, June 10, 2008.
[23] *Id.*
[24] Dane Schiller, *Guns Sold Here Kill in Mexico*, HOUSTON CHRONICLE, Nov. 30, 2008.
[25] *Id.*
[26] *Id.*
[27] Press Release, U.S. Department of Justice, Grand Juries Indict 34 Suspects in Drug and Firearms Trafficking Organization (Jan. 25, 2011), *available at*: http://www.atf.gov/press/releases/2011/01/012511-pho-grand-juries-indict-34-suspects-in-drug-and-firearms-trafficking-organization.html.
[28] *Id*
[29] James V. Grimaldi, *White House Delays Gun Reporting Requirement Along Mexican Border*, Wash. Post, Feb. 4, 2011, *available at*: http://www.washingtonpost.com/wp-dyn/content/article/2011/02/04/AR2011020405569.html?hpid=moreheadlines.
[30] *Id.*
[31] *Id.*
[32] U.S. v. Avila, Jr., et al., U.S. District Court, District of Arizona, CR-11-126 PHX JAT (LOA), Indictment, Jan. 19, 2011, at 13-16.
[33] James V. Grimaldi, *White House Delays Gun Reporting Requirement Along Mexican Border*, supra note 29.

ATF AR 0705



**Congressional
Research
Service**

---

**MEMORANDUM**                                                    February 25, 2011

**Subject:**      **DOJ-ATF Multiple Rifle Sales Emergency Notice of Information Collection Request**

**From:**        Vivian Chu, Legislative Attorney, 7-4576 (Legal Issues - Firearms)
                 Vanessa K. Burrows, Legislative Attorney, 7-0831 (Legal Issues - Paperwork Reduction Act)
                 William J. Krouse, Specialist in Domestic Security and Crime Policy, 7-2225

**This memorandum was prepared to enable distribution to more than one congressional office.**

---

This memorandum provides background on the "60-day emergency notice of information collection" that the Department of Justice (DOJ) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) published in the *Federal Register* on December 17, 2010.[1] In this emergency notice, it was announced that DOJ's Office of Justice Programs (OJP) would request that the Office of Management and Budget (OMB) review and clear a proposed information collection initiative that would require federal firearms licensees (FFLs) to report to ATF whenever they make multiple sales or other dispositions of more than one rifle within five consecutive business days to an unlicensed person. Such reporting would be limited to firearms that are (1) semiautomatic, (2) chambered for ammunition of greater than .22 caliber, and (3) capable of accepting a detachable magazine.

In a December 20, 2010 press release, acting ATF Director Kenneth Melson clarified that the proposed multiple rifle sales reporting requirement would be (1) limited to FFLs operating in southwest border states (Texas, New Mexico, Arizona, and California) and (2) confined initially to a one-year pilot project.[2] A sample demand letter to FFLs, uploaded as a supplemental document to the OMB website, specifies that the ATF would be conducting the information collection pursuant to its authority to issue demand letters under federal law (18 U.S.C. § 923(g)(5)).

DOJ requested expedited approval from OMB for this information collection notice by January 5, 2011, in accordance with the emergency procedures under the Paperwork Reduction Act (PRA) of 1995.[3] The

---

[1] Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, "60-Day Emergency Notice of Information Collection Under Review: Report of Multiple Sale or Other Disposition of Certain Rifles," 75 *Federal Register* 79021, December 17, 2010.

[2] Bureau of Alcohol, Tobacco, Firearms and Explosives, News Release, "Acting Director Announces Demand Letters for Multiple Sales of Specific Long Guns in Four Border States," December 20, 2010.

[3] Under the expedited approval procedures in the PRA, if the agency head made an emergency authorization request of Office of Information and Regulatory Affairs (OIRA), he or she could then also specify a short time frame for OIRA to approve such a request, and conduct the collection of information outside of the PRA's requirements "for a maximum of 180 days after the date on which the Director received the request to authorize such collection." 44 U.S.C. § 3507(j)(2). The *Federal Register* emergency notice of information collection provides that emergency approval would only be valid for 180 days, as mandated by the PRA. 75 *Federal Register* 79021, December 17, 2010.

In one of the supplemental documents for the information collection request on http://www.reginfo.gov, the ATF indicated that (continued...)

ATF AR 0706

PRA requires the Office of Information Regulatory Affairs (OIRA) to approve or disapprove an expedited authorization request for approval "within the time requested by the agency head,"[4] and the requesting agency would not need to provide a 60-day notice in the *Federal Register* for soliciting public comments, nor would OIRA need to provide 30 days of public comment prior to an approval or disapproval of the expedited request.[5] However, on February 10, 2011, the status of DOJ's request for emergency review and clearance under the PRA was listed as "withdrawn and continue."[6] It appears that the expedited collection of information request has been withdrawn and that OMB is continuing to consider the collection of information request under PRA regular review procedures. DOJ indicated in its emergency request that it would also conduct a regular review of the information collection during the 60-day period following the date it issued its request for emergency review.[7] This 60-day period for sending comments, questions, and suggestions to DOJ closed last week.[8] Once DOJ satisfies its own paperwork clearance process pursuant to PRA regular review procedures,[9] OMB must then provide a minimum of 30 additional days of public comment prior to making a decision to approve or deny the proposed information collection request.[10]

In light of this request, opponents of this information collection have argued that: (1) ATF does not possess sufficient authority to require multiple rifle sales reports from FFLs; (2) such a reporting requirement would be unprecedented; and (3) the data collection that would result would essentially constitute an illegal firearms registry. Although this information collection initiative would require FFLs to provide ATF with additional documentation on firearm transactions involving rifles, which has not previously been required, it does not appear to be entirely unprecedented. As discussed below, supporters of such an information collection could argue that ATF's issuance of demand letters and the existing multiple handgun sales reporting requirement are precedents for multiple rifle sales reports. In the past, ATF has administratively required some FFLs to surrender firearms transaction records temporarily on a much wider scale, when there were indications of noncompliance or illegal firearms trafficking. Therefore, at issue for Congress is whether ATF enjoys sufficient authority under the Gun Control Act (GCA) of 1968, as amended, to collect multiple rifles sales reports.[11]

It appears that some of the impetus for the information collection notice and emergency request was a recommendation made by the DOJ Office of the Inspector General (OIG). In November 2010, the OIG released a review of ATF's efforts to reduce illegal firearms trafficking from the United States to

---

(...continued)

while the emergency request could only be approved for 180 days, that the ATF would submit an additional information collection request and seek approval for a one-year pilot project. For further information on the PRA, see CRS Report R40636, *Paperwork Reduction Act (PRA): OMB and Agency Responsibilities and Burden Estimates*, by Curtis W. Copeland and Vanessa K. Burrows.

[4] 44 U.S.C. § 3507(j)(2).

[5] 44 U.S.C. §§ 3507(b), 3506(c)(2)(A).

[6] A February 18, 2011, search of information collection reviews completed in the last 30 days on http://www.reginfo.gov indicates that the expedited collection of information request has been listed as "withdrawn and continue." The collection of information request has not yet been approved or assigned an OMB Control Number, which would indicate approval under the PRA. *See* View ICR-OIRA Conclusion, http://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201012-1140-001.

[7] 44 U.S.C. § 3506(c)(2)(A) (requiring 60-day notice in the *Federal Register* for the solicitation of comments).

[8] Rather than counting the 60-day period from a date after OMB denied the use of emergency request procedures, the 60-day period seems to have been counted from the date DOJ-ATF issued the notice in the *Federal Register*.

[9] 44 U.S.C. § 3507(a)(1).

[10] 44 U.S.C. § 3507(b).

[11] P.L. 90-618 (1986); codified at 18 U.S.C. § 921 *et seq.*

**ATF AR 0707**

Mexico.[12] In that review, the OIG reported that ATF criminal investigations and firearms trace data indicated that Mexican drug trafficking organizations had demonstrated a marked preference for long guns (rifles and shotguns).[13] As a consequence, the OIG recommended that ATF work with DOJ to explore options for seeking a multiple long guns sales reporting requirement.[14] In response to the OIG's recommendation, acting ATF Director Melson initially suggested that such a requirement could be beyond the ATF and the DOJ's authority under current law, but that it would "explore the full range of options to seek information regarding multiple sales of long guns."[15]

Notwithstanding this concern about its authority, it appears that DOJ and ATF collectively concluded that there is sufficient authority under current law for ATF to collect reports on multiple sales of certain long guns from FFLs. Several Members of Congress, however, disagree with this decision and sent a letter to President Barack Obama voicing strong opposition to ATF's notification of information collection request under the emergency procedures of the PRA.[16] Those Members maintain that if Congress authorized multiple handgun sales reporting in statute in 1986, then it is now incumbent upon ATF to request that Congress provide it with similar statutory authority for a multiple rifle sales report.[17]

Under current law, FFLs are required to submit a report to ATF whenever an unlicensed person is transferred two or more handguns within five consecutive business days.[18] ATF first required such reporting of multiple handgun sales when it promulgated regulations in 1975.[19] ATF had cited 18 U.S.C. § 923(g) as the statutory authority that permitted the regulation to be issued.[20] At that time, the provision arguably provided the head of ATF with wider latitude to prescribe regulations under which FFLs would submit information to ATF (see note 20) than he currently possesses under current law. With the Firearms Owners Protection Act (FOPA) of 1986,[21] Congress, among other things, amended 18 U.S.C. § 923(g) by limiting, or reducing, ATF's authority to inspect and monitor FFLs. Under the FOPA amendments, it is arguable that ATF was no longer able to rely on the general provisions of 18 U.S.C. § 923(g), as amended, to collect information on multiple handgun sales reports.[22] However, Congress, under FOPA, specifically authorized ATF to collect information on multiple handgun sales reports.[23] In addition, FOPA included a

---

[12] U.S. Department of Justice, Office of the Inspector General, Evaluation and Inspections Division, *Review of ATF's Project Gunrunner*, I-2011-001, November 2010, 138 pp.

[13] *Id.* at 40.

[14] *Id.*

[15] *Id.* at 108.

[16] Congressional Documents and Publications, "Rehberg Leads Bipartisan Letter to ATF Questioning New Firearm Dealer Regulations," Rep. Dennis Rehberg (R-MT) News Release, December 23, 2010.

[17] *Id.*

[18] 18 U.S.C. § 923(g)(3).

[19] Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, "Pistols and Revolvers; Reporting Requirement on Multiple Sales," 40 *Federal Register* 19201, May 2, 1975.

[20] 18 U.S.C. § 922(g) (1970) required each licensed importer, manufacturer, dealer, and collector to maintain records of importation, production, shipment, receipt sale, or other disposition of firearms and ammunition at his place as prescribed by the Secretary of the Treasury. It further provided that: "Such importers, manufacturers, dealers, and collectors shall make such records available for inspection at all reasonable times, and shall submit to the Secretary such reports and information with respect to such records and contents thereof as he shall by regulations prescribe."

[21] P.L. 99-308; 100 Stat. 449 (1986).

[22] 18 U.S.C. § 923(g)(1)(A) (2006) requires each licensed importer, manufacturer, and dealer to maintain records of importation, production, shipment, receipt, sale or other disposition of firearms "at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." Furthermore, "Such importers, manufacturers, and dealers shall not be required to submit to the Attorney General reports and information with respect to such records and the contents thereof, except as expressly required by this section."

[23] 18 U.S.C. § 923(g)(3) (H.R. Rep. No. 99-495, at 27 (1986) noted: "(b) *Codification of existing regulation requiring reports of* (continued...)

provision that prohibits the establishment of a national registry of firearms, firearm owners, or firearm transactions.[24] Some opponents of ATF's collection of multiple rifle sales reports argue that such information collection could be construed as a partial registry of firearms and therefore in violation of the FOPA provision.[25]

Since the enactment of the GCA in 1968, the ATF and its predecessor agencies at the Department of the Treasury[26] has had the authority to issue "demand letters" to FFLs in order to obtain information, like firearms trace information, from the records that FFLs maintain at their places of business.[27] Such letters have been primarily used to investigate and bring non-compliant FFLs into line and to expedite the acquisition of trace data.[28] The authority to use demand letters to collect information under certain situations has been challenged and upheld in the federal courts. In 2000, the ATF issued demand letters to 41 FFLs who were deemed uncooperative because they had failed to comply with trace request responses in a timely manner. In these demand letters, the ATF required the FFLs to submit information concerning their firearm purchases and sales for the past three years, and on a monthly basis thereafter until told otherwise.[29] The U.S. Court of Appeals for the Fourth Circuit held that 18 U.S.C. § 926(a), which prohibits the creation of a national registry of firearms, firearms owners, and transactions, did not directly limit the defendant's authority to issue demand letters and was not violated, because the ATF narrowly tailored the request to its tracing needs by issuing the letter to .1 percent of FFLs nationwide.[30] In 1999, the ATF sent out another demand letter to approximately 450 FFLs, who had ten or more crime guns traced to them with a "time-to-crime" of three years or less. The demand letter required the FFLs to report the acquisition of secondhand firearms, including identification of the firearm but not the identity of the person from whom the secondhand firearm was acquired or to whom the firearm was transferred.[31] The

---

(...continued)

*multiple firearm sales*. This subsection enacts current regulation requiring multiple firearms sales, adding it to 18 U.S.C. 923(g). This provision is taken from S.49 and was added by amendment offered by Rep. McCollum and adopted by the Subcommittee on Crime.").

[24] This provision is codified at 18 U.S.C. § 926(a).

[25] 18 U.S.C. § 926(a). *See* Letters from U.S. Senators to Acting Director Melson (ATF) and Director Lew (OMB), February 1, 2011 ("...requirements that would inevitably track and catalogue the purchase of law-abiding gun owners.); Public Document in Opposition to Information Collection Request, January 4, 2011, available at
http://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=201012-1140-001, ("...this is just another ... attempt to establish a registry of Americans who lawfully purchase semi-automatic rifles to use for sport, competition, collecting and hunting.").

[26] ATF was transferred from the Department of the Treasury to the Department of Justice, effective January 2003. ATF was established in Treasury in 1972. Prior to that, it was a division within the Internal Revenue Service.

[27] The original demand letter regulation appears to have been promulgated at the same time the Gun Control Act was enacted in 1968. *See* Furnishing transaction information, 27 C.F.R. § 478.126, issued 33 *Federal Register* 18555, 18571, December 14, 1968. When FOPA was passed, Congress made explicit in statute: "Each licenses shall, when required by letter issued by the [Attorney General], and until notified to the contrary in writing by the [Attorney General], submit on a form specified by the [Attorney General], for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the [Attorney General] may specify." *See* 18 U.S.C. § 923(g)(5)(A).

[28] When considering FOPA, it seems that Congress made clear that although they would statutorily authorize the ATF to collect information pursuant to its demand letter authority, that such authority "to request tracing information for dealers can never be used to establish any centralized or regional registration about § 923(g)(5)(A) [in violation of § 926(a)]" and that "Congress had no intent to require all law-abiding gun dealers to report all their firearms transactions" to BATF. Statement of Senator Orrin Hatch, 131 Cong. Rec. S9129 (July 9, 1985).

[29] *See* RSM, Inc. v. Buckles, 254 F.3d 61,65-66 (4th Cir. 2001).

[30] *Id.* at 68. The court in *RSM* noted that although FOPA prohibited the creation of a national registry of firearms, Congress also envisioned some sort of collection of firearms records, so long as it was incidental to some other statutory function specifically delegated to ATF. *Id.*

[31] *See* Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281 (4th Cir. 2004); J&G Sales Ltd., v. Truscott, 473 F.3d 1043 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 208 (2007).

U.S. Courts of Appeals for the Fourth and Ninth Circuits generally held that § 926(a) was not violated[32] and that the appropriations rider that prohibits ATF from spending money in connection with consolidating or centralizing records was also not violated because a demand letter sent to less than one percent of all FFLs for a portion of record information does not constitute consolidating or centralizing record information.[33]

If ATF's request is approved to collect such information pursuant to its demand letter authority, it is possible that the collection could be challenged on grounds that ATF is exceeding the scope of its demand letter authority and that the collection constitutes a national registry of firearms in contravention to 18 U.S.C. § 926(a). Given the existing case law on the ATF's demand letter authority, presumably a reviewing court would similarly consider the number of FFLs that would be affected, the period of time the information would be collected, the type of information requested, and the fact that Congress has statutorily authorized a similar information collection for handguns.

Even though the ATF's information collection request is under consideration and could be subject to litigation in the future, opponents of this proposal have recently introduced an amendment to H.R.1, the Full Year Continuing Appropriations Act, 2011, that would prohibit ATF from spending money in connection federal firearms licensee "to report information to the Department of Justice regarding the sale of multiple rifles or shotguns to the same person."[34] The amendment was adopted by a vote of 277-149.[35] H.R. 1 passed by the House on February 19, 2011[36] but has not been considered by the Senate.

---

[32] The Fourth Circuit in *Blaustein & Reich* noted that § 926(a) has no bearing on the regulation that authorizes the use of demand letters because that section only prohibits the promulgation of rules and regulations prescribed after 1986, and the regulation on demand letters dates back to 1968. Furthermore, it stated that § 926(a) has no bearing on § 923(g)(5)(A) because "the former provision pertains only to 'rule[s]' and 'regulation[s]' and the latter is a statute, not a rule or regulation" (modification in the original). Blaustein & Reich, 365 F.3d at 288, 290.

[33] Blaustein & Reich, 365 F.3d at 289.

[34] H. Amdt. 126 to H.R. 1 offered by Representative Dan Boren.

[35] Recorded Vote No. 115 (2011).

[36] H.R. 1 passed the House of Representative by 235-189.

#113558



**Department of Justice**
**Bureau of Alcohol, Tobacco,**
**Firearms and Explosives**
Office of Strategic Intelligence and Information
Data Source: Firearms Tracing System

*Calendar Year 2010*

Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information



# ATF Firearms Trace Data Disclaimer

## Public L. No. 111-117, Consolidated Appropriations Act of 2010, Sec. 516

(1) Firearm traces are designed to assist law enforcement authorities in conducting investigations by tracking the sale and possession of specific firearms. Law enforcement agencies may request firearms traces for any reason, and those reasons are not necessarily reported to the Federal Government. Not all firearms used in crime are traced and not all firearms traced are used in crime.

(2) Firearms selected for tracing are not chosen for purposes of determining which types, makes or models of firearms are used for illicit purposes. The firearms selected do not constitute a random sample and should not be considered representative of the larger universe of all firearms used by criminals, or any subset of that universe. Firearms are normally traced to the first retail seller, and sources reported for firearms traced do not necessarily represent the sources or methods by which firearms in general are acquired for use in crime.



Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information



# Introduction



The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) is the country's only crime gun tracing facility. As such, the NTC provides critical information that helps domestic and international law enforcement agencies solve firearms crimes, detect firearms trafficking and track the intrastate, interstate and international movement of crime guns. The NTC traced over 285,000 firearms in calendar year 2010 for the United States and 57 foreign countries, including Mexico.

This report relates only to firearms recovered in Mexico and traced by ATF. These firearm traces are based upon the supplied firearm identifiers on the Mexico trace requests. The Mexico trace data in this report centers on the calendar year in which the firearm was recovered, 2010, not the year in which the trace was initiated. Organization by recovery date provides valuable investigative leads as well as more specific trend data. Therefore, if traces initiated in later years are found to have been recovered in 2010, the raw trace numbers for 2010 will increase in ensuing reports.

Trace totals reflect firearms recovery information received from Mexico.  Revised on March 1, 2011.

*Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information*

# Total Number of Firearms Recovered in Mexico and Traced by ATF Calendar Year 2010



Total Traces

7,622

Calendar Year 2010

## Trace results reveal the following about the recovered firearms:

- **4,027 - Manufactured in the United States**
- **2,064 - Imported into the United States**
- **1,531 - Unable to Complete Trace Due to Insufficient Information**

Trace totals reflect firearms recovery information received from Mexico.  Revised on March 1, 2011.

ATF AR 0714

Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information

# Firearm Types Recovered in Mexico and Traced by ATF
## Calendar Year 2010

Rifles
4,506

Destructive
Devices
46

Other*
30

Machineguns
73

Revolvers
296

Shotguns
625

Pistols
2,049

* Other includes Tear Gas Launchers, Combinations Guns, Unknown Types, Derringers and Receivers/Frames.

Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

ATF AR 0715

Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information

# Top Firearm Calibers Recovered in Mexico with a Time-To-Crime of Less than 3 Years Calendar Year 2010

| Caliber | Count |
|---|---|
| 7.62mm | 304 |
| .223 cal | 245 |
| 5.7mm | 60 |
| .22 cal | 46 |
| .308 cal | 46 |
| 9mm | 38 |
| 12GA | 34 |
| .50 BMG | 25 |
| .380 cal | 24 |
| .38 cal | 21 |

NOTE: Time-to-crime refers to the length of time from the initial purchase date to the recovery date . There were an additional 14 calibers associated with 54 traces. There were three traces submitted without a caliber.

Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

ATF AR 0716





*Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information*

## Average Time-To-Crime Rates in Years for Top Firearm Calibers Recovered in Mexico Calendar Year 2010

| Caliber | Years |
|---|---|
| .45 cal (112 Traces) | 19.06 |
| .38 cal (134 Traces) | 17.77 |
| .22 cal (186 Traces) | 17.17 |
| 12GA (171 Traces) | 15.55 |
| 9mm (358 Traces) | 14.77 |
| .380 cal (88 Traces) | 13.01 |
| .223 cal (691 Traces) | 8.81 |
| .308 cal (113 Traces) | 8.14 |
| 7.62mm (585 Traces) | 5.84 |
| 5.7mm (84 Traces) | 2.05 |

NOTE: *Time-to-crime refers to the length of time from the initial purchase date to the recovery date. There were an additional 28 calibers associated with 337 traces. There were three traces submitted without a caliber.*

Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

ATF AR 0717



Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information

Top United States Source Locations for Firearms Recovered in Mexico with a Time-To-Crime of Less Than 3 Years

Calendar Year 2010

**NOTE:** Time-to-crime refers to the length of time from the initial purchase date of the firearm to the recovery date. An additional 16 states accounted for 38 other traces. The state of the federal firearms licensee that sold the firearm to an individual purchaser was identified in 900 total traces. This page reflects only those firearms traced to an individual purchaser and is not reflective of all firearms traced.

Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.

ATF AR 0718



*Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information*

# Time-To-Crime Rates for Firearms Recovered in Mexico
## Calendar Year 2010

**No. of Firearms**

| Category | No. of Firearms |
|---|---|
| Under 3 Months | 123 |
| 3 Months to Under 7 Months | 116 |
| 7 Months to Under 1 Year | 138 |
| 1 Year to Under 2 Years | 296 |
| 2 Years to Under 3 Years | 227 |
| 3 Years and Over | 1,930 |

*U.S. Average Time-to-Crime for 1/1/10 – 12/31/10:* **10.94 Years**
*Mexico Average Time-to-Crime for 1/1/10 – 12/31/10:* **11.30 Years**

**NOTE:** *A purchaser was identified in 2,856 traces, of which time-to-crime could not be calculated on 26 traces.*

**NOTE:** *Time-to-crime refers to the length of time from the initial purchase date to the recovery date.*
*Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.*

ATF AR 0719

*Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Strategic Intelligence and Information*

# Analytical Criteria Used to Compile the Enclosed Statistics

◉ **All of the Enclosed Statistics had the Following Selection Criteria in Common:**
- •Traces with a recovery country of Mexico were included.
- •Traces with a recovery date between January 1, 2010 and December 31, 2010 were selected.
- •Duplicate traces were not included.
- •Statistics are based on a query of the Firearms Tracing System (FTS) on March 1, 2011.
- • All traces may not have been submitted or completed at the time of this study.

◉ **Additional Selection Criteria was Applied to the Following Statistics:**

◉ **Top United States Source Locations for Firearms Recovered in Mexico in Calendar Year 2010**
- •Traces must identify a purchaser and the dealer where the firearm was purchased.
- •Statistics are based on dealer city location.
- •Some reasons for traces not identifying an individual purchaser include incomplete data on trace request, the firearm was too old to trace, the firearm serial number was invalid, incomplete out-of-business records and altered or obliterated serial numbers.

◉ **Time-to-Crime Rates for Firearms Recovered in Mexico in Calendar Year 2010**
- •Traces must identify a purchaser.
- •Includes traces that provide a recovery date and a final purchase date.
- •Time-to-crime is calculated by subtracting the purchase date from the recovery date.

**Trace totals reflect firearms recovery information received from Mexico. Revised on March 1, 2011.**

| | |
|---|---|
| From: | EPS Directorate |
| Sent: | Sunday, March 06, 2011 4:24 PM |
| To: | Herbert, Arthur W.; Ficaretta, Teresa; Armentrout, Charlayne A. |
| Cc: | Sigler, Toni L. |
| Subject: | FW: Support for the Reporting of Multiple Sales of Long Guns |

Good evening, Arthur, Teresa and Char.

Between approximately February 11 and February 15, the EPS Email box received 9,456 emails exactly like the one below in our Junk Mail box.  They are from various sources and names. Just wanted to pass this along as it inundated the email.

Sharon

-----Original Message-----
From: Ted Kubiak <span style="background:black">████████████████████</span>
Sent: Friday, February 11, 2011 10:39 AM
To: EPS Directorate
Subject: Support for the Reporting of Multiple Sales of Long Guns

It's time that Obama administration does more to crack down on the gun smuggling carried out by the Mexican drug cartels.

I strongly support the ATF's proposal to require dealers along the border to report bulk sales of assault rifles, just like they already do with handgun sales.  The ATF must use it's authority to collect this information and better enforce the laws already on the books.

With more than 30,000 people already murdered in cartel wars, this is an emergency that demands our government's immediate attention.

Ted Kubiak
<span style="background:black">████████████</span>
Stroudsburg, PA 16360

1

ATF AR 0721

**From:** Houser, Charles J.
**Sent:** Wednesday, March 09, 2011 9:52 AM
**To:** Herbert, Arthur W.
**Subject:** FW: Multiple Sales Data; 2009 and 2010 multiple sale reports
**Attachments:** MS Data AZ_CA_NM_TX FY09_FY10.xlsx

**From:** Phillips, Marguerite M.
**Sent:** Tuesday, March 08, 2011 4:15 PM
**To:** Houser, Charles J.
**Cc:** Stely, Edward E.
**Subject:** RE: Multiple Sales Data

Number of total MS Reports FY2010: 207,632 reports related to 480,696 firearms

Number of MS Reports FY2010 by FFL State

| | |
|---|---|
| AZ | 6,759 reports involving 15,966 firearms |
| CA | 3,264 reports involving 8,367 firearms |
| NM | 1,962 reports involving 4,627 firearms |
| TX | 24,163 reports involving 55,911 firearms |

Number of FFL's within each state with at least one MS Report FY2010

| | |
|---|---|
| AZ | 365 |
| CA | 321 |
| NM | 168 |
| TX | 1,655 |

Top FFL per State:

| FFL State | FFL # | FFL Name | # of MS Reports |
|---|---|---|---|
| AZ | | | 645 |
| CA | | | 177 |
| NM | | | 208 |
| TX | | | 640 |

Number of total MS Reports FY2009: 226,604 reports related to 523,084 firearms

1

ATF AR 0722

**Number of MS Reports FY2009 by FFL State**

| AZ | 5,103 reports involving 16,573 firearms |
|----|------------------------------------------|
| CA | 2,511 reports involving 8,171 firearms |
| NM | 1,557 reports involving 5,221 firearms |
| TX | 19,065 reports involving 61,227 firearms |

**Number of FFL's within each state with at least one MS Report FY2009**

| AZ | 306 |
|----|-----|
| CA | 289 |
| NM | 152 |
| TX | 1,592 |

**Top FFL per State:**

| State | FFL# | License Name | # of MS Reports |
|-------|------|--------------|-----------------|
| AZ | ▇ | ▇ | 691 |
| CA | ▇ | ▇ | 233 |
| NM | ▇ | | 261 |
| TX | ▇ | ▇ | 873 |

Thank you,

Marguerite Phillips
Program Analyst
Law Enforcement Support Branch
National Tracing Center Division
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg, WV. 25405
(800) 788-7133, ▇
FAX: (800) 578-7223

*Be kinder than necessary, for everyone you meet is fighting some kind of battle.*



**From:** Houser, Charles J.
**Sent:** Tuesday, March 08, 2011 9:33 AM
**To:** Herbert, Arthur W.

ATF AR 0723

**Cc:** Salinas, Gilbert
**Subject:** Multiple Sales Data

**Number of total MS Reports FY2010:** 207,736 reports related to 480,689 firearms [an average of 2.31 firearms per report – National Average]

**Number of MS Reports FY2010 by FFL State**

| | |
|---|---|
| AZ | 13,903 reports involving 32,398 firearms [average 2.33 firearms per report] |
| CA | 6,702 reports involving 17,261 firearms [average 2.58 firearms per report] |
| NM | 4,021 reports involving 9,476 firearms [average 2.37 firearms per report] |
| TX | 50,824 reports involving 116,768 firearms [average 2.30 firearms per report] |

**Number of FFL's within each state with at least one MS Report FY2010**

| | |
|---|---|
| AZ | 474 |
| CA | 425 |
| NM | 211 |
| TX | 2,119 |

**2010 Census data has not yet been released (for any of the states except TX), however using prior Census data:**

| State | Population (millions) | FFL w/MSR | FFL w/MSR per million | Firearms on MSR | Firearms per million |
|---|---|---|---|---|---|
| AZ | 5.13 | 474 | 92.40 | 32,398 | 6,315 |
| CA | 33.87 | 425 | 12.55 | 17,261 | 510 |
| NM | 1.82 | 211 | 115.93 | 9,476 | 5,207 |
| TX | 20.85 | 2,119 | 101.63 | 116,768 | 5,600 |

3

ATF AR 0724

FY2010

Total Number of MS Reports:      207,632
Total Number of MS Weapons:      480,696

Top FFL per State:

| FFL State | FFL # | FFL Name | # of MS Reports |
|-----------|-------|----------|-----------------|
| AZ | | | 645 |
| CA | | | 177 |
| NM | | | 208 |
| TX | | | 640 |

| FFL STATE | # of Weapons |
|-----------|--------------|
| AZ | 15966 |
| CA | 8367 |
| NM | 4627 |
| TX | 55911 |

| FFL STATE | # of MS Reports |
|-----------|-----------------|
| AZ | 6759 |
| CA | 3264 |
| NM | 1962 |
| TX | 24163 |

| FFL State | # of FFL's reporting MS |
|-----------|-------------------------|
| AZ | 365 |
| CA | 321 |
| NM | 168 |
| TX | 1655 |

ATF AR 0725

FY2009

**Total Number of MS Reports:**    226,604
**Total Number of MS Weapons:**    523,084

Top FFL per State:



| FFL# | License Name | # of MS Reports |
|---|---|---|
| AZ | | 691 |
| CA | | 233 |
| NM | | 261 |
| TX | | 873 |

| STATE | # of MS Weapons |
|---|---|
| AZ | 16573 |
| CA | 8171 |
| NM | 5221 |
| TX | 61227 |

| FFL STATE | # of MS Reports |
|---|---|
| AZ | 5103 |
| CA | 2511 |
| NM | 1557 |
| TX | 19065 |

| FFL State | # of FFLs reporting MS |
|---|---|
| AZ | 306 |
| CA | 289 |
| NM | 152 |
| TX | 1592 |

ATF AR 0726



- Arizona accounted for 6,112 reports involving the sale of 14,922 handguns
- California accounted for 2,853 reports involving the sale of 8,396 handguns
- New Mexico accounted for 1,798 reports involving the sale of 4,100 handguns
- Texas accounted for 19,310 reports   involving the sale of 44,201 handguns

- In FY 08 Arizona, California, New Mexico, and Texas together accounted for 30,073 reports or 17.7% of all reports nationally.
- In FY 08 Arizona, California, New Mexico, and Texas together 71,619 handguns were sold in reported multiple sales or 18% of the national total.
- In FY 08 nationally, Multiple Sales Reports were associated with 10,261 crime gun traces

- Arizona accounted for 5,103 reports involving the sale of 16,573 handguns .
- California accounted for 2,511 reports involving the sale of 8,171 handguns
- New Mexico accounted for 1,557 reports involving the sale of 5,221 handguns
- Texas accounted for 19,065 reports  involving the sale of 61,227 handguns

- In FY 09 Arizona, California, New Mexico, and Texas together accounted for 28,236 reports or 12.5% of all reports nationally
- In FY 08 Arizona, California, New Mexico, and Texas together 91,192 handguns were sold in reported multiple sales or 17% of the national total

- In FY 09 nationally, Multiple Sales Reports were associated with 10,715 crime gun traces

ATF AR 0727

- Arizona accounted for 6,759 reports involving the sale of 15,966 handguns
- California accounted for 3,264 reports involving the sale of 8,367 handguns
- New Mexico accounted for 1,962 reports involving the sale of 4,627 handguns
- Texas accounted for 24,163 reports   involving the sale of 55,911 handguns

- In FY 10 Arizona, California, New Mexico, and Texas together accounted for 36,148 reports or 17.4% of all reports nationally
- In FY 10 Arizona, California, New Mexico, and Texas together 84,871 handguns were sold in reported multiple sales or 17.7 of the national total

- In FY 10 nationally, Multiple Sales Reports were associated with 10,153 crime gun traces

- In FY 08 ATF initiated 505 cases where a multiple sale of handguns was involved in the trafficking of an estimated 25,874 guns and the recovery of 6,048 guns.
- In FY 08 124 cases (not necessarily derived from cases initiated in the fiscal year) involving 343 defendants were recommended for prosecution
- In FY 08 29 defendants were convicted in 11 cases (not necessarily derived from cases initiated in the fiscal year)involving the multiple sale of hand guns

- In FY 09 ATF initiated 508 cases where a multiple sale of handguns was involved in the trafficking of an estimated 7,195 guns and the recovery of 744 guns
- In FY 09 144 cases (not necessarily derived from cases initiated in the fiscal year) involving 403 defendants were recommended for prosecution
- In FY 09 10 defendants were convicted in 7 cases (not necessarily derived from cases initiated in the fiscal year)involving the multiple sale of hand guns

- In FY 10 ATF initiated 439 cases where a multiple sale of handguns was involved in the trafficking of an estimated 8,703 guns and the recovery of 3,837 guns
- In FY 10 151 cases (not necessarily derived from cases initiated in the fiscal year) involving 463 defendants were recommended for prosecution
- In FY 10 seven defendants were convicted in two cases (not necessarily derived from cases initiated in the fiscal year)involving the multiple sale of hand guns

ATF AR 0728

Multiple Sale Cases and Defendants <u>Recommended for Prosecution</u>

| State | 2008 | 2009 | 2010 | Grand Total |
|---|---|---|---|---|
| **Arizona** | | | | |
| Cases | 8 | 12 | 11 | 31 |
| Defendants | 19 | 34 | 41 | 94 |
| **California** | | | | |
| Cases | 6 | 1 | 2 | 9 |
| Defendants | 30 | 6 | 3 | 39 |
| **New Mexico** | | | | |
| Cases | 0 | 5 | | 5 |
| Defendants | 0 | 5 | | 5 |
| **Texas** | | | | |
| Cases | 17 | 20 | 17 | 54 |
| Defendants | 49 | 85 | 46 | 180 |
| **Total Cases** | 31 | 38 | 30 | 99 |
| **Total Defendants** | 98 | 130 | 90 | 318 |

Multiple Sale Cases and Defendants <u>Convicted</u>

| State | 2008 | 2009 | 2010 | Grand Total |
|---|---|---|---|---|
| **Arizona** | | | | |
| Cases | 5 | 6 | 3 | 14 |
| Defendants | 19 | 13 | 11 | 43 |
| **California** | | | | |
| Cases | 1 | 1 | 2 | 4 |
| Defendants | 13 | 8 | 3 | 24 |
| **New Mexico** | | | | |
| Cases | 3 | 2 | 3 | 8 |
| Defendants | 3 | 2 | 3 | 8 |
| **Texas** | | | | |
| Cases | 7 | 9 | 6 | 22 |
| Defendants | 15 | 36 | 37 | 88 |
| **Total Cases** | 16 | 18 | 14 | 48 |
| **Total Defendants** | 50 | 59 | 54 | 163 |



ATF AR 0729

**Pellettiere, Christopher A.**

| | |
|---|---|
| From: | Mullins, Daniel R. |
| Sent: | Tuesday, March 22, 2011 11:15 AM |
| To: | Pellettiere, Christopher A. |
| Cc: | Ford, Larry W.; Martin, Steve K.; Clark, Terrence L. |
| Subject: | VCAB #113971 - Top 5 Source States for Firearms Recovered and Traced in Mexico in CY08, CY09 and CY10 |
| Attachments: | FY10 FIREARMS DATA RESTRICTIONS.pdf; OSII-Survey Form.pdf |



**CY 2010**

| FFL State | # of Traces |
|---|---|
| TEXAS | 1,185 |
| ARIZONA | 567 |
| CALIFORNIA | 364 |
| ILLINOIS | 134 |
| NEW MEXICO | 51 |

**CY 2009**

| FFL State | # of Traces |
|---|---|
| TEXAS | 2,155 |
| CALIFORNIA | 1,067 |
| ARIZONA | 731 |
| NEW MEXICO | 179 |
| FLORIDA | 120 |

**CY 2008**

| FFL State | # of Traces |
|---|---|
| TEXAS | 3,144 |
| CALIFORNIA | 1,632 |
| ARIZONA | 1,020 |
| FLORIDA | 192 |
| NEW MEXICO | 176 |

Please complete the attached OSII Customer Satisfaction Survey form.  Click on the "Mail" box located at the bottom of the form and then click on "Send".

ATF AR 0730

JCAB #113934

## Reported Multiple Sales
## From Dealers in Eight Selected States
### Between January 1, 2008 and December 31, 2010

| State | Year | Reports | Firearms |
|-------|------|---------|----------|
| ARIZONA | 2008 | 6,526 | 15,817 |
| | 2009 | 6,654 | 15,585 |
| | 2010 | 7,249 | 16,813 |
| | **TOTAL** | **20,429** | **48,215** |
| CALIFORNIA | 2008 | 2,822 | 8,114 |
| | 2009 | 3,298 | 8,506 |
| | 2010 | 3,404 | 8,755 |
| | **TOTAL** | **9,524** | **25,375** |
| COLORADO | 2008 | 5,040 | 11,547 |
| | 2009 | 6,212 | 14,396 |
| | 2010 | 5,911 | 13,503 |
| | **TOTAL** | **17,163** | **39,446** |
| MASSACHUSETTS | 2008 | 875 | 2,247 |
| | 2009 | 1,639 | 3,895 |
| | 2010 | 1,553 | 3,704 |
| | **TOTAL** | **4,067** | **9,846** |
| NEW MEXICO | 2008 | 2,057 | 4,670 |
| | 2009 | 2,023 | 4,837 |
| | 2010 | 1,998 | 4,639 |
| | **TOTAL** | **6,078** | **14,146** |
| PENNSYLVANIA | 2008 | 7,960 | 18,395 |
| | 2009 | 8,944 | 20,802 |
| | 2010 | 9,113 | 21,210 |
| | **TOTAL** | **26,017** | **60,407** |
| TEXAS | 2008 | 22,333 | 50,764 |
| | 2009 | 25,935 | 59,213 |
| | 2010 | 24,889 | 57,555 |
| | **TOTAL** | **73,157** | **167,532** |
| WASHINGTON | 2008 | 3,990 | 9,529 |
| | 2009 | 4,712 | 10,993 |
| | 2010 | 4,626 | 10,587 |
| | **TOTAL** | **13,328** | **31,109** |

Law Enforcement Sensitive

Complaint alleges that the City's discharges from its sanitary sewer overflows ("SSOs") violate the Clean Water Act because the discharge of sewage violates limitations and conditions in the City's National Pollutant Discharge Elimination System (NPDES) permit.

Under the proposed Consent Decree, City will be required to implement injunctive measures to prevent SSOs and comply with its NPDES permit, including upgrade its wastewater treatment plant and sewer collection system. The City will perform a supplemental environmental project in which it will reconstruct four alleys in the City with permeable interlocking pavers. Finally the City will pay $205,000 in civil penalties to be split evenly between the United States and the State of Iowa.

The Department of Justice will receive comments relating to the proposed Consent Decree for a period of 30 days from the date of this publication. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *United States and the State of Iowa v. City of Dubuque*, D.J. Ref. 90–5–1–1–09339.

The proposed Consent Decree may be examined at the U.S. Environmental Protection Agency, Region 7, 901 N. Fifth St., Kansas City, KS 66101 (contact Associate Regional Counsel Christopher Muehlberger (913) 551–7623). During the public comment period, the proposed Consent Decree, may also be examined on the following Department of Justice Web site, to *http:// www.usdoj.gov/enrd/Consent_ Decrees.html*. A copy of the proposed consent decree may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $12.50 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by email or fax, forward a check in that amount to the Consent Decree Library at the stated address.

**Robert E. Maher, Jr.,**
*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*
[FR Doc. 2011–10317 Filed 4–28–11; 8:45 am]
**BILLING CODE 4410–15–P**

## DEPARTMENT OF JUSTICE

### Bureau of Alcohol, Tobacco, Firearms, and Explosives

**[OMB Number 1140–NEW]**

### Agency Information Collection Activities; Proposed Collection Comments Requested: Report of Multiple Sale or Other Disposition of Certain Rifles

**ACTION:** 30-Day Notice.

The Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995. The proposed information collection is published to obtain comments from the public and affected agencies. This proposed information collection was previously published in the **Federal Register** Volume 75, Number 242, page 79021 on December 17, 2010, allowing for a 60-day comment period. ATF received 12,680 comments from this collection (8928 commenters support the collection, and 3752 commenters opposed to the collection).

The purpose of this notice is to allow for an additional 30 days for public comment until May 31, 2011. This process is conducted in accordance with 5 CFR 1320.10. To ensure that comments on the information collection are received, OMB recommends that written comments be faxed to the Office of Information and Regulatory Affairs, OMB, *Attn:* DOJ Desk Officer, *Fax:* 202–395–7285, or e-mailed to *oira_submission@omb.eop.gov*. All comments should be identified with the OMB control number [1140–NEW]. Also include the DOJ docket number found in brackets in the heading of this document.

Comments and suggestions from the public and affected agencies concerning the proposed collection of information are encouraged. Your comments should address one or more of the following four points:

—Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;
—The accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;
—The quality, utility, and clarity of the information to be collected; and
—The burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

**Overview of This Information Collection**

(1) *Type of Information Collection:* New.

(2) *Title of the Form/Collection:* Report of Multiple Sale or Other Disposition of Certain Rifles

(3) *Agency form number, if any, and the applicable component of the Department of Justice sponsoring the collection: Form Number:* ATF F 3310.12. Bureau of Alcohol, Tobacco, Firearms and Explosives.

(4) *Affected public who will be required to respond, as well as a brief abstract:* Primary: Business or For-Profit. *Other:* None. *Abstract:* The purpose of this information collection is to require Federal firearms licensees to report multiple sales or other dispositions whenever the licensee sells or otherwise disposes of two or more rifles with the following characteristics: (a) Semi-automatic; (b) a caliber greater than .22 (including .223/5.56 caliber); and (c) the ability to accept a detachable magazine, to the same person at one time or during any five consecutive business days. This requirement will apply only to Federal Firearms Licensees (FFLs) who are dealers and/or pawnbrokers in Arizona, California, New Mexico and Texas.

(5) *An estimate of the total number of respondents:* ATF estimates that 8,479 respondents will be subject to the reporting requirement. However, ATF anticipates fewer than 30% of the potential respondents will be required to report multiple sales of the subset of rifles that is the subject of this collection. This estimate is based upon the fact that, during fiscal year 2010, 2,509 FFLs in the affected states submitted reports of multiple sales of hand guns. ATF estimates that a similar number of FFLs are likely to submit reports of multiple sales of the subject rifles.

**ATF AR 0732**

(6) *The estimated average burden per respondent:* In fiscal year 2010, 36,148 reports of multiple sales of hand guns sales were submitted by FFLs in the four southwest border states. Because the specified rifles ((a) semi-automatic; (b) a caliber greater than .22 (including .223/ 5.56 caliber); and (c) the ability to accept a detachable magazine) are a subset of the long gun category, we estimate we will receive 18,074 reports of multiple sale of the specified rifles from FFLs located in the four southwest border states. We estimate that each report will take 12 minutes to complete. If we receive 18,074 reports from 2,509 licensees the total burden is 3,615 hours. The estimated annual burden per respondent is 1 hour and 26 minutes.

*If additional information is required contact:* Lynn Murray, Department Clearance Officer, United States Department of Justice, Policy and Planning Staff, Justice Management Division, 2 Constitution Square, Room 2E–808, 145 N Street, NE., Washington, DC 20530.

Dated: April 25, 2011.

**Lynn Murray,**

*Department Clearance Officer, United States Department of Justice.*

[FR Doc. 2011–10355 Filed 4–28–11; 8:45 am]

**BILLING CODE 4410–FY–P**

---

# DEPARTMENT OF LABOR

## Office of the Secretary

**Agency Information Collection Activities; Submission for OMB Review; Comment Request; Compliance Information Report— Workforce Investment Act of 1998 and Complaint Information Form**

**ACTION:** Notice.

**SUMMARY:** The Department of Labor (DOL) is submitting the Office of the Assistant Secretary for Administration and Management sponsored information collection request (ICR) titled, "Compliance Information Report— Workforce Investment Act of 1998 and Complaint Information Form," to the Office of Management and Budget (OMB) for review and approval for continued use in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104–13, 44 U.S.C. chapter 35).

**DATES:** Submit comments on or before May 31, 2011.

**ADDRESSES:** A copy of this ICR, with applicable supporting documentation; including a description of the likely respondents, proposed frequency of response, and estimated total burden may be obtained from the RegInfo.gov Web site, *http://www.reginfo.gov/ public/do/PRAMain* or by contacting Michel Smyth by telephone at 202–693– 4129 (this is not a toll-free number) or sending an e-mail to *DOL_PRA_PUBLIC@dol.gov.*

Submit comments about this request to the Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for the Department of Labor, Office of the Assistant Secretary for Administration and Management, Office of Management and Budget, Room 10235, Washington, DC 20503, Telephone: 202–395–6929/Fax: 202– 395–6881 (these are not toll-free numbers), e-mail: *OIRA_submission@omb.eop.gov.*

**FOR FURTHER INFORMATION CONTACT:** Contact Michel Smyth by telephone at 202–693–4129 (this is not a toll-free number) or by email at *DOL_PRA_PUBLIC@dol.gov.*

**SUPPLEMENTARY INFORMATION:** This information collection is being submitted, because it is necessary that certain information be collected for the effective enforcement of DOL regulations implementing the nondiscrimination and equal opportunity provisions of Workforce Investment Act of 1998 (WIA) section 188. These regulations, 29 CFR part 37, apply to entities receiving financial assistance, in whole or in part, under Title I of the WIA. The Compliance Information Report and related information collections are designed to ensure that programs or activities funded in whole or in part by the DOL operate in a nondiscriminatory manner. The Report requires such programs and activities to collect, maintain, and report upon request from the Department, race, ethnicity, sex, age, and disability data for program applicants, eligible applicants, participants, terminees, applicants for employment, and employees. The Complaint Information Form provides a template allowing persons who wish to allege unlawful discrimination to provide the needed information.

This information collection is subject to the PRA. A Federal agency generally cannot conduct or sponsor a collection of information, and the public is generally not required to respond to an information collection, unless it is currently approved by the OMB under the PRA and displays a currently valid OMB Control Number. In addition, notwithstanding any other provisions of law, no person shall generally be subject to penalty for failing to comply with a collection of information if the collection of information does not display a currently valid OMB control number. See 5 CFR 1320.5(a) and 1320.6. The DOL obtains OMB approval for this information collection under OMB Control Number 1225–0077. The current OMB approval is scheduled to expire on May 31, 2011; however, it should be noted that information collections submitted to the OMB receive a month-to-month extension while they undergo review. For additional information, see the related notice published in the **Federal Register** on December 13, 2010 (75 FR 77663).

Interested parties are encouraged to send comments to the OMB, Office of Information and Regulatory Affairs at the address shown in the **ADDRESSES** section within 30 days of publication of this notice in the **Federal Register.** In order to help ensure appropriate consideration, comments should reference OMB Control Number 1225– 0077. The OMB is particularly interested in comments that:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

• Enhance the quality, utility, and clarity of the information to be collected; and

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

*Agency:* Office of the Assistant Secretary for Administration and Management.

*Title of Collection:* Compliance Information Report—Workforce Investment Act of 1998 and Complaint Information Form

*OMB Control Number:* 1225–0077.

*Affected Public:* State, Local, and Tribal Governments.

*Total Estimated Number of Respondents:* 900.

*Total Estimated Number of Responses:* 39,234,443.

*Total Estimated Annual Burden Hours:* 218,461.

*Total Estimated Annual Costs Burden:* $0.

ATF AR 0733

Department of Justice

Billing Code: 4410-FY

Bureau of Alcohol, Tobacco, Firearms, and Explosives

Agency Information Collection Activities:

Proposed collection; comments requested

[OMB Number 1140-NEW]

ACTION: 30-Day Notice of Information Collection Under Review:

Report of Multiple Sale or Other Disposition of Certain Rifles

The Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) has submitted the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995. The proposed information collection is published to obtain comments from the public and affected agencies. This proposed information collection was previously published in the Federal Register Volume 75, Number 242, page 79021 on December 17, 2010, allowing for a 60-day comment period. ATF received 12,680 comments from this collection (8928 commenters support the collection, and 3752 commenters opposed to the collection).

The purpose of this notice is to allow for an additional 30 days for public comment until [The Federal Register will insert the date 30 days from the date this notice is published in the Federal Register]. This process is conducted in accordance with 5 CFR § 1320.10. To ensure that comments on the information collection are received, OMB recommends that written comments

-1-

ATF AR 0734

be faxed to the Office of Information and Regulatory Affairs, OMB, Attn: DOJ Desk Officer, Fax: 202- 395-7285, or e-mailed to oira_submission@omb.eop.gov. All comments should be identified with the OMB control number [1140-NEW]. Also include the DOJ docket number found in brackets in the heading of this document.

Comments and suggestions from the public and affected agencies concerning the proposed collection of information are encouraged. Your comments should address one or more of the following four points:

-   Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

-   The accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

-   The quality, utility, and clarity of the information to be collected; and

-   The burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

-2-

ATF AR 0735

Overview of This Information Collection

(1) Type of Information Collection:  New.

(2) Title of the Form/Collection:  Report of Multiple Sale or Other Disposition of Certain Rifles

(3) Agency form number, if any, and the applicable component of the Department of Justice sponsoring the collection: Form Number:  ATF F 3310.12.  Bureau of Alcohol, Tobacco, Firearms and Explosives.

(4) Affected public who will be required to respond, as well as a brief abstract: Primary: Business or For-Profit.  Other:  None. Abstract:  The purpose of this information collection is to require Federal firearms licensees to report multiple sales or other dispositions whenever the licensee sells or otherwise disposes of two or more rifles with the following characteristics:  (a) semi-automatic; (b) a caliber greater than .22 (including .223/5.56 caliber); and (c) the ability to accept a detachable magazine, to the same person at one time or during any five consecutive business days.  This requirement will apply only to Federal Firearms Licensees (FFLs) who are dealers and/or pawnbrokers in Arizona, California, New Mexico and Texas.

(5) An estimate of the total number of respondents:  ATF estimates that 8,479 respondents

-3-

ATF AR 0736

will be subject to the reporting requirement.  However, ATF anticipates fewer than 30%

of the potential respondents will be required to report multiple sales of the subset of rifles

that is the subject of this collection.  This estimate is based upon the fact that, during

fiscal year 2010, 2,509 FFLs in the affected states submitted reports of multiple sales of

hand guns.  ATF estimates that a similar number of FFLs are likely to submit reports of

multiple sales of the subject rifles.

(6)   The estimated average burden per respondent: In fiscal year 2010, 36,148 reports of

multiple sales of hand guns sales were submitted by FFLs in the four southwest border

states.  Because the specified rifles ((a) semi-automatic; (b) a caliber greater than .22

(including .223/5.56 caliber); and (c) the ability to accept a detachable magazine) are a

subset of the long gun category, we estimate we will receive 18,074 reports of multiple

sale of the specified rifles from FFLs located in the four southwest border states.   We

estimate that each report will take 12 minutes to complete.  If we receive 18,074 reports

from 2,509 licensees the total burden is 3,615 hours.  The estimated annual burden per

respondent is 1 hour and 26 minutes.


If additional information is required contact:  Lynn Murray, Department Clearance Officer,

United States Department of Justice, Information Management and Security Staff, Justice

Management Division, 2 Constitution Square, Room 2E-502, 145 N Street NE., Washington, DC

20530.


| Lynn Murray | Date |
|---|---|

-4-

ATF AR 0737

Department Clearance Officer
United States Department of Justice

ATF AR 0738

Department of Justice
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Information Collection Request
Supporting Statement
1140-xxxx
ATF Form 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles

A. Justification

1. As part of the Southwest Border Firearms Trafficking/Violence Initiative, ATF is requiring licensed dealers and pawnbrokers in Arizona, California, New Mexico and Texas to submit information concerning multiple sales of certain rifles. The Gun Control Act (GCA) requires Federal firearms licensees (FFLs) to report multiple sales of handguns to the same purchaser [18 U.S.C. § 923(g)(3)]. The sale of two or more handguns must be reported if they occur at the same time, or within five business days of each other. The report must be filed with ATF no later than the close of business on the day the multiple sales or other disposition took place and includes information that identifies the purchaser and the firearms purchased. By law, a copy must be provided to designated state or local law enforcement agencies. These reports provide ATF with potential intelligence and almost real-time investigative leads that can indicate illegal firearms trafficking. No similar requirement exists for long guns, regardless of the caliber, gauge, or suitability for sporting purposes. As a result, individuals can purchase dozens of rifles at one time without ATF being informed of the sale. This distinction is a product of the fact that, at the time the multiple sale reporting requirement was debated in Congress, handguns, not long guns, were considered far more likely to be diverted to illicit purposes within the United States.

ATF has long used multiple sales information to detect, investigate and prevent firearms trafficking. ATF views the recovery of one or more firearms that were part of a multiple purchase as an indicator of firearms trafficking, particularly if one of the firearms was recovered a short time after the multiple sale occurred (known as a short time-to-crime). All Federal firearms licensees have been required to notify ATF of multiple handgun purchases since 1975 and therefore are familiar with the form and how to complete it. Many licensees also utilize commercial software that automatically identifies multiple sales and completes the form required to report

1

them. Accordingly, adding a reporting requirement for certain types of rifles will be something licensees already understand and should not impose an undue burden.

The existing multiple sale reporting requirement, applicable to the sale of two or more handguns to a single purchaser, has provided valuable investigative leads for ATF trafficking investigations. Examples of ATF investigations initiated through the existing multiple sale reporting requirement for handguns are provided below.

- Multiple sale reports provided to ATF's San Diego field office in 2009 indicated that an unlicensed San Diego resident obtained a significant number of handguns through multiple sale purchases in Arizona. A search warrant was obtained on the individual's residence in California and a number of firearms were discovered. The suspect identified a neighbor, a felon, as his partner in the trafficking scheme. A warrant was executed at the neighbor's home and additional evidence was recovered. An arrest warrant was issued for the neighbor. Ultimately 25 of the 32 firearms purchased from licensees were recovered. The two suspects and a third accomplice were prosecuted and convicted for felony violations of the GCA.

- In 2009, multiple sale reports provided to ATF's Portland, Maine field office initiated an investigation into an individual handgun purchaser and the licensee from whom the firearms were purchased. ATF investigators learned that the suspect was involved in selling handguns to gang members in a parking lot in Maine. Review of additional multiple sale forms indicated that the suspect had six more multiple handgun purchases involving 44 firearms. Checks of a website commonly used for firearms sales disclosed that the suspect made more than 150 firearms purchases over a two-month period. Further investigation tied the suspect to a felon residing in Massachusetts known as a source of crime guns to gangs. Undercover purchases from the suspect resulted in detention, and he agreed to cooperate against the supplier in Massachusetts and the licensee in Maine. The investigation resulted in the arrest of the Massachusetts supplier and an accomplice, also a convicted felon.

- In 2008, ATF's San Diego field office initiated an investigation of a suspected straw purchaser after a review of multiple sales reports. The suspect began purchasing handguns in 2004 from three different FFLs in San Diego County. A number of the handguns were recovered in Mexico. After an investigation spanning two years, the suspect pled guilty to dealing in firearms without a license.

- In 2005, firearms purchased from a licensee in Maine were recovered in crimes in New York and a number of the firearms were reported to ATF as part of a

2

multiple handgun sale. The investigation revealed a large ring of straw purchasers in Maine led by a felon and New York City gang member. A FFL was also involved in the ring by allowing straw purchases to occur for profit. Undercover purchases at the licensee's premises further documented his willingness to participate in straw purchases. The investigation resulted in the arrest of seven persons, including the licensee and five straw purchasers. The ring trafficked more than 25 handguns used to commit drug trafficking, burglary, and other felony offenses. All defendants were convicted and served time in the Federal penitentiary.

While handguns remain popular as crime guns in the United States, Mexican law enforcement officials have reported that certain types of rifles are regularly being used to commit violent crimes in Mexico. These rifles typically include AR-15 variants with detachable magazines. Mexican officials believe that these rifles primarily come from the United States in large quantities and many have been sold by FFLs to persons working for Mexican Drug Trafficking Organizations. Successful trace data from recovered rifles confirm that the United States is a significant source of these rifles by FFLs in the southwest border states, and that many have been sold by FFLs. By requiring the reporting of multiple sales of the specified rifles, this proposal would provide significant investigative leads to law enforcement in pursuing firearms trafficking to Mexico and along the southwest border. The authority to require FFLs to submit record information concerning multiple sales or other disposition of certain rifles derives from 18 U.S.C. § 923 (g)(5) (see attachment). As a result, FFLs will not be expected or required to provide copies of the reports generated by this request to the designated state and local law enforcement agencies that otherwise receive the reports of multiple handgun sales pursuant to 18 U.S.C. § 923(g)(3)(A).

2. Reports of multiple sales or other dispositions are and will be used to discern patterns in the purchase of firearms that may end up in the interstate trafficking of illegal firearms. The information is used to determine if the buyer (transferee) is involved in an unlawful activity, such as straw purchases. Specifically, this information provides leads on illegal firearms traffickers who provide firearms to Drug Trafficking Organizations and others who use firearms to commit violent crime. Multiple sale reports are entered into the ATF's Firearms Tracing System (FTS) and made available to all ATF field divisions via ATF's eTrace system. Investigators review the reports each day in conjunction with firearms trace data, analyzing the data for repeat purchasers and recoveries in crimes as well as other information that may disclose trafficking patterns. Information from multiple sale reports frequently results in initiating criminal investigations. The goal of the

3

current proposal is to ensure that ATF receives multiple sale reports on the specific types of long guns used by Drug Trafficking Organizations in Mexico and along the southwest border. ATF believes these additional reports will help law enforcement agencies detect and disrupt firearms trafficking before the firearms are used in violent crime, whether in the United States or in Mexico.

In addition to providing real-time intelligence, the multiple sales reports would assist in identifying secondhand sales of the specified rifles. Secondhand sales refer to firearms that were previously sold by a licensee to an unlicensed individual and then subsequently resold, pawned, or consigned to a dealer or pawnbroker for resale. Firearms sold in secondhand sales generally cannot be traced from the original manufacturer to the secondhand purchaser. Traces of firearms typically end after new firearms are manufactured and sold by licensees to their first retail purchasers. Multiple sales reports concerning secondhand sales of qualifying rifles by retail dealers would allow ATF to trace those firearms from secondhand retail dealers and pawnbrokers to purchasers because ATF would be able to search the multiple sales records, as it does with multiple sales records for handguns.

A letter to the Federal firearms licensees (FFLs) will accompany this form. The letter will instruct FFLs to submit to ATF reports of multiple sales or other dispositions whenever the FFLs sell or otherwise dispose of, at one time or during any five consecutive business days, two or more semi-automatic rifles capable of accepting a detachable magazine, and with a caliber greater than .22 (including .223/5.56 caliber) to an unlicensed person. The letter will state that the information must be submitted on ATF Form 3310.12, Report of Multiple Sales or Other Disposition of Certain Rifles, no later than the close of business on the day the multiple sales or other disposition takes place.

3. This information collection instrument will be available on the ATF website as a fillable form. The respondent has the option to fax or mail the form to the ATF National Tracing Center. ATF software does not currently support the creation of an e-form for this multiple sale reporting requirement.

4. ATF uses a subject classification code on all forms. This code ensures that there is no duplication of information. Similar information is not available elsewhere for this information collecting requirement.

5. The collection of information will have an impact on minimal number of small businesses. This reporting requirement will potentially apply to an estimated 8,479 licensees.

4

However, only those licensees who actually sell or dispose of multiple specified long guns (semi-automatic, larger than .22 caliber, and ability to accept a detachable magazine) to the same individual within five business days will be required to complete and submit the report. Accordingly, some lesser number of licensees will actually experience an impact from this collection of information. ATF does not collect information on the size of FFLs and has no way of determining how many are small businesses or which ones sell the kinds of long guns that are the subject of this collection. Moreover, licensees are already familiar with the multiple sale reporting requirement for handguns and should have no problem completing the Form 3310.12, which is modeled after the Form 3310.4.

6. The consequences of not conducting this information collection would pose a threat to public safety and national security. Failure to collect this information is likely to hinder ongoing law enforcement efforts to combat firearms trafficking and reduce violent crime along the southwest border and in Mexico.

7. This collection would be filed more than quarterly. Additionally, respondents are required to prepare and submit information in fewer than 30 days of receipt. This collection will require respondents to prepare a response no later than the close of business on the day the multiple sale or other disposition occurs. Timely responses are required to enable law enforcement to detect illegal firearms trafficking. The response will be provided on an ATF provided form and may be submitted via fax or U.S. mail. The record will be retained by licensees for 5 years and it should be attached to the ATF F 4473 executed upon delivery of the rifles.

8. The ATF National Tracing Center, ATF Counsel, and officials at the Department of Justice were consulted during the creation of the form. A 60-day Federal Register notice was published on December 17, 2010, to solicit comments from the general public. See Federal Register Volume 75, Number 242, page 79021. Also see the attached summary of the comments that were received.

9. No payment or gift is associated with this collection.

10. The information reported to ATF pursuant to the form is prohibited from disclosure by Federal law. The information may only be disclosed to Federal, State, and local law enforcement officials with a bona fide law enforcement need for the information, e.g., in relation to an ongoing criminal investigation. The multiple sale forms will be scanned and entered into the Firearms Tracing System database immediately upon receipt. The hard copy of the form will then be destroyed. Only ATF employees and contractors have access to the database. The purchaser

5

information will be purged from the database after two years unless associated with a trace.

11. No questions of a sensitive nature are asked.

12. The estimated number of potential respondents is 8,479. In fiscal year 2010, 36,148 reports of multiple sales of hand guns sales were submitted by 2,509 FFLs in the four southwest border states. Because the specified rifles ((a) semi-automatic; (b) a caliber greater than .22 (including .223/5.56 caliber); and (c) the ability to accept a detachable magazine) are a subset of the long gun category, we estimate we will receive 18,074 (that is, one-half of the multiple sales reports for handguns received from licensees in the four southwest border states in 2010) reports of multiple sale of the specified rifles from FFLs located in the four southwest border states from a similar number of FFLs. We estimate that each report will take 12 minutes to complete. If we receive 18,074 reports from 2,509 licensees the total burden is 3,615 hours. The estimated annual burden per respondent is 1 hour and 26 minutes (that is, a total of 3,615 total burden hours incurred by 2,509 licensees).

We estimate the average wage for a firearms sales clerk is $11.00 per hour. Accordingly, we estimate the total burden on respondents is $39,762.80 annually. Further, by dividing the multiple sales of handguns respondent population (2,509) by the total annual cost burden, we estimate that the average cost per FFL per year is $15.85.

13. Based on our experience with the multiple sales report for handguns (Form 3310.4), we estimate that 75% of licensees will fax their reports to the National Tracing Center, and the remaining respondents will mail the form via first-class mail. Because respondents currently have controls in place to capture multiple sales of hand guns; there no additional costs will be incurred to report multiple sales of long guns.

14. Estimates of annual costs to the Federal Government are as follows: There will be a printing cost of $11,000 and a distribution cost of $48,000. The total labor cost is $50,000. The total cost is $109,000.

15. There are no program changes or adjustments.

16. The results of this information collection will not be published.

6

17. Printing the expiration date on this form will result in increased cost because of the need to replace inventories that become obsolete by the passage of the expiration date each time OMB approval is renewed. ATF must maintain a substantial inventory of forms at the Distribution Center at all times. For these reasons, ATF requests authorization to omit printing the expiration date on the form.

18. There are no exceptions to the certification statement.

B. Collections of Information employing Statistical Methods.

None.

7

ATF AR 0745

**Emergency Review Statement**

**Title of form:** Report of Multiple Sale or Other Disposition of Certain Rifles
**Type of information Collection:** New
**Agency form number:** 3310.12

The Bureau of Alcohol, Tobacco, Firearms and Explosives has submitted the following information collection request (ICR), utilizing emergency review procedures, to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104-13, 44 U.S.C. Chapter 35) and 5 CFR 1320.13.

ATF proposes a pilot project to issue demand letters to all licensed dealers and pawnbrokers in California, Texas, Arizona, and New Mexico requiring them to provide ATF with a report of multiple sales or other dispositions whenever the licensee sells or otherwise disposes of two or more rifles within any five consecutive business days with the following characteristics: (a) semi-automatic; (b) a caliber greater than .22; and (c) the ability to accept a detachable magazine.  These reports would be submitted to ATF for a one-year period, using ATF Form 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles.

This emergency approval request comprises a reporting strategy that will provide potentially useful investigative leads to law enforcement in pursuing firearms trafficking.  The multiple sales reports provide ATF with potential intelligence and almost real-time investigative leads that can indicate illegal firearms trafficking.  Delay in obtaining this information is likely to hinder law enforcement's efforts to combat firearms trafficking and reduce violence along the Southwest Border.

**The below table represents a summary of the comments received by ATF as of February 25, 2011. ATF received a total of 12,680 comments. 8,928 of those comments supported the collection, 3,752 comments were opposed.**

| Number of Comments | Substance of Comments |
| --- | --- |
| 8,909 | In support of the collection: ATF must use its authority to collect this information and do more to crack down on the gun smuggling carried out by or on behalf of the Mexican drug cartels |
| 2,047 | Opposed to the collection: There is no statutory or constitutional basis for ATF's proposed collection of information and the proposed collection is illegal |
| 876 | Opposed to the collection: Either did not offer a basis for the opposition, or included irrelevant comments or unsubstantiated data |
| 265 | Opposed to the collection: The collection will be a waste of resources |
| 241 | Opposed to the collection: The collection will further add to the burdens imposed upon American retailers |
| 186 | Opposed to the collection: The collection will not assist law enforcement |
| 130 | Opposed to the collection: No additional laws or regulations are necessary |
| 19 | In support of the collection: The collection will help detect illegal firearms trafficking schemes and will not impose a significant burden on firearms retailers |
| 7 | Opposed to the collection: ATF should be defunded and abolished |

**1. ATF must use its authority to collect this information and do more to crack down on the gun smuggling carried out by or on behalf of the Mexican drug cartels (8909 comments).**

More than 8,000 respondents urged ATF to use its authority to collect long gun multiple sale information in accordance with the proposal, crack down on gun smugglers, and better enforce existing gun laws. Others added that the proposal was a timely response to the increased violence, including the rising number of homicides, along the southwest border.

ATF agrees that requiring southwest border FFLs to report certain rifle transactions is a tool that will provide actionable law enforcement intelligence that, when acted upon, will reduce illegal

1

firearms trafficking and gun violence along the southwest border. The proposed collection of information is a tailored, discrete, responsible, and proactive approach to dealing with a significant law enforcement issue.

The information obtained from this collection will augment ATF's ability to detect illegal firearms trafficking patterns; it will lead to enhanced utilization of ATF resources; and it will not impose a significant burden on FFLs. The collection will have a direct and positive impact on public safety.

**2. Comments challenging the statutory basis or constitutionality of the proposed collection of information (2,047 comments).**

**2a. There is no statutory basis for ATF's proposed collection of information and the proposed collection is "illegal".**

The Federal firearms laws provide that Federal firearms licensees (FFLs) are required to maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at their place of business for such duration and in such form as prescribed by the Attorney General. See 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.121, 124, 125(e). These records are not regularly submitted to ATF, however they are kept on the premises of the FFL and available to ATF under a variety of circumstances, including during inspections and investigations. Additionally, FFLs that go out of business must submit their records to ATF within thirty days. See 18 U.S.C. §923(g)(4). Moreover, and of particular note with respect to ATF's proposed collection of information in this instance, FFLs are required, when notified by letter, to "submit on a form specified by the Attorney General, for periods and at the times specified in such letter, all record information required to be kept by [18 U.S.C. Chapter 44] or such lesser record information as the Attorney General in such letter may specify." 18 U.S.C. § 923(g)(5)(A). Thus, the record information that ATF has proposed to collect regarding the sales of certain rifles by dealers in Arizona, California, New Mexico, and Texas is authorized by § 923(g)(5)(A). Both the Fourth and Ninth Circuits – the only courts of appeal to have considered the question – have recognized that § 923(g)(5)(A) authorizes ATF to collect record information from FFLs regardless of whether the FFL otherwise has an obligation to provide it. See J&G Sales v. Truscott, 473 F.3d 1043, 1048 (9th Cir. 2007) ("there can be no question that § 923(g)(5)(A) authorizes the Bureau to issue the disputed demand letter"); Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 287 (4th Cir. 2004) ("§ 923(g)(5)(a) expressly requires an FFL to produce record information when the Bureau issues a demand letter seeking it.").

**2b. When Congress specifically enacted a statutory provision requiring Federal firearms licensees to report multiple sales of handguns, it could have, but did not, require a similar report for multiple sales of long guns.**

In questioning ATF's authority to collect the information that is the subject of this proposal, a number of commenters have argued that the authority to require reports of multiple sales lies exclusively within 18 U.S.C. § 923(g)(3)(A), which requires such reports for handguns only. Additionally, some commenters have claimed that the legislative history of § 923(g)(5)(A) suggests that it was not intended to be used to obtain

2

routine information about otherwise legal dispositions. According to the National Rifle Association's comment, for example, the demand letter provision only authorizes ATF to obtain information from dealers: (1) who are in violation of law, or (2) concerning specific firearms dispositions necessary for bona fide criminal investigations. Similar arguments have been made before and rejected when ATF has used § 923(g)(5)(A) to obtain other kinds of record information from FFLs. Because § 923(g)(5) is an affirmative grant of authority to ATF to obtain information by demand letter, such authority is not limited by the multiple sales reporting provision of § 923(g)(3)(A) or by any other provision of § 923(g). See, e.g., Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 287-88 (4th Cir. 2004). "[ATF] when acting pursuant to § 923(g)(5), is not restricted to issuing demand letters in connection with criminal investigations or noncompliant [licensees]." Id. Also, see RSM, Inc. v. Buckles, 254 F.3d 61, 66 (4th Cir. 2001); J&G Sales v. Truscott, 473 F.3d 1043, 1049 (9th Cir. 2007).

### 2c. ATF's proposed collection constitutes an unlawful attempt by ATF to compile a centralized registry of gun-owner data in violation of 18 U.S.C. § 926(a).

Some commenters have argued that the demand letter authority contained in § 923(g)(5)(A) is restricted by § 926(a), which prohibits the establishment of any centralized registration system of firearms ownership. ATF agrees that, in exercising its authority under § 923(g)(5)(A), it must not violate § 926(a), but the contention that the current proposal violates § 926(a) is incorrect for at least two reasons.

First, the authority provided to ATF in § 923(g)(5)(A) is entirely consistent with § 926(a). § 926(a) prohibits a "rule or regulation" issued after 1986 from attempting to establish a firearms registry. ATF's authority to collect the information that is the subject of this proposal, however, lies in a statutory provision (§ 923(g)(5)(A)), not a rule or regulation. In fact, when Congress enacted § 923(g)(5)(A) as part of the Firearm Owners' Protection Act in 1986 (FOPA), ATF already had regulatory authority (set forth in the Gun Control Act's implementing regulations, published December 14, 1968) to issue demand letters. FOPA simply codified these existing regulations at the same time it enacted § 926(a).

Second, the collection of information described by this proposal—a limited collection of information regarding limited types of firearms for limited purposes—cannot fairly be categorized as a registry of firearms or firearms owners. The Courts of Appeal, for example, have affirmed that obtaining firearms ownership information pursuant to the authority in § 923(g)(5)(A) does not violate § 926(a). See Blaustein, 365 F.3d at 289; RSM, 254 F.3d at 68; J&G Sales, 473 F.3d at 1051. As with the collections in those court cases, the information ATF is currently proposing to collect will not serve to aggregate firearms transaction information in a manner that goes beyond the purposes of the Gun Control Act, but rather will be narrowly tailored to obtain limited records to assist ATF in its efforts to combat illegal firearms trafficking into Mexico, and to reduce related cross-border violence. Similarly, the United States General Accounting Office (GAO), for example, opined in a September 1996 report that ATF's receipt of reports of multiple sales of handguns pursuant to § 923(g)(3)(A) did not create a centralized gun registry in violation of § 926(a). Accordingly, ATF is confident that its current limited proposal for long guns will not contravene § 926(a) or any related restrictions attached to ATF's annual appropriations bills.

3

**2d. The proposed collection of information violates the United States Constitution because it will infringe upon the Second Amendment rights of law-abiding citizens.**

Numerous commenters expressed the opinion that the proposed collection of information would infringe upon their Second Amendment rights. In District of Columbia v. Heller, 128 S.Ct. 2783 (2008), the Supreme Court held that the Second Amendment to the U.S. Constitution protects an individual (as opposed to collective) right to keep and bear arms. The scope of that protection, however, was left largely undefined by the Court. The Court expressly noted that the right protected by the Second Amendment was "not unlimited," and that "laws imposing conditions and qualifications on the commercial sale of arms" were "presumptively lawful." Id. at 2816-17 & n.26. The Supreme Court reiterated those holdings last year in McDonald v. City of Chicago, 130 S.Ct. 3020, 3047 (2010). Although the exact parameters of what is and is not protected by the Second Amendment remain to be articulated by the Court, ATF is confident that collecting information about multiple sales of certain firearms does not infringe upon either the buyer's or the seller's constitutional rights.

**3. Opposed to the collection: Either did not offer a basis for the opposition, or included irrelevant comments, or provided unsubstantiated data (876 comments).**

Since 2006, there has been a significant increase in drug and firearms-related violence in Mexico and along our southwest border. In response to this increased violence, ATF has deployed focused resources to interdict and prevent illegal firearms trafficking along the southwest border and into Mexico. The multiple sale reports ATF is seeking to collect will provide real-time leads for the investigation of illegal gun trafficking. By obtaining that information in a timely fashion, ATF will have an enhanced capability to uncover and disrupt illegal trafficking schemes before the firearms make their way into Mexico and thus diminish firearms violence on both sides of the border.

**4. Opposed to the collection: The collection will be a waste of Federal resources (265 comments).**

ATF trace data and the recovery of firearms in Mexico have confirmed that a significant number of those firearms are being traced back to sales by Federal firearms dealers in the United States. The collection ATF is proposing will enhance ATF's ability to stop some of those firearms before they cross the border and are delivered into the hands of persons or organizations intending to use them to commit violent acts with potentially fatal consequences. ATF's National Tracing Center is already staffed with personnel who are familiar with handling multiple sales reports, and those same personnel will process the information collected as a result of this proposal. ATF will not use or require any additional resources to implement this program.

Moreover, the cost of printing, distributing and processing of the multiple sale reports relating to certain rifles will be minimal compared to the cost to public safety if this program is not implemented.

4

ATF AR 0750

**5. Opposed to the collection: The collection will further add to the burden imposed upon American retailers (241 comments).**

ATF believes that the overall burden of this collection will be minimal to FFLs. The collection will only apply prospectively, so that FFLs will not be obligated to go back through their records and report multiple sales that may have occurred in the past. The information to be collected will be drawn from records FFLs are already required to maintain. Specifically, the information is summarized in each FFL's acquisition and disposition (A&D) records.

The burden will not affect all FFLs. The collection will only be directed to FFLs in four southwest border states. In addition, FFLs in those respective states who do not make multiple sales or dispositions of the specified rifles will not incur any additional burdens. Moreover, the collection only applies to certain rifles having all of the following characteristics:

- A semi-automatic action;
- A caliber greater than .22 (including .223 and 5.56 caliber); and
- The ability to accept a detachable magazine.

Based upon ATF's experience with multiple handgun sale reports, the estimated average burden associated with this collection is 12 minutes per report. If an FFL makes four specified multiple sales per year, the total burden would be 48 minutes. Compared to the public safety benefit that ATF believes this collection will produce, this amount of additional burden is not undue or onerous.

**6. Opposed to the collection: The collection will not assist law enforcement (186 comments).**

According to ATF trace data, investigative experience, and Mexican law enforcement officials, a large number of rifles that originated from FFLs in the U.S. are being used to commit violent crimes in Mexico and along the U.S. border. This collection is focused on obtaining potentially useful information about the initial sale of specified rifles by a limited number of FFLs. This information will enhance ATF's ability to identify and disrupt illegal firearms trafficking schemes.

**7. Opposed to the collection: No additional laws or regulations are necessary (130 comments).**

The authority to obtain record information from FFLs has been in place since 1968. That authority has been used on multiple occasions since then and is an important tool facilitating the enforcement of existing laws that regulate the commercial sale of firearms. By pursuing this collection, ATF is neither issuing new regulations nor creating programs that Congress has not authorized.

5

**8. In support of the collection: The collection will help detect illegal firearms trafficking schemes and will not impose a significant burden on firearms retailers (19 comments).**

These commenters were supportive of the implementation of the collection and are in agreement with ATF's views that this information will assist law enforcement situated along the southwest border. Law enforcement will help ensure the safety of the communities in this region by identifying criminal firearms trafficking along the southwest border. The receipt of the multiple sales reports will give ATF real-time leads for the investigation of illegal firearms trafficking, enabling ATF to more effectively address that activity and prevent violence on both sides of the U.S./Mexican border. ATF trace data, investigative experience, and information provided by Mexican law enforcement officials corroborates that multiple simultaneous purchases of the rifles subject to this collection from FFLs in the southwest border states can be a strong indicator of illegal firearms trafficking to Mexico.

ATF recognizes that this collection may impose an additional burden on some Federal firearms licensees, but taken together, limiting the geographic scope, impacting a limited number of licensees and affecting a specific group of rifles, this collection is a tailored, discrete, responsible, and proactive approach to a significant law enforcement issue.

**9. Opposed to the collection: ATF should be defunded and abolished (7 comments).**

These comments are not relevant to the subject at hand.

6

OMB No. 1140-xxxx

Dear Federal Firearms Licensee:

Federal law provides that when required by letter issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), licensees shall submit to ATF all record information required by the law or such lesser information as may be specified in the letter. The information requested must be provided in the format specified and for the periods and at the times specified in the letter [18 U.S.C. § 923(g)(5) and 27 C.F.R. § 478.126]. The Acting Director has delegated the authority to request this information to the Chief, National Tracing Center.

To assist its efforts in investigating and combating the illegal movement of firearms along and across the Southwest border, ATF is requiring licensed dealers and pawnbrokers in Arizona, California, New Mexico and Texas to submit information concerning multiple sales of certain rifles  You must submit to ATF reports of multiple sales or other dispositions whenever, at one time or during any five consecutive business days, you sell to an unlicensed person or otherwise dispose of two or more semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber). This requirement becomes effective upon receipt of this letter; by law, your obligation to report will continue until notified to the contrary in writing by ATF [27 C.F.R. § 478.126(a)].

The required information must be submitted on ATF Form 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, no later than the close of business on the day the multiple sale or other disposition takes place. We have enclosed a copy of Form 3310.12 with this letter. Additional forms may be obtained from the ATF Distribution Center, 1519 Cabin Branch Drive, Landover, MD 20785, (301) 583-4696, or online at www.atf.gov.

Be advised that, in addition to the information required by this letter, licensees are still required to submit reports of multiple sales or other dispositions when the licensee sells two or more pistols or revolvers or any combination of pistols or revolvers totaling two or more to an unlicensed person at one time or during any five consecutive business days [18 U.S.C. § 923(g)(3)]. Reports of multiple sales or other dispositions of handguns must be reported on

-2-

ATF Form 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers, and must be submitted separately from the information required by this letter.

If you have any questions, please contact the National Tracing Center at 1-800-788-7133.

Charles Houser
Chief, National Tracing Center

**Paperwork Reduction Act Notice**

This request is in accordance with the Paperwork Reduction Act of 1995. The information collection documents certain sales or other dispositions of certain rifles for law enforcement purposes. The information is used to determine whether the buyer *(transferee)* may be involved in unlawful activity, such as straw purchasing. The information requested is mandatory and required by statute (18 U.S.C. § 923(g)(5)).

The estimate average burden associated with this collection is 12 minutes per report by each respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Document Services Section, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number.

ATF AR 0754

OMB No. 1140-xxxx (xx/xx/xxxx)

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Report of Multiple Sale or Other Disposition of Certain Rifles

**(Please complete all information)**

| 1. Date Transferred | 2a. Federal Firearms Licensee (FFL) Number |
|---|---|

2b. Business or Trade Name and Address *(If you have complete information available on a rubber stamp, please place information here.)*

2c. Is this firearm connected to another multiple sale? *(If yes, specify date)*
☐ Yes   ☐ No   Date _____

2d. If you sold these firearms at a gun show or other qualifying event, identify the event and provide a complete address of the event.

3. Rifles Sold or Otherwise Disposed of to the Same Unlicensed Person During Any Five Consecutive Business Days

| Serial Number | Manufacturer | Importer | Model | Caliber | Disposition Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

4. Transferee's Name *(Last, first, middle)*

5. Residence Address *(Number, street, city, county, state, zip code)*

| 6. Sex | 7. Race |
|---|---|
| | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Native Hawaiian or Other Pacific Islander |
| | ☐ African American or Black   ☐ Hispanic or Latino   ☐ White   ☐ Other *(Specify)* |

| 8. Identification Number | 9. Type of Identification | 10. ID State | 11. Date of Birth | 12. Place of Birth *(City, county, state, country)* |
|---|---|---|---|---|

13. If the buyer of the firearms listed in item 4 is an officer authorized to act on behalf of a corporation, company, association, partnership or other such business entity, you must complete the following:
**Name and Address of Business Entity**

14. Additional Information Relating to the Transfer of the Firearms

| 15. Name of Employee Filling Out This Form | 16. Date This Form Was Completed |
|---|---|

**When Fax is Available, Please Fax to 1-877-283-0288.**

ATF Form 3310.12
Revised (    )

ATF AR 0755

### Instructions

1.  This form is to be used by licensees to report all transactions in which an unlicensed person acquired two or more semi-automatic rifles larger than .22 caliber with the ability to accept a detachable magazine at one time or during five consecutive business days. This form is not required when the rifles are returned to the same person from whom they are received.

2.  Item 2c - if this transaction is an additional weapon(s) to a multiple sale previously submitted, check "yes" and record the date of the previous multiple sale form. *(For example a multiple sale for purchases made on a Monday and Friday must be submitted by the close of business Friday. If an additional purchase is made within five days from the Friday purchase, this purchase is part of the previous multiple sale and must be reported as part of that multiple sale under 2c.)*

3.  Item 2b - if the buyer of the firearm(s) is a corporation, company, association, partnership or other such business entity, the officer authorized to receive the firearms on the business entity's behalf must be identified in items 4-12 of this form. Information identifying the business entity must be recorded in item 13.

4.  A separate form is to be submitted for each unlicensed person.

5.  Licensees must complete items 1 through 12, 15 and 16 entirely. Items 13 and 14 must be completed, if applicable.

6.  The report is to be submitted to:

    a.  **Copy 1** - The National Tracing Center no later than the close of business on the day that the multiple sale or other disposition occurs. You can either fax the form to 877-283-0288, or mail it to U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, National Tracing Center, P.O. Box 0279, Kearneysville, WV 25430-0279.

    b.  **Copy 2** - ATF recommends that a licensee to retain a copy and attach it the back of the Firearms Transaction Record, ATF Form 4473, covering the transfer of the firearms.

7.  Additional forms may be obtained through the ATF Distribution Center, 1519 Cabin Branch Drive, Landover, MD 20785, (301) 583-4696, or online at www.atf.gov.

.

### Paperwork Reduction Act Notice

This request is in accordance with the Paperwork Reduction Act of 1995. The information collection documents certain sales or other dispositions of rifles for law enforcement purposes. The information is used to determine if the buyer *(transferee)* is involved in a unlawful activity, or is a person prohibited by law from obtaining firearms. The information requested is mandatory and required by statute (18 U.S.C. 923(g)(5)(A)).

The estimate average burden associated with this collection is 12 minutes per respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Document Services Section, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

ATF Form 3310.12
Revised (   )

ATF AR 0756

(i) the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located;

(ii)(I) within 30 days after the application is approved the business will comply with the requirements of State and local law applicable to the conduct of the business; and

(II) the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met; and

(iii) that the applicant has sent or delivered a form to be prescribed by the Attorney General, to the chief law enforcement officer of the locality in which the premises are located, which indicates that the applicant intends to apply for a Federal firearms license; and

(G) in the case of an application to be licensed as a dealer, the applicant certifies that secure gun storage or safety devices will be available at any place in which firearms are sold under the license to persons who are not licensees (subject to the exception that in any case in which a secure gun storage or safety device is temporarily unavailable because of theft, casualty loss, consumer sales, backorders from a manufacturer, or any other similar reason beyond the control of the licensee, the dealer shall not be considered to be in violation of the requirement under this subparagraph to make available such a device).

(2) The Attorney General must approve or deny an application for a license within the 60-day period beginning on the date it is received. If the Attorney General fails to act within such period, the applicant may file an action under section 1361 of title 28 to compel the Attorney General to act. If the Attorney General approves an applicant's application, such applicant shall be issued a license upon the payment of the prescribed fee.

(e) The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter or fails to have secure gun storage or safety devices available at any place in which firearms

are sold under the license to persons who are not licensees (except that in any case in which a secure gun storage or safety device is temporarily unavailable because of theft, casualty loss, consumer sales, backorders from a manufacturer, or any other similar reason beyond the control of the licensee, the dealer shall not be considered to be in violation of the requirement to make available such a device). The Attorney General may, after notice and opportunity for hearing, revoke the license of a dealer who willfully transfers armor piercing ammunition. The Attorney General's action under this subsection may be reviewed only as provided in subsection (f) of this section.

(f) (1) Any person whose application for a license is denied and any holder of a license which is revoked shall receive a written notice from the Attorney General stating specifically the grounds upon which the application was denied or upon which the license was revoked. Any notice of a revocation of a license shall be given to the holder of such license before the effective date of the revocation.

(2) If the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation. In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license stay the effective date of the revocation. A hearing held under this paragraph shall be held at a location convenient to the aggrieved party.

(3) If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

(4) If criminal proceedings are insti-

tuted against a licensee alleging any violation of this chapter or of rules or regulations prescribed under this chapter, and the licensee is acquitted of such charges, or such proceedings are terminated, other than upon motion of the Government before trial upon such charges, the Attorney General shall be absolutely barred from denying or revoking any license granted under this chapter where such denial or revocation is based in whole or in part on the facts which form the basis of such criminal charges. No proceedings for the revocation of a license shall be instituted by the Attorney General more than one year after the filing of the indictment or information.

(g) (1) (A) Each licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe. Such importers, manufacturers, and dealers shall not be required to submit to the Attorney General reports and information with respect to such records and the contents thereof, except as expressly required by this section. The Attorney General, when he has reasonable cause to believe a violation of this chapter has occurred and that evidence thereof may be found on such premises, may, upon demonstrating such cause before a Federal magistrate and securing from such magistrate a warrant authorizing entry, enter during business hours the premises (including places of storage) of any licensed firearms importer, licensed manufacturer, licensed dealer, licensed collector, or any licensed importer or manufacturer of ammunition, for the purpose of inspecting or examining—

(i) any records or documents required to be kept by such licensed importer, licensed manufacturer, licensed dealer, or licensed collector under this chapter or rules or regulations under this chapter, and

(ii) any firearms or ammunition kept or stored by such licensed importer, licensed manufacturer, licensed dealer, or licensed collector, at such premises.

(B) The Attorney General may inspect or examine the inventory and records of a licensed importer, licensed manufacturer, or licensed dealer without such reasonable cause or warrant—

(i) in the course of a reasonable inquiry during the course of a criminal investigation of a person

17

or persons other than the licensee;

(ii) for ensuring compliance with the record keeping requirements of this chapter—

(I) not more than once during any 12-month period; or

(II) at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee; or

(iii) when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.

(C) The Attorney General may inspect the inventory and records of a licensed collector without such reasonable cause or warrant—

(i) for ensuring compliance with the record keeping requirements of this chapter not more than once during any twelve-month period; or

(ii) when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.

(D) At the election of a licensed collector, the annual inspection of records and inventory permitted under this paragraph shall be performed at the office of the Attorney General designed for such inspections which is located in closest proximity to the premises where the inventory and records of such licensed collector are maintained. The inspection and examination authorized by this paragraph shall not be construed as authorizing the Attorney General to seize any records or other documents other than those records or documents constituting material evidence of a violation of law. If the Attorney General seizes such records or documents, copies shall be provided the licensee within a reasonable time. The Attorney General may make available to any Federal, State, or local law enforcement agency any information which he may obtain by reason of this chapter with respect to the identification of persons prohibited from purchasing or receiving firearms or ammunition who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition.

and he may provide information to the extent such information may be contained in the records required to be maintained by this chapter, when so requested by any Federal, State, or local law enforcement agency.

(2) Each licensed collector shall maintain in a bound volume the nature of which the Attorney General may by regulations prescribe, records of the receipt, sale, or other disposition of firearms. Such records shall include the name and address of any person to whom the collector sells or otherwise disposes of a firearm. Such collector shall not be required to submit to the Attorney General reports and information with respect to such records and the contents thereof, except as expressly required by this section.

(3) (A) Each licensee shall prepare a report of multiple sales or other dispositions whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more, to an unlicensed person. The report shall be prepared on a form specified by the Attorney General and forwarded to the office specified thereon and to the department of State police or State law enforcement agency of the State or local law enforcement agency of the local jurisdiction in which the sale or other disposition took place, not later than the close of business on the day that the multiple sale or other disposition occurs.

(B) Except in the case of forms and contents thereof regarding a purchaser who is prohibited by subsection (g) or (n) of section 922 of this title from receipt of a firearm, the department of State police or State law enforcement agency or local law enforcement agency of the local jurisdiction shall not disclose any such form or the contents thereof to any person or entity, and shall destroy each such form and any record of the contents thereof no more than 20 days from the date such form is received. No later than the date that is 6 months after the effective date of this subparagraph, and at the end of each 6-month period thereafter, the department of State police or State law enforcement agency or local law enforcement agency of the local jurisdiction shall certify to the Attorney General of the United States that no disclosure contrary to this subparagraph has been made and that all forms and any record of the contents

thereof have been destroyed as provided in this subparagraph.

(4) Where a firearms or ammunition business is discontinued and succeeded by a new licensee, the records required to be kept by this chapter shall appropriately reflect such facts and shall be delivered to the successor. Where discontinuance of the business is absolute, such records shall be delivered within thirty days after the business discontinuance to the Attorney General. However, where State law or local ordinance requires the delivery of records to other responsible authority, the Attorney General may arrange for the delivery of such records to such other responsible authority.

(5) (A) Each licensee shall, when required by letter issued by the Attorney General, and until notified to the contrary in writing by the Attorney General, submit on a form specified by the Attorney General, for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the Attorney General in such letter may specify.

(B) The Attorney General may authorize such record information to be submitted in a manner other than that prescribed in subparagraph (A) of this paragraph when it is shown by a licensee that an alternate method of reporting is reasonably necessary and will not unduly hinder the effective administration of this chapter. A licensee may use an alternate method of reporting if the licensee describes the proposed alternate method of reporting and the need therefor in a letter application submitted to the Attorney General, and the Attorney General approves such alternate method of reporting.

(6) Each licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Attorney General and to the appropriate local authorities.

(7) Each licensee shall respond immediately to, and in no event later than 24 hours after the receipt of, a request by the Attorney General for information contained in the records required to be kept by this chapter as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation. The requested information may be provided orally or in writing, as the Attorney General may require. The Attorney

ATF AR 0758

JOSEPH I. LIEBERMAN, CONNECTICUT, CHAIRMAN

CARL LEVIN, MICHIGAN
DANIEL K. AKAKA, HAWAII
THOMAS R. CARPER, DELAWARE
MARK L. PRYOR, ARKANSAS
MARY L. LANDRIEU, LOUISIANA
CLAIRE McCASKILL, MISSOURI
JON TESTER, MONTANA
MARK BEGICH, ALASKA

SUSAN M. COLLINS, MAINE
TOM COBURN, OKLAHOMA
SCOTT P. BROWN, MASSACHUSETTS
JOHN McCAIN, ARIZONA
RON JOHNSON, WISCONSIN
JOHN ENSIGN, NEVADA
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY

MICHAEL L. ALEXANDER, STAFF DIRECTOR
NICHOLAS A. ROSSI, MINORITY STAFF DIRECTOR

# United States Senate

COMMITTEE ON
HOMELAND SECURITY AND GOVERNMENTAL AFFAIRS
WASHINGTON, DC 20510–6250

May 16, 2011

The Honorable Eric Holder
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, D.C. 20530

Dear Attorney General Holder,

I am writing to express my support for the proposed information collection published by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that will require federal firearms licensees (FFLs) in southwest border states to report multiple sales of certain rifles. This policy will provide ATF a critically important investigative tool in its effort to stem the flow of weapons into Mexico, and will do so without restricting the 2nd Amendment right of lawful purchasers to access firearms.

The Senate Homeland Security and Governmental Affairs Committee has held eight hearings since 2009 on the subject of border security and the violence occurring in Mexico. During these hearings, we've heard testimony from the Secretary of Homeland Security, the Director of Customs and Border Protection, as well as numerous state and local officials about the devastating effects that the flow of U.S. firearms into Mexico have had on that country. Over 35,000 people in Mexico have died since 2006 as a result of the grisly violence unleashed by the drug cartels south of our border. According to ATF and the Government Accountability Office (GAO), approximately 90 percent of the firearms that are recovered from crime scenes in Mexico that are successfully traced originated in the U.S. GAO also reports that between fiscal years 2004 to 2008, about 70 percent of the firearms seized and traced by Mexican law enforcement were originally purchased from gun shops in southwest border states.

The Department of Justice Inspector General (IG) has also recently reported that Mexican drug cartels purchase assault rifles in bulk, largely through straw purchasers within the U.S., and then smuggle them into Mexico. Recent news reports indicate that rifles originally purchased by smuggling rings in the southwest for the cartels were used by the individuals who ruthlessly murdered CBP agent Brian Terry and ICE agent Jaime Zapata. It is unacceptable that we are allowing these firearms to fuel the cartel's brutal violence against Mexican law enforcement and citizens, and against our own law enforcement personnel. The IG recommended that multiple sales of long guns be reported to ATF, as is currently required for handguns. I believe that we must heed the IG's call and close this loophole that allows individuals who purchase assault rifles to be given less scrutiny than those who buy handguns.

ATF AR 0759

ATF's proposed information collection will greatly assist the Bureau in identifying and prosecuting members of the firearms smuggling rings and the drug cartel members they conspire with – without impeding the 2nd Amendment rights of lawful gun purchasers. It will provide the Bureau with real time investigative leads that will assist them in stopping the flow of these weapons before they reach the border, and will facilitate traces of crime guns to better enable ATF to dismantle the smuggling infrastructure that exists on both sides of the border. This will provide some much-needed assistance to the brave Mexican government officials who confront the inhuman violence unleashed by the drug cartels each and every day, and who are often outgunned as they do so.

I strongly support implementation of ATF's proposal to enhance the Bureau's investigative capabilities in its efforts to dismantle firearms smuggling rings. We must do everything possible to assist law enforcement in the fight to secure our border and counter the violence of the drug cartels and I look forward to working with you and your colleagues at ATF to address this critical issue.

Sincerely,

Joseph I. Lieberman
Chairman



**NATIONAL SHOOTING SPORTS FOUNDATION, INC.**
11 Mile Hill Road • Newtown, CT 06470-2359 • Tel (203) 426-1320 • Fax (203) 426-7182
E-mail lkeane@nssf.org • www.nssf.org

**LAWRENCE G. KEANE**
SENIOR VICE PRESIDENT
& GENERAL COUNSEL

May 20, 2011

VIA FACSIMILE
(202) 395-7285
Attn: DOJ Desk Officer

Office of Management and Budget
Office of Information and Regulation Affairs
725 17th Street, N.W.
Washington, D.C. 20503

> **Re: Agency Information Collection Activities; Proposed Collection Comments
> Requested: Report of Multiple Sale or Other Disposition of Certain Rifles. 76 Fed.
> Reg. 24058 (Apr. 29, 2011).  OMB Number 1140-NEW.**

To Whom It May Concern:

The National Shooting Sports Foundation (NSSF), the trade association for the firearms, ammunition, hunting and shooting sports industry, welcomes this opportunity to share with you our comments on the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) information collection request concerning multiple sales of certain rifles, which was originally published in the Federal Register on December 17, 2010 and recently amended and published in the Federal Register on April 29, 2011.

### Preliminary Comments

Members of the firearms industry are proud of their longstanding cooperative relationship with ATF. This relationship is exemplified by the decade-long partnership between ATF and NSSF in the *Don't Lie for the Other Guy* anti-straw purchase public awareness and dealer education campaign. The campaign, which is now fully funded by the firearms industry, has been focused on the southwest border region for the last several years. In February, NSSF and ATF partnered to re-launch the *Don't Lie for the Other Guy* campaign in Houston.

NSSF continues to strongly encourage all firearms retailers, wherever they are located, to contact ATF if they suspect an illegal straw purchase. In fact, ATF has consistently stated that firearms retailers are a critical source of information that can lead to illegal firearms trafficking investigations. ATF has reported to us that it has a very good working relationship with firearms retailers along the southwest border and that they are very cooperative. This helps to explain why ATF, after recently inspecting approximately 2,000 firearms dealers in Texas and Arizona, did not charge a single dealer with any wrongdoing and only revoked two (or 0.01%) licenses for unknown reasons that could have no relationship with firearms

---

PROMOTE        PROTECT        PRESERVE

ATF AR 0761

Attn: DOJ Desk Officer
May 20, 2011
Page 2 of 5
trafficking to Mexico. NSSF, and the firearms industry which it represents, looks forward to continuing to

work cooperatively with ATF, even though we respectfully oppose this proposed recordkeeping and
reporting (information collection) requirement for the reasons more fully set forth below.

NSSF remains opposed to the proposed information collection for three primary reasons. First, Congress
has not provided ATF with the legal authority under the Gun Control Act to impose this reporting
requirement. Second, even if ATF does have the authority, the proposed implementation of this
recordkeeping and reporting requirement is inappropriate. Third, and perhaps most important, we believe
that this new recordkeeping and reporting requirement will actually make it more difficult for firearms
retailers to help law enforcement as illegal firearms traffickers will easily modify their illegal schemes to
circumvent the new reporting requirement.

### Congress Has Not Permitted Multiple Sales Reporting of Rifles

ATF proposes to send demand letters to selected federally-licensed firearms dealers requiring the reporting
of multiple sales or other dispositions whenever the licensee transfers to the same individual within five
consecutive business days two or more semi-automatic rifles, in a caliber greater than .22, with the ability
to accept a detachable magazine. ATF Form 3310.12, on which the report must be made and submitted to
ATF, will contain the transferee's name, residential address, relevant identification number and a list of
applicable firearms purchased.

The Gun Control Act of 1968 (GCA) expressly requires federal firearms dealers to report the multiple sale
of handguns to ATF. 18 U.S.C. § 923(g)(3)(A), 27 C.F.R. 478.126a. It does not, however, contain a
similar provision requiring the reporting of multiple sales of rifles (or any long guns). The absence of a
provision, such as a multiple rifle sales reporting requirement, limits ATF to enforce only what is actually
set forth in the law as written by Congress. "When a statute limits a thing to be done in a particular mode,
it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576 (2000). Had
Congress intended to require long gun reporting, it could have done so, but it did not.

Less than two months prior to the publication of the original information collection in the Federal Register
last year, ATF itself raised doubts about its legal authority in this matter. In response to a Department of
Justice's (DOJ) Office of the Inspector General (OIG) report recommending that ATF "explore options for
seeking a requirement for [the] reporting of multiple sales of long guns," ATF Acting Director Melson
questioned whether the GCA grants ATF the legal authority to impose this recordkeeping and reporting
requirement. Acting Director Melson wrote, "ATF concurs, but notes that [mandating the report of
multiple sales of long guns] may require a change to the Gun Control Act which is beyond ATF's and the
Departments authority." *Review of ATF's Project Gunrunner*
http://www.justice.gov/oig/reports/ATF/e1101.pdf at Appendix V, ATF letter dated October 21, 2010).

Moreover, the Firearm Owners Protection Act (FOPA), which amended the GCA, in 18 U.S.C. § 926(a)
specifically prohibits ATF from prescribing any regulation that "require[s] that records required to be
maintained under this chapter, or any portion of the contents of such records, be recorded at or transferred
to a facility owned, managed, or controlled by the United States . . . nor that any system of registration of
firearms, firearms owners, or firearms transactions or dispositions be established." If ATF argues that this
requirement concerns records required under the chapter, then FOPA prohibits their transfer to a
government facility. However, if ATF instead argues that these records are not required under this chapter,

Attn: DOJ Desk Officer
May 20, 2011
Page 3 of 5

then ATF is not permitted to request them via demand letters. In either case, this attempt to collect firearms sales information from dealers is surely what the FOPA intended to prohibit outside of a bona fide criminal investigation.

### Multiple Sales Reporting of Certain Rifles Exceeds ATF's "Demand Letter" Authority

ATF's proposed use of "demand letters" to implement the collection of multiple sales reporting of certain rifles from all 8,500 dealers in Texas, New Mexico, Arizona and California exceeds ATF's authority under Section 923(g)(5)(A).

The GCA and ATF's implementing regulations require a federal firearm licensee (FFL) to submit to ATF upon request by letter "all record information required to be kept by this chapter or such lesser record information as the Attorney General in such letter may specify." 18 U.S.C. 923(g)(5), 27 C.F.R. 478.126(a). This section, which allows ATF to "demand" information from licensees, also expressly limits the information ATF can demand to only that which is required by the GCA and implemented regulations. Since the GCA makes no mention of multiple rifle sale reporting requirements, requiring a dealer to provide such information is more than what is permitted since it is not within the scope of "required to be kept by this chapter or lesser."

In the proposed letter to Federal Firearms Licensees (FFLs) from the ATF which corresponded with the original request for comments from last year, ATF planned to require FFLs to report multiple sales of certain rifles for one year. ATF communicated this same fact to NSSF in personal communications we have had with senior ATF officials. In response to ATF's plans, NSSF pointed out that if ATF were allowed to collect information from licensees in these four states on the multiple sale of certain rifles for one year, then it could seek that same information for a) a longer time period if not on a permanent basis and b) from *all* licensees in every state (for whatever time period ATF decided) or c) seek any other piece of information it wants (besides the multiple sale of certain rifles). In the most recent proposed letter to FFLs, the time standard has been changed from one year to an indefinite time period ending only upon written notice by ATF. It seems our original concerns were valid in that ATF's attempt to require the reporting for just one year would surely lead to ATF attempting to mandate this improper reporting "for a longer time period if not on a permanent basis." The fact that this proposed requirement is already expanding beyond its original scope into territory warned about by NSSF, shows that ATF's attempt is obviously overbroad. Surely, Congress did not grant to ATF such sweeping authority by simply sending licensees a letter invoking authority under Section 923(g)(5)(A).

If ATF's interpretation of its powers under this provision was correct, then Section 923(g)(5)(A) would render the entire rest of the GCA moot and irrelevant; it would become the proverbial exception that allows the rule. ATF can require FFLs to provide whatever ATF wants, whenever ATF wants, for however long ATF wants, and in the form and manner ATF demands. Surely, Congress has not granted ATF such total and unfettered authority. One need only read other provisions of the GCA that limit ATF's authority to realize this is not the case.

Previously, ATF demand letters have only been authorized when two standards have been met. First, courts have allowed "demand letters" only when the "letter was limited to federal firearms licensees who had violated federal law." *RSM v. Buckles*, 254 F.3d 61 (4th Cir. 2001). Second, the Firearm Owner's Protection Act amended the GCA so that "demand letters" can only be sent concerning "firearms in the course of a bona fide criminal investigation." 18 U.S.C.A. § 923(g)(7).

ATF AR 0763

Attn: DOJ Desk Officer
May 20, 2011
Page 4 of 5

In this case, ATF is imposing a blanket requirement on all dealers in four states (at least for now) without any allegation that any of them violated the GCA or any ATF regulations. ATF's purpose in collecting this information is in hope of coming upon "actionable law enforcement intelligence." At the time ATF demands the creation and reporting of this record by the FFL, it is not necessarily part of a current bona fide criminal investigation. A law enforcement purpose, i.e. intelligence gathering, is not the same thing as a bona fide criminal investigation. For example, a police officer using a radar gun to monitor the speed of vehicles serves a law enforcement purpose, but it is not a criminal investigation.

The proposed demand letters by ATF contradict Congress' original intent in enacting Section 923(g)(5)(A). They also contravene ATF's own understanding of its demand letter authority. Harold Seer, who was the Director of ATF at the time the original demand letter regulation was promulgated, wrote that ATF would only use the demand-letter regulation "when we become aware of violations of the law by an unscrupulous dealer." Yet, here ATF is not alleging that any of the 8,500 dealers who will receive a demand letter are "unscrupulous." To the contrary, as noted above, after inspecting 2,000 dealers ATF did not charge a single dealer with committing a crime. Former Director Serr told Congress "[ATF has] no intention of requiring law-abiding gun dealers to report their firearms transactions to us." 131 Cong. Rec. S9129 (July 9, 1985). Yet that is precisely what these demand letters will accomplish and what Congress has prohibited.

### ATF Has Improperly Attempted to Implement This Rule

This Federal Register notice underestimates the burden on licensees. We believe that the time estimate of 12 minutes underestimates the burden on small dealers, especially those that have not sold handguns and are not familiar with completing the multiple sales form for handguns. The burden and cost to dealers is also not limited to filling out the form itself. ATF also underestimates the cost to dealers – particularly small dealers – to implement processes to ensure compliance with this new recordkeeping and reporting requirement, e.g. that one employee doesn't accidentally sell and fail to report a perfectly legal rifle to a customer to whom another employee sold a rifle within the five-day window.

Buyers will no longer be protected by FOPA. Never before, not even in situations where demand-letters have been permitted, has the required information included the identity of the transferors. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281 (4th Cir. 2004).

### Multiple Sales Reporting of Certain Rifles Will Make it More Difficult for Dealers to Provide ATF with Actionable Intelligence; Illegal Firearms Traffickers will Evade Detection

Even if ATF does have the authority to require multiple sales reporting of certain rifles, we believe it is an ill-advised policy because it will make it more difficult for firearms retailers to assist ATF. Illegal firearms traffickers engaged in acquiring firearms to smuggle into Mexico will simply and rapidly modify their illegal schemes to circumvent the reporting requirement. For example, rather than purchase multiple rifles from one dealer in the specified time period, they will recruit more straw purchasers to illegally purchase firearms or they will have straw purchasers illegally buy firearms from multiple dealers. They can also simply shift their trafficking activities outside the four-states of this proposed requirement.

We strongly urge ATF to encourage all dealers to continue to provide information to ATF on a voluntary basis.

Attn: DOJ Desk Officer
May 20, 2011
Page 5 of 5

### Conclusion

For the above reasons, we respectfully oppose ATF's proposed recordkeeping and reporting requirement. Congress has not granted ATF the legal authority to require this and, even if it did, the policy is ill-advised as it will make it more difficult for firearms dealers to cooperate with ATF. Illegal firearms traffickers will quickly and easily alter their illegal schemes to avoid the reporting requirement. However, should ATF move forward with the reporting requirement, ATF should provide dealers with the option to report the information via a web-based interface, and ATF should refrain from collecting any purchaser information. Despite our disagreement with ATF on this particular matter, NSSF continues to support and encourage firearms retailers to contact ATF whenever they suspect an illegal straw purchase or other efforts to acquire firearms for illegal purposes, such as to illegally smuggle them into Mexico. NSSF also remains fully committed to continuing to cooperate with ATF on such activities as our joint "Partnership for Progress" dealer education seminars and the *Don't Lie for the Other Guy* campaign.

Sincerely yours,


Lawrence G. Keane

LGK/rc/mas

CC:  Ken Melson, Acting ATF Director



WILTSHIRE
& GRANNIS LLP

May 31, 2011

**VIA EMAIL**

Office of Information and Regulatory Affairs
Office of Management and Budget
Attn: Department of Justice Desk Officer
Washington, DC 20503
oira_submission@omb.eop.gov

> **Re:**   OMB No. 1140-NEW — Bureau of Alcohol, Tobacco, Firearms and Explosives
> Proposed Information Collection: Report of Multiple Sale or Other Disposition of
> Certain Rifles, 76 Fed. Reg. 24058 (April 29, 2011)

To Whom It May Concern:

Wiltshire & Grannis LLP is pleased to submit these comments on behalf of Mayors
Against Illegal Guns, a bi-partisan group of more than 550 American mayors, in support of the
information collection proposed by the Bureau of Alcohol, Tobacco, Firearms and Explosives
("ATF" or "Bureau") to track bulk sales of high-powered rifles along the southwest border of the
United States. Specifically, ATF would use its statutory authority to send "demand letters" to
require federally licensed firearms dealers in Arizona, California, New Mexico, and Texas to
report to ATF when the dealer sells two or more semi-automatic rifles capable of accepting a
detachable magazine and with a caliber greater than .22 to the same person within five
consecutive business days.[1]  This requirement is similar to but narrower than an existing
requirement that dealers report multiple sales of handguns to the same purchaser.[2]

This proposed information collection is an important, common-sense step that will assist
law enforcement officers in combating illegal gun trafficking. ATF's narrowly-tailored proposal
respects the rights of law-abiding Americans to buy rifles and shotguns (collectively, "long
guns"), while ensuring that law enforcement officials have a powerful new tool to interdict the
straw purchasers and illegal traffickers who are supplying assault rifles and other guns to
Mexico's drug cartels.  As explained below, this proposal is well within ATF's authority, set
forth in 18 U.S.C. § 923(g)(5)(A), to issue demand letters requiring gun dealers to provide to
ATF information that federal law requires gun dealers to collect and maintain.  In addition, the
proposal's burden on licensed gun dealers in those states is minimal, and it has tremendous
potential to assist law enforcement in its crucial fight to deter gun trafficking to Mexico.

---

[1]   Dep't of Justice, Bur. of Alcohol, Tobacco, Firearms and Explosives, OMB No. 1140-NEW, Agency
Information Collection Activities; Proposed Collection Comments Requested: Report of Multiple Sale or Other
Disposition of Certain Rifles, 76 Fed. Reg. 24058 (Apr. 29, 2011).

[2]   18 U.S.C. § 923(g)(3).

ATF AR 0766

## BACKGROUND

***Guns used in drug-related violence.*** In recent years, escalating drug cartel violence in Mexico has claimed more than 30,000 lives. An estimated 8 to 10 percent of those killed in Mexico's drug war are police, military, security officers, or other public officials.[3] Cartel violence respects neither citizenship nor national borders. Between 2004 and 2008, 200 U.S. citizens were killed in Mexico, an average of nearly one per week.[4] And, according to ATF, drug cartel activity has affected over 200 U.S. cities.[5]

This escalating violence is fueled in part by tens of thousands of guns trafficked from the United States. According to a recent report by the Government Accountability Office ("GAO"), 90 percent of guns recovered and traced from Mexican crime scenes were originally sold by licensed gun dealers in the United States.[6] Just under 50 percent of those guns are long guns, up from 20 percent in 2004.[7] More than three out of four crime guns recovered in Mexico and submitted for tracing were originally sold in one of the four southwest border states – Texas, Arizona, California, or New Mexico.[8] According to the U.S Department of Justice's Office of the Inspector General ("OIG"), long guns recovered from Mexican crime scenes also tend to have a shorter time between the firearm's initial sale and its recovery at a crime scene – its "time-to-crime" ("TTC") – than handguns, which is an indicator that a gun was more likely to have been illegally trafficked.[9] The OIG also found that Mexican cartels are obtaining long guns in multiple sales. As a result, the OIG recommended that ATF implement a long gun reporting requirement to help ATF investigate gun traffickers.[10]

---

[3] *Law Enforcement Responses to Mexican Drug Cartels, Hearing Before the S. Comm. on the Judiciary, Subcomm. on Crime & Drugs*, 111 Cong. D271 (2009), (Statement of William Hoover, Ass't Dir. for Field Operations, ATF, U.S. Dep't of Justice, and Anthony P. Placido, Ass't Adm'r for Intelligence Div'n, Drug Enforcement Admin., U.S. Dep't of Justice), *available at* http://judiciary.senate.gov/pdf/09-03-17HooverPlacidoTestimony.pdf.

[4] *See, e.g.*, Lise Olsen, *Caught in the Chaos: More Than 200 U.S. Citizens Killed in Mexico Since '04*, Houston Chron., Feb. 8, 2009, *available at* http://www.chron.com/disp/story.mpl/nation/6252174.htm; *see, e.g.*, Randal C. Archibold, *Mexican Drug Cartel Violence Spills Over, Alarming U.S.*, N.Y. Times, Mar. 22, 2009, *available at* http://www.nytimes.com/2009/03/23/us/23border.html.

[5] Press Release, U.S. Immigration & Customs Enforcement, U.S. Dep't of Homeland Sec., Border Contraband Seizures Soar as DHS, ATF, Hold Summit in San Diego (Nov. 3, 2009), *available at* http://www.atf.gov/press/releases/2009/11/110309-atf-dhs-contraband-seizures.pdf.

[6] GAO, *Firearms Trafficking: U.S. Efforts to Combat Arms Trafficking to Mexico Face Planning and Coordination Challenges*, GAO-09-709 (June 18, 2009), *available at* http://www.gao.gov/new.items/d09709.pdf ("Firearms Trafficking Report"). Between 2004 and 2008, 87 percent of guns recovered and traced from Mexican crime scenes were originally sold by U.S. gun dealers; between 2006 and 2008, the proportion is more than 90 percent. *Id.*

[7] U.S. Dep't of Justice, Office of the Inspector Gen., *Review of ATF's Project Gunrunner*, I-2011-001, at 38 (Nov. 2010), *available at* http://www.justice.gov/oig/reports/ATF/e1101.pdf ("Review of ATF's Project Gunrunner").

[8] Mayors Against Illegal Guns, *Issue Brief: The Movement of Illegal Guns Across the U.S.-Mexico Border*, at 2 (Sept. 2010), *available at* http://www.mayorsagainstillegalguns.org/downloads/pdf/issue_brief_mexico_2010.pdf.

[9] *Review of ATF's Project Gunrunner, supra* note 7, at 38.

[10] *Id.*

ATF AR 0767

*ATF's tracing efforts.*  Virtually all guns used in crimes were initially purchased from federally licensed dealers.[11] These guns enter the illegal market in multiple ways, including through theft, gun dealers who participate in illegal or negligent sales, straw purchasers who buy guns on behalf of criminals, and subsequent sales by unlicensed, private sellers at gun shows and elsewhere who are not required by federal law to conduct background checks.[12]

Under the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C §§ 921-930), ATF has authority to license manufacturers, importers, and dealers of firearms.[13]  The Bureau must issue a license to any applicant satisfying the statutory requirements who agrees to abide by applicable laws.[14]  The Bureau requires federal firearms licensees (FFLs) to maintain certain records relating to the firearms they acquire and sell.[15] FFLs must collect information including the name of the firearm's manufacturer and importer, the firearm's model, serial number, type, caliber or gauge, and date of sale or receipt, and the name and address of the transferee.[16]  The Bureau has certain authority to inspect or request this information from FFLs.[17]

Using information requested from FFLs, ATF has established the National Tracing Center ("NTC") to trace the movement of a particular firearm from its manufacturer through its retail dealer to its first retail purchaser.[18]  A firearms trace typically occurs after a law enforcement agency recovers a firearm at a crime scene and contacts the NTC for additional information about the origin of the firearm.

When tracing a gun, ATF, through the NTC, contacts the manufacturer of the particular firearm and asks to which wholesaler it sold the firearm bearing that serial number.  NTC then contacts the wholesaler to ask which dealer purchased the firearm, and repeats the inquiry with the dealer to identify the firearm's first retail purchaser.  When contacted by the NTC, the FFL dealer must report any or all of the information it is statutorily required to collect and maintain for each firearm, including the name and address of the first retail purchaser.[19]

---

[11]  ATF, U.S. Dep't of the Treasury, *Following the Gun: Enforcing Federal Law Against Firearms Traffickers* iii (June 2000), *available at*
http://www mayorsagainstillegalguns.org/downloads/pdf/Following_the_Gun%202000.pdf.

[12]  *Id.*

[13]  18 U.S.C. § 923(a) (2011).

[14]  18 U.S.C. § 923(d) (2011).

[15]  *See, e.g.*, 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.121(a) (2011).  Note that prior to the establishment of the Department of Homeland Security and the reconfiguration of the Bureau's functions, citations to the implementing regulation refer to 27 C.F.R. § 178.  Section 178 was redesignated § 478 in 2003.  *See* Reorganization of Title 27, Code of Federal Regulations, 68 Fed. Reg. 3744, 3750 (Jan. 24, 2003).

[16]  *See* 18 U.S.C. § 923(g)(1); 27 C.F.R. §§ 478.124-25 (2011).

[17]  *See, e.g.*, 18 U.S.C. § 923(g)(7) (2011) (requiring FFLs to provide record information during the course of a criminal investigation to determine a particular firearm's disposition) and (g)(5) (permitting ATF to request records through "demand letters").

[18]  ATF, *Fact Sheet: ATF's National Tracing Center* (Mar. 2010), *available at*
http://www.atf.gov/publications/factsheets/factsheet-national-tracing-center html.

[19]  18 U.S.C. § 923(g)(7) (2011).

ATF AR 0768

The resulting gun trace information can be used to link a suspect to a firearm in an investigation, identify potential firearms traffickers, and, in certain instances, detect patterns in the sources and kinds of crime guns.[20] ATF investigators analyzing gun trace data may identify possible illegal, unrecorded transfers, straw purchases, or other patterns of suspicious behavior.[21] Additionally, ATF can identify the state where the gun was sold and the state where it was used in a crime, as well as calculate the gun's TTC to identify guns that likely have been illegally trafficked. ATF considers a time-to-crime of less than two years to be a "strong indicator" that a gun has been illegally trafficked.[22] When aggregated, this information can reveal patterns of illegal gun trafficking.

The tracing system, however, has several significant flaws limiting its usefulness to law enforcement officers. Notably, the tracing system cannot track firearms after their first retail purchase because retail purchasers are not required to maintain records of secondhand sales or transfers and because private sellers are not required to conduct a background check at all under federal law. Trace data thus is unable to link subsequent transactions involving the firearm in the secondhand market, even those involving an FFL acquiring a secondhand firearm, to the initial transaction because ATF has no way to identify the FFL who received or sold a secondhand firearm.

Over the last decade, ATF has increased its efforts to trace guns used in crime. For example, ATF identified certain FFLs accounting for a disproportionate number of crime guns traced or a disproportionate percentage of crime guns with a TTC of less than three years.[23] Using its authority to seek information from FFLs under Section 923(g)(5)(A), ATF has issued "demand letters" requesting limited information from FFLs. For example, ATF has issued demand letters to FFLs who have failed to cooperate with trace requests seeking information about the firearm bought from that dealer and the purchaser. ATF also has issued demand letters to FFLs who appear to supply a disproportionate percentage of potentially trafficked guns. This determination is made based on analysis of gun trace data – those dealers that have 10 to 15 or more traces of firearms within 3 years of initial purchase of the gun must submit detailed information quarterly on used guns that the dealer acquires from non-FFLs. ATF has advised these dealers that their unusually high number of traces of new firearms "may mean that you are also selling a high volume of secondhand guns used in crime."[24] Court challenges to both types of demand letters have failed.[25]

---

[20]   *Id.*

[21]   Vivian S. Chu & William J. Krouse, Congressional Research Serv., *Gun Trafficking and the Southwest Border* 9, R40733 (Sept. 21, 2009), *available at* http://fpc.state.gov/documents/organization/130808.pdf.

[22]   Press Release, ATF, ATF Shares 2008 NY State Crime Gun Data (July 8, 2009), *available at* http://www.atf.gov/press/releases/2009/07/070809-ny-atf-shares-trace-data.html (two year period is a "strong indicator" of trafficking); Press Release, ATF, ATF Shares 2009 Los Angeles Crime Gun Data (May 11, 2010), *available at* http://www.atf.gov/press/releases/2010/05/051110-la-posts-2009-crime-gun-data.html (time-to-crime of less than one year is a "very strong indicator" of trafficking).

[23]   *See, e.g., Review of ATF's Project Gunrunner, supra* note 7, at ii, 22-23; *see also, e.g.,* ATF, Dep't of the Treasury, *Commerce in Firearms in the United States* (Feb. 2000), *available at* http://www mayorsagainstillegalguns.org/downloads/pdf/Commerce_in_Firearms_2000.pdf.

[24]   *Blaustein & Reich, Inc. v. Buckles,* 365 F.3d 281, 285 (4th Cir. 2004) (quoting demand letter).

[25]   *See, e.g., J&G Sales Ltd. v. Truscott,* 473 F.3d 1043 (9th Cir. 2007); *Blaustein & Reich,* 365 F.3d 281; *RSM, Inc. v. Buckles,* 254 F.3d 61 (4th Cir. 2001).

4

ATF AR 0769

I.      **ATF HAS CLEAR STATUTORY AUTHORITY TO ISSUE DEMAND LETTERS REGARDING MULTIPLE SALES OF LONG GUNS.**

Section 923(g)(5)(A) authorizes ATF to issue the demand letters it has proposed to issue. When Congress passed the Firearms Owners' Protection Act ("FOPA"), it granted ATF specific authority to issue demand letters seeking information FFLs are required to collect and maintain. Specifically, Section 923(g)(5)(A) provides:

> Each licensee shall, when required by letter issued by the [Bureau], and until notified to the contrary in writing by the [Bureau], submit on a form specified by the [Bureau], for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the [Bureau] in such letter may specify.

Although the National Rifle Association ("NRA") and some other groups have opposed ATF's information collection request, their arguments fail because the proposed information request is firmly within the letter of the language of Section 923(g)(5)(A).[26]  ATF's proposed Form 3310.12 requests only a portion of the information that FFLs are already required to maintain.  In the language of Section 923(g)(5)(A), ATF is seeking "lesser record information" than is "required to be kept by this chapter."  Accordingly, it is clear that ATF's data collection request is authorized by the plain language of the statute.

In arguing that the information collection request at issue should not be authorized, the NRA and other opponents of the request argue that the language of Section 923(g)(5)(A) should not be given its plain meaning.  When interpreting a statute, the court's analysis begins with the ordinary meaning of the language of the statute.  Courts "must presume that a legislature says in a statute what it means" and that "[w]hen the words of a statute are unambiguous," then the "judicial inquiry is complete."[27]  Opponents' challenge to the information collection must fail for this reason alone.

In addition, the opponents largely recycle contentions previously rejected by the Fourth and Ninth Circuits in *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281 (4th Cir. 2004), *RSM, Inc. v. Buckles*, 254 F.3d 61 (4th Cir. 2001), and *J&G Sales Ltd. v. Truscott*, 473 F.3d 1043 (9th Cir. 2007).  These arguments lack merit in this context as well.

The opponents of the information request principally argue that ATF cannot use the demand letter provision to request information about rifles because Section 923(g)(3)(A) requires FFLs to provide similar information about certain handguns.  This is essentially an argument based on *expressio unius est exclusio alterius* – "the expression of one thing is the exclusion of another."  But the statutory obligation on all FFLs, nationwide, to collect and report certain information regarding multiple sales of pistols and/or revolvers does not mean that ATF

---

[26]     *See* Letter from Chris W. Cox, Exec. Dir., National Rifle Association Institute for Legislative Action, to Office of Management and Budget (Feb. 10, 2011), *available at* http://www.nraila.org/media.pdfs.ATFLongGunSalesReporting.pdf; *see* Letter from Lawrence G. Keane, Ass't Sec'y, National Shooting Sports Foundation, Inc. to Office of Management and Budget (Feb. 14, 2011), *available at* http://www.nsf.org/share/PDF/021411.pdf.

[27]     *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted).

5

ATF AR 0770

is prohibited from seeking additional information regarding multiple sales of rifles. Justice O'Connor, sitting by designation on the Ninth Circuit, dismissed this argument, explaining, "[s]imply because some provisions of § 923 impose specific duties upon FFLs . . . does not mean that the Bureau is prohibited from seeking further FFL record information by demand letter."[28] In other words, Congress did not write a statute saying that ATF could collect information *only* about certain handguns. It wrote a statute saying that ATF *must* collect information about certain handguns and *may* collect other information that gun dealers are required to maintain.

The D.C. Circuit repeatedly has made clear that in the regulatory context *expressio unius* is "an especially feeble helper" because "Congress is presumed to have left to reasonable agency discretion questions that it has not directly resolved."[29] As in *Cheney*, "the contrast between Congress's mandate in one context with its silence in another suggests not a prohibition but simply a decision *not to mandate* any solution in the second context, i.e., to leave the question to agency discretion."[30] Section 923(g)(3)(A) imposes an ongoing obligation on all FFLs to report a subset of the record information they are required to collect, whereas subsection (g)(5) empowers the Bureau to seek information and sets forth an FFL's obligations in the specific instance where it receives a demand letter.

Nor does ATF's reading of subsection (g)(5)(A) render subsection (g)(3)(A) superfluous. ATF is seeking information relating to certain high-powered rifles only from gun dealers in four states, which are known sources of guns recovered in crimes in Mexico, and only for a limited time. Congress required information collection relating to certain handguns and gave ATF authority to demand other information where warranted.

Furthermore, courts repeatedly have found that specific statutes authorizing FFL production or ATF inspection of certain FFL records do not limit the scope of section 923(g)(5). For example, the courts have rejected previous challenges to ATF's demand letter program, finding that § 923(g)(1) (permitting ATF to inspect FFL records in certain limited circumstances), § 923(g)(6) (requiring dealers to report guns that are lost or stolen from them), and § 923(g)(7) (requiring dealers to respond to trace requests with purchaser and firearms information) each serve a different purpose and apply in different circumstances.[31] Section 923(g)(1) differs from section 923(g)(5) because it allows ATF to gather information if it sends inspectors to a dealer's location; it does not require written notice, and it does not oblige dealers to send information to ATF. Similarly, section 923(g)(7) differs from section 923(g)(5) because it does not require written notice, but does require that the trace request be "in the course of a bona fide criminal investigation." In part because of these and other differences, challenges to ATF's existing demand letter programs all have failed.[32] As Justice O'Connor, sitting by designation with the Ninth Circuit, stated, reading these other provisions to limit ATF's demand letter authority would "strip § 923(g)(5)(A) of its independent meaning."[33]

---

[28]  *J&G Sales*, 473 F.3d at 1050.

[29]  *Cheney R.R. Co., Inc. v. Interstate Commerce Comm'n*, 902 F.2d 66, 69 (1990) (citations omitted).

[30]  *Id.* (citations omitted).

[31]  *J&G Sales*, 473 F.3d 1043 (discussing § 923(g)(1), (7)); *Blaustein & Reich*, 365 F.3d 281 (discussing § 923(g)(1), (7)); *RSM, Inc.*, 254 F.3d 61 (discussing § 923(g)(1)).

[32]  *Id.*

[33]  *J&G Sales*, 473 F.3d at 1050.

6

ATF AR 0771

Additionally, contrary to the assertion opponents have unsuccessfully advanced many times before, ATF's proposed information collection is not a "new rule" forbidden by Section 926(a). That provision, enacted in 1986 as part of FOPA, prohibits ATF from promulgating any new rules or regulations "after the date of the enactment of the Firearms Owners' Protection Act" that would create a national firearms registry. *First*, Section 926(a) prohibits only "rules" and "regulations" and thus does not apply to an information collection under Section 923(g)(5)(A).[34] The fact that ATF has never previously issued the demand letter it now proposes does not mean it lacks regulatory authority to do so, nor does the letter transform into a new "rule or regulation" just because ATF has not previously used its demand letter authority to collect the information it now seeks.[35] Thus, Section 926(a) has no bearing on ATF's proposed information collection.

*Second*, the proposed information collection will not create a "national gun registry." The collection will record only a small fraction of total firearms transactions in the U.S. and will be a tool for law enforcement, as was true of other demand letters upheld by courts. Here, ATF seeks information only about multiple sales of specified rifles to fight gun trafficking. ATF is not requesting information about all long gun sales, much less all firearms transactions. Additionally, the collection impacts a narrow class of FFLs, those in four border states, representing 8,479[36] of the 62,754 FFLs in the nation,[37] or less than 14 percent of FFLs. Furthermore, ATF estimates that fewer than 30 percent of this subset of dealers will be required to report multiple sales of the specified rifles. That estimate is based on the fact that only 2,509 dealers in the four southwest border states submitted similar reports for multiple handgun sales in 2010. As a practical matter, therefore, ATF estimates that this information collection will impact less than four percent of the nation's FFLs. These limitations undermine opponents' claim that this information collection will create a "national gun registry": (a) it affects FFLs in four states, not the entire "nation," (b) it applies only to certain "guns" that are especially likely to be used in crimes, and even then only when a particular dealer makes multiple sales to the same buyer within five business days, and (c) it is not a "registry" but instead a notification system that usefully alerts ATF to multiple semi-automatic gun sales by a particular buyer.

Finally, opponents of ATF's proposal, and particularly the NRA, place heavy reliance on the legislative history. As multiple courts have done, OMB should reject these arguments because the language of Section 923(g)(5)(A) is clear, and therefore the analysis should stop there.[38] In any event, most of the NRA's reliance on legislative history focuses on the point that

---

[34]   *Id.* at 1051; *see also, e.g., Blaustein & Reich,* 365 F.3d at 288.

[35]   *J&G Sales,* 473 F.3d at 1051.

[36]   Dep't of Justice, ATF, OMB No. 1140-NEW, Agency Information Collection Activities: Proposed Collection Comments Requested, 75 Fed. Reg. 79,021 (Dec. 17, 2010).

[37]   ATF, *List of Federal Firearms Licensees* (Mar. 2011), http://www.atf.gov/about/foia/download/ffl-list-2011/ffl-list/03/0311-ffl-list.xls.

[38]   *See, e.g., J&G Sales,,* 473 F.3d at 1050; *Blaustein & Reich,* 365 F.3d at 289 n.16; *see also Ratzlaf v. United States,* 510 U.S. 135, 147-48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear"); *see also Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotations and citations omitted); *Zedner v. United States,* 547 U.S. 489, 511 (2006)

ATF AR 0772

Congress did not intend to create a national gun registry, and as shown above, the information collection requirement at issue will not create a national gun registry. In addition, there is no basis for the NRA's reliance on examples in the legislative history to argue that Congress intended ATF to have authority to address *only* those examples. As the Supreme Court has explained,

> [T]he language of a statute – particularly language expressly granting an agency broad authority – is not to be regarded as modified by examples set forth in the legislative history. An example, after all, is just that: an illustration of a statute's operation in practice. It is not . . . a definitive interpretation of a statute's scope.[39]

Here, the meaning of the statute is plain; therefore, it is unnecessary to use legislative history to understand the meaning of its unambiguous terms. "Because we find the statute unambiguous on its face, we do not resort to legislative history to determine what Congress intended its enactments to mean."[40]

In short, there is no reason to depart from the plain meaning of Section 923(g)(5)(A), which authorizes ATF to issue the demand letters at issue.

## II.    THE BENEFITS OF ATF'S INFORMATION COLLECTION PROPOSAL FAR OUTWEIGH ITS BURDENS.

The reports resulting from ATF's information collection proposal will provide near real-time investigative information to ATF and can identify potential illegal firearms trafficking. In 2008, ATF initiated roughly 300 criminal investigations from data found in multiple handgun sales forms and those investigations were connected with 25,000 illegal firearms.[41]  These investigations, conducted long after the handgun reporting requirement was codified in 1986, demonstrate that reporting of multiple handgun sales assists ATF in its trafficking investigations. Implementing a long gun reporting requirement likewise will aid law enforcement in identifying and interdicting illegal gun trafficking.

In addition, the proposed information collection request is narrowly tailored. It applies to only four states, which have been identified as the source of most of the crime guns traced from Mexico to the United States.[42]  Less than 14 percent of FFLs will be affected (8,479 of 62,754 total FFLs, and quite likely far fewer). Additionally, the reporting requirement will extend to only a subset of long guns that have been identified as subject to illegal trafficking into Mexico

---

(Scalia, J., concurring in part and concurring in the judgment) ("the use of legislative history is illegitimate and ill advised in the interpretation of any statute, especially a statute that is clear on its face").

[39]  *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 649 (1990).

[40]  *Blaustein & Reich*, 365 F.3d at 288 & n.25 (declining to review legislative history given the "plain meaning of the words Congress used").

[41]  Presentation given by ATF to industry leaders, including the National Shooting Sports Foundation, at the 2009 SHOT Show, on file with Mayors Against Illegal Guns.

[42]  *Firearms Trafficking Report, supra* note 6, at 19-20; Mayors Against Illegal Guns, *Issue Brief: The Movement of Illegal Guns Across the U.S.-Mexico Border* (Sept. 2010), *available at* http://www.mayorsagainstillegalguns.org/downloads/pdf/issue_brief_mexico_2010.pdf.

8

ATF AR 0773

in connection with drug cartel violence: semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22.

This information collection will impose minimal burdens on gun dealers. ATF estimates that completing the form will require 12 minutes. Moreover, many FFLs use computerized sales logs to facilitate the handgun reporting requirements of Section 923(g)(3),[43] and these logs can be readily used to identify multiple sales of specified rifles. For those FFLs, identifying multiple sales can be largely automated. But even those FFLs using other forms of recordkeeping will experience only minimal increase in recordkeeping burdens. The form itself requires only minutes to complete, and FFLs and their staff already perform daily record searches to identify multiple handgun sales. Arguments that the information collection will impose significant burdens are exaggerated.

While imposing a small burden, the information collection will allow ATF to obtain near real-time information about potentially suspicious transactions, allowing law enforcement officers to develop investigative leads on traffickers and patterns of suspect behavior. Claims that requiring reports of multiple sales will put traffickers on their guard are overstated. Multiple sales of certain handguns have been required for decades using a virtually identical form, but traffickers still make multiple purchases, and straw purchases are not uncommon. Many FFLs voluntarily cooperate with ATF, notifying the Bureau of suspicious transactions of their own accord. Denial of ATF's proposal, however, would deprive law enforcement officers of a powerful investigative tool in its fight to contain spiraling Mexican drug cartel violence and its lethal spillover into the United States.

*　　*　　*

For these reasons, Wiltshire & Grannis LLP urges OMB to approve ATF's proposed information collection.

If you have any questions, please do not hesitate to contact us.

Sincerely yours,

Christopher J. Wright
Madeleine V. Findley
WILTSHIRE & GRANNIS LLP
1200 Eighteenth St. NW, Suite 1200
Washington, DC 20036
cwright@wiltshiregrannis.com
(202) 730-1300

*Counsel to Mayors Against Illegal Guns*

---

[43] *See, e.g.*, ATF, U.S. Dep't of Justice, *Federal Firearms Licensee Quick Reference and Best Practices Guide* (Aug. 2010), *available at* http://www.atf.gov/publications/download/p/atf-p-5300-15.pdf.

9

ATF AR 0774



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226

www.atf.gov

OMB No. 1140-0100

July 12, 2011

Dear Federal Firearms Licensee:

To assist its efforts in investigating and combating the illegal movement of firearms along and across the Southwest border, ATF is requiring licensed dealers and pawnbrokers in Arizona, California, New Mexico and Texas to submit record information concerning multiple sales of certain rifles. ATF has the authority to issue this letter to collect such record information from federal firearms licensees (FFLs) under 18 U.S.C. § 923(g)(5), and that authority has been delegated by ATF's Acting Director to the Chief of the National Tracing Center.

You must submit to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) reports of multiple sales or other dispositions whenever, at one time or during any five consecutive business days, you sell or otherwise dispose of two or more semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber) to an unlicensed person. You are required to report all such sales that occur on or after **August 14, 2011.** You must continue reporting multiple sales for the rifles subject to this demand letter until we provide written notice to stop.

The required information must be submitted on ATF Form 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, no later than the close of business on the day the multiple sale or other disposition takes place. We have enclosed a copy of Form 3310.12 with this letter. You are encouraged to order additional forms at your earliest convenience by calling the ATF Distribution Center, 1519 Cabin Branch Drive, Landover, MD 20785, at (301) 583-4696. You may also order copies from ATF's website at www.atf.gov/forms. Further, we have created a fillable form that you may access through our website at www.atf.gov. You may use the fillable form by typing in the information regarding the sale, printing sufficient copies, and mailing or faxing the form in accordance with the instructions. Finally, you may, if you wish, make photocopies of the enclosed form and use those copies to submit multiple sales reports.

Be advised that, in addition to the record information required by this letter, licensees remain obligated to submit reports of multiple sales or other dispositions when the licensee sells or otherwise disposes of two or more pistols or revolvers, or any combination of pistols or revolvers

**ATF AR 0775**

-2-

Federal Firearms Licensee

totaling two or more, to an unlicensed person at one time or during any five consecutive business days. 18 U.S.C. § 923(g)(3). Reports of multiple sales or other dispositions of handguns must be reported using ATF Form 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers, and must be submitted in accordance with the instructions on that form, separately from the information required by this letter.

If you have any questions, please contact the National Tracing Center at 1-800-788-7133.



Charles Houser
Chief, National Tracing Center

Enclosure

### Paperwork Reduction Act Notice

This request is in accordance with the Paperwork Reduction Act of 1995. The information collection documents certain sales or other dispositions of certain rifles for law enforcement purposes. The information is used to determine whether the buyer *(transferee)* may be involved in unlawful activity, such as straw purchasing. The information requested is mandatory and required by statute (18 U.S.C. § 923(g)(5)).

The estimate average burden associated with this collection is 12 minutes per report by each respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Document Services Section, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number.

ATF AR 0776

OMB No. 1140-0100

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Multiple Sale or Other Disposition of Certain Rifles**

**(Please complete all information)**

| 1. Date of Report | 2a. Federal Firearms Licensee (FFL) Number |
|---|---|

2b. Business or Trade Name and Address *(If you have complete information available on a rubber stamp, please place information here.)*

2c. Are any of the firearm(s) connected to another multiple sale? *(If yes, specify date)* ☐ Yes  ☐ No   Date _____

2d. If you sold these firearms at a gun show or other qualifying event, identify the event and provide a complete address of the event.

3. Rifles Sold or Otherwise Disposed of to the Same Unlicensed Person at One Time or During Any Five Consecutive Business Days

| Serial Number | Manufacturer | Importer | Model | Caliber | Disposition Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

4. Transferee's Name  *(Last, first, middle)*

5. Residence Address  *(Number, street, city, county, state, zip code)*

| 6. Sex | 7. Race |
|---|---|
|  | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Native Hawaiian or Other Pacific Islander  ☐ African American or Black  ☐ Hispanic or Latino  ☐ White  ☐ Other *(Specify)* |

| 8. Identification Number | 9. Type of Identification | 10. ID State | 11. Date of Birth | 12. Place of Birth *(City, county, state, country)* |
|---|---|---|---|---|

13. If the buyer of the firearms listed in item 4 is a person authorized to act on behalf of a corporation, company, association, partnership or other such business entity, you must record the following:
   **Name and Address of Business Entity**

14. Additional Information Relating to the Transfer of the Firearms

| 15. Name of Employee Filling Out This Form | 16. Date This Form Was Completed |
|---|---|

**When Fax is Available, Please Fax to 1-877-283-0288.**

ATF Form 3310.12
Revised July 2011

ATF AR 0777

### Instructions

1. This form is to be used by licensees to report all transactions in which an unlicensed person acquired, at one time or during five consecutive business days, two or more semi-automatic rifles larger than .22 caliber *(including .223/5.56 caliber)* with the ability to accept a detachable magazine. This form is not required when the rifles are returned to the same person from whom they are received.

2. Item 2c - if this transaction includes additional weapon(s) connected to a previously submitted multiple sale, check "yes" and record the date of the previous multiple sale form. *(For example, a multiple sale for dispositions made to the same unlicensed person on a Monday and Friday of the same week must be submitted on Friday. If an additional transaction is made to the same unlicensed person within five days from the Friday disposition, this disposition is connected to the previous multiple sale and you must check "yes" and record the date of the Friday disposition.)*

3. A separate form is to be submitted for each unlicensed person.

4. Licensees must complete items 1 through 12, 15 and 16 entirely. Items 13 and 14 must be completed, if applicable.

5. Business Entities - Information identifying the business entity must be recorded in item 13. If the buyer of the firearm(s) is a corporation, company, association, partnership or other such business entity, the person authorized to receive the firearms on behalf of the business entity must be identified in items 4-12 of this form.

6. The report is to be submitted to:

   a. **Copy 1** - The National Tracing Center no later than the close of business on the day that the multiple sale or other disposition occurs. You can either fax the form to 877-283-0288, or mail it to U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, National Tracing Center, P.O. Box 0279, Kearneysville, WV 25430-0279.

   b. **Copy 2** - ATF recommends that a licensee retain a copy and attach it to the back of the Firearms Transaction Record, ATF Form 4473, covering the transfer of the firearms.

7. Additional forms may be obtained through the ATF Distribution Center, 1519 Cabin Branch Drive, Landover, MD 20785, (301) 583-4696, or online at www.atf.gov.

### Paperwork Reduction Act Notice

This request is in accordance with the Paperwork Reduction Act of 1995. The information collection documents certain sales or other dispositions of rifles for law enforcement purposes. The information is used to determine if the buyer *(transferee)* is involved in a unlawful activity, or is a person prohibited by law from obtaining firearms. The information requested is mandatory and required by statute (18 U.S.C. 923(g)(5)(A)).

The estimate average burden associated with this collection is 12 minutes per respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Document Services Section, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

ATF Form 3310.12
Revised July 2011

ATF AR 0778

**Marginals for ATF Form 3310.12:**

Copy 1 - ATF National Tracing Center

Copy 2 - Licensee