IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NATIONAL SHOOTING<br>SPORTS FOUNDATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:11-cv-01401-RMC |
| B. TODD JONES, Acting Director, | ) | (consolidated with 11-cv-1402) |
| BUREAU OF ALCOHOL, | ) | |
| TOBACCO, FIREARMS & EXPLOSIVES | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**NSSF'S MOTION TO STAY BRIEFING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR EXPEDITED DISCOVERY**

The National Shooting Sports Foundation, Inc. ("NSSF") moves to stay further briefing on defendant's motion for summary judgment and, pursuant to Federal Rule of Civil Procedure 56(d), to allow expedited discovery of facts essential to NSSF's opposition to defendant's motion. Pursuant to Local Rule 7(m), counsel for NSSF conferred with counsel for defendant regarding the relief sought in this motion. Defendant opposes this motion.

**I.      Background**

On September 2, 2011, the Court set a briefing schedule on the defendant's motion for summary judgment. Defendant was ordered to file the administrative record by September 12, 2011, and to file its motion for summary judgment by September 23, 2011. Plaintiffs were ordered to file their oppositions to defendant's summary judgment motion by October 12, 2011. Defendant was ordered to file its reply by October 21, 2011, and a hearing on the motion for summary judgment was set for October 25, 2011. (Dkt. 21).

Defendant filed the administrative record on September 12, 2011, totaling 779 pages. (Dkt. 22 and 22-1 through 22-7). Defendant's summary judgment motion was filed on September 23, 2011. (Dkt. 24 and 24-1 through 24-5). The motion is supported by the Declaration of Arthur Herbert, ATF's Assistant Director of Enforcement Programs and Services. (Dkt. 24-3). Herbert's responsibility within ATF is to "oversee the development and delivery of programmatic policy guidance and technical support relative to firearms and explosives industry issues." (Dkt. 24-3, ¶1).

Herbert addresses a number of subject matters in his 73-paragraph declaration, including the role that firearms trace information had in ATF's decision to issue the July 12, 2011 demand letter to licensed retail sellers in Arizona, California, New Mexico and Texas. Herbert states that firearms tracing was an "essential starting point for identifying and eliminating illicit sources and distribution chains of firearms." (Dkt. 24-3, ¶ 7). Herbert claims to have personal knowledge regarding firearms tracing, ATF's trace database and the role trace data analysis played in ATF's decision to issue the July 12, 2011 demand letter. (Dkt. 24-3, ¶¶ 34 - 38 and 46). The administrative record filed by defendant contains a substantial amount of firearms tracing information, including redacted electronic queries that ATF made of its trace database. These queries relate to, *inter alia*, rifles recovered in Mexico and traced to specifically-identified federally licensed retail firearms dealers in the United States. (Dkt. 22-6, ATF AR 0391 – 0552).

Herbert does not cite to the administrative record as support for any of his statements regarding trace data in his declaration. Thus, it is not clear in the record before the Court which trace data queries were relied on by ATF to issue the demand letter. Nevertheless, defendant argues that ATF relied on trace data to target just a "narrow subset" and "a small fraction of FFLs" located in the four border states because, according to defendant, they "have been shown

to be significant sources of firearms recovered in Mexico." (Dkt. 24-1, pp. 2, 17 & 25). Throughout defendant's argument, the demand letter sent to these retail sellers in the four states is described as "tailored", "limited" and "carefully focused." Defendant's motion for summary judgment has injected ATF's analyses of firearms trace data and the conclusions it formed based on its analyses as issues in this case on which discovery should be permitted.

## II.    Argument

Summary judgment is ordinarily appropriate only after the nonmovant has been given an adequate opportunity to conduct discovery. *McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Federal Rule of Civil Procedure 56(d)(2) provides that if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take discovery."  Rule 56(d) motions should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th  Cir. 1992), cited favorably in *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995).

NSSF has alleged in its Verified Complaint that it is entitled to injunctive and declaratory relief on the basis that, *inter alia*, ATF's demand for multiple rifle sales reporting was not narrowly tailored to achieve the purpose of combating illegal firearms trafficking to Mexico and ATF therefore exceeded the statutory demand letter authority found in 18 U.S.C. §923(g)(5)(a):

> ATF has required each and every federally-licensed firearms dealer located in California, Texas, Arizona and New Mexico to submit the information and reports regardless of their proximity to the Mexican border and regardless of whether they make substantial sales of the rifles at issue, have a history of making sales recovered in Mexico or are perceived bt ATF to be a target of illegal firearms traffickers. ATF's arbitrary

demand for information and reports from these federally-licensed dealers is not incidental to any statutory function delegated to ATF by Congress.

(Dkt. 1, ¶13).[1]

Defendant has the burden to demonstrate in its motion for summary judgment that his decision to impose the multiple sales reporting requirement under §923(g)(5)(a) was narrowly tailored to achieve a law enforcement purpose. *See RSM, Inc. v. Buckles*, 254 F.3d 61, 69 (4th Cir. 2001)(demand letter narrowly tailored to specific grant of statutory authority upheld); *J & G Sales v. Truscott*, 473 F.3d 1043, 1049 (9th Cir. 2007)(narrowly tailored approach directed to a small number of licensees after analysis of trace data upheld).  A question of fact as to whether ATF's decision to impose the reporting requirement on all licensed retail sellers in the four states was arbitrary because it was not rationally connected to the evidence it gathered will defeat defendant's motion. *See Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986)(an agency's action is usually arbitrary and capricious if its decision runs counter to the evidence).

Without discovery, NSSF cannot present facts that are essential to its opposition to defendant's summary judgment motion.  Without discovery, NSSF and the Court are left with only defendant's unchallenged representation that the decision ATF made to send the demand letter to all licensed retail sellers in the four border states was rationally connected to the evidence ATF gathered and analyzed regarding the sources of firearms recovered in Mexico. NSSF does not know with certainty how the trace database was queried by ATF or how the results of those queries should be interpreted.  NSSF does not know whether defendant's factual representations and arguments about what the trace data revealed are true.  As a result, NSSF is

---

[1]       NSSF articulated its claim more fully in its Memorandum in Support of Motion for Preliminary Injunction. (*See* Dkt. 11-1, p. 14).

handicapped in its ability to demonstrate the existence of a genuine issue of material fact in opposition to defendant's summary judgment motion.

There is a reasonable basis for NSSF to believe that discovery will reveal that the queries made by ATF and included in the administrative record belie the conclusion that ATF's demand for reports of multiple sales of certain rifles from each of the licensed retail dealers located in the four border states will "provide strong indicators of firearms trafficking to Mexico." (Dkt. 22-6, ATF AR 0565).  *See* Affidavit of James B. Vogts, ¶ 6, attached as <u>Exhibit A</u> (hereafter "Vogts Affidavit").  Discovery will likely reveal that ATF's conclusion that its "[f]ailure to collect this information" from each of the licensees located in the four states "is likely to hinder ongoing law enforcement efforts to combat firearms trafficking and reduce violent crime along the southwest border and in Mexico," is not supported by the trace data it collected and analyzed. (Dkt. 22-7, ATF AR 0743).  Vogts Affidavit, ¶ 6.

The redacted trace database queries included in the administrative record suggest that ATF had determined as early as November 2010 that approximately 85% of the licensed retail sellers located in the four states had not sold even one rifle that was thereafter recovered in Mexico from 2008 to 2010.[2]  Vogts Affidavit, ¶ 7.   The trace database queries also seem to

---

[2]     ATF did not apparently query the trace database for evidence of factual connections between licensed retail sellers in the United States and the specific type of rifles that are subject to its demand letter multiple sales reporting requirement – semi-automatic rifles capable of accepting a detached magazine and with a caliber greater than .22.  Instead, ATF appears to have made only much broader queries for "rifles greater than .22 caliber".  If so, the results of those queries likely resulted in a substantial over count of the rifles that are subject to the demand letter multiple sales reporting requirement.  A significant number of rifles commonly sold for lawful hunting and sporting purposes are chambered for ammunition larger than .22 caliber but are not semi-automatic and do not accept detachable magazines.  The administrative record does not reveal whether ATF recognized that its queries were overly broad or whether it considered formulating queries that would more accurately identify the extent to which any licensed retail seller sold rifles that are actually subject to multiple sales reporting requirement and were recovered in Mexico.

demonstrate that approximately 1.5% or just 124 of the licensed retail sellers in the four states sold more than one of the specified rifles that was later recovered in Mexico within three years of its initial retail sale. Vogts Affidavit, ¶ 8. The period of time between a firearms initial retail sale and its recovery by law enforcement is considered by ATF to be an indicator of possible illegal firearms trafficking. (Dkt. 22-7, ATF AR 0739).

ATF appears to have specifically identified, based on trace data analysis, 103 licensed retail sellers, out of the 54,616[3] located across the country, which sold more than two of the specified rifles that were later recovered in Mexico within three years of their initial retail sale. Vogts Affidavit, ¶ 9.  Some of those retail dealers were located in the four border states, but also in Washington, Oklahoma, Nevada, Florida and Illinois. Vogts Affidavit, ¶ 9.  The administrative record does not reveal whether ATF considered imposing a more narrowly tailored multiple sales reporting requirement on just those relatively few dealers, which ATF factually connected to firearms recovered in Mexico.  The administrative record also does not reveal why ATF apparently rejected its own firearms trace evidence and analysis and instead chose to impose the requirement based only on a dealer's location in one of the four states sharing a border with Mexico. Vogts Affidavit, ¶ 10.[4]

---

[3]     The number of Type 01 (dealers in firearms other than destructive devices, including gunsmiths) and Type 02 (pawnbrokers in firearms other than destructive devices) federal firearms licensees as of November 2010. ATF Online – Statistics – Listing of Federal Firearms Licensees at www.atf.gov/about/foia/ffl-list-2010.html (last visited Sept. 26, 2011).

[4]     Although a successful firearms trace connects a recovered firearm to a retail seller and purchaser, ATF recognizes that trace data cannot be used to draw broad conclusions about firearms-related crime or illegal firearms sales. *See* Consolidated Appropriations Act of 2010, Public L. No. 111-117, 123 Stat. 3151 (requiring disclaimer accompanying ATF trace data studies).  ATF acknowledges that not all traced firearms are used in crime. (Dkt. 22-4, ATF AR 0214).  Moreover, a firearm trace that results in identification of the retail purchaser does not suggest that the purchaser or the retail seller acted illegally. *See Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 239 n. 8 (2001) (citing *ATF Youth Crime Gun Interdiction Initiative*,

NSSF is entitled to discovery in order to demonstrate that the July 12, 2011 demand letter exceeded any authority ATF may have to demand such information under §923(g)(5)(a) because the demand was not narrowly tailored to serve ATF's stated purpose of developing law enforcement leads on illegal firearms trafficking into Mexico.  The information provided in the administrative record strongly suggests that ATF ignored evidence regarding the source of firearms recovered in Mexico and arbitrarily decided to direct the reporting requirement to those retail sellers defined by the state in which they conduct business.  Without discovery on the trace data queries made by ATF, any factual representation made to the Court by NSSF on these subjects could be challenged by ATF as based on a misunderstanding of the data and erroneous. It would be fundamentally unfair to proceed to a hearing on defendant's motion for summary judgment without giving NSSF an opportunity to discover the factual bases on which to defeat defendant's motion and prevail on the merits of its claims.[5]

### III.   Relief Requested

NSSF respectfully requests that further briefing on defendant's motion for summary judgment be stayed pending completion of the following expedited discovery:

---

February 1999 at p. 17 ("ATF emphasizes that the appearance of a Federal firearms licensee (FFL) or a first unlicensed purchaser of record in association with a crime gun or in association with multiple crime guns in no way suggests that either the FFL or the first purchaser has committed criminal acts.")).

[5]   By relying on firearms trace data in support of his summary judgment motion, defendant has waived the immunity that generally precludes discovery of trace data. Public Law 111-117 – Dec. 16, 2009, 123 Stat. 3128. *See The Navajo Nation v. Peabody Holding Co., Inc*., 255 F.R.D. 37, 44 (D.D.C. 2009)(a party may not claim privilege over material they place at issue in litigation) (citing *SEC v. Lavin*, 111 F.3d 921, 929 (D.C. Cir. 1997)(this circuit applies strict rule pertaining to issue-injection waiver)).

(1) Production by the defendant of sortable electronic copies in an EXCEL format of the trace database queries made by ATF and included in the administrative record, with the redactions of FFL identities preserved, on or before October 7, 2011;

(2) The deposition of Arthur Herbert regarding the subject matters set forth in his declaration, to be completed on or before October 28, 2011;

(3) A deposition of a person or persons designated by ATF under Federal Rule of Civil Procedure 30(b)(6) to testify regarding (a) the trace database queries made and results that were reviewed or considered by ATF before it sent the July 12, 2011 demand letter and (b) the factual basis for ATF's decision to send the July 12, 2011 demand letter to all federally licensed retail firearms dealers located in Arizona, California, New Mexico and Texas, to be completed on or before October 28, 2011; and

(4) Any further discovery reasonably related to these subject matters.

NSSF further requests that a status conference be set on a date subsequent to October 28, 2011, during which the parties will report on the status of court-ordered discovery and for entry of an order setting a briefing schedule on defendant's motion for summary judgment.

Dated: September  27, 2011

Respectfully submitted,

**THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.,**
Plaintiff

By:  /s/ *James B. Vogts*_____
         One of Its Attorneys

James B. Vogts (admitted *pro hac vice*)
Andrew A. Lothson (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611

(312) 923-8266
jvogts@smbtrials.com
alothson@smbtrials.com


M. King Hill, III (D.C. Bar No. 462966)
Vincent E. Verrocchio (D.C. Bar No. 460429)
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4496
mkhill@Venable.com
veverrocchio@Venable.com


Lawrence G. Keane (admitted *pro hac vice*)
NATIONAL SHOOTING SPORTS FOUNDATION, INC
Flintlock Ridge Office Center
11 Mile Hill Road
Newtown, CT 06470-2359
(203)426-1320
lkeane@nssf.org

## CERTIFICATE OF SERVICE

I hereby certify on this 27th day of September, 2011, that a true and correct copy of the foregoing **NSSF'S MOTION TO STAY BRIEFING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR EXPEDITED DISCOVERY** was served via ECF, to the following:

> **Daniel Riess**
> U.S. DEPARTMENT OF JUSTICE
> 20 Massachusetts Avenue, NW
> Washington, DC 20530
> (202) 353-3098
> Fax: (202) 616-8460
> Email: daniel.riess@usdoj.gov
>
> **Lesley R. Farby**
> U.S. DEPARTMENT OF JUSTICE
> Civil Division, Federal Programs
> 20 Massachusetts Avenue, NW
> Washington, DC 20530
> (202) 514-3481
> Fax: (202) 616-8470
> Email: lesley.farby@usdoj.gov
>
> **Jessica Beth Leinwand**
> U.S. DEPARTMENT OF JUSTICE
> Federal Programs
> 20 Massachusetts Avenue, NW
> Room 7107
> Washington, DC 20001
> (202) 305-8628
> Fax: (202) 616-8470
> Email: jessica.b.leinwand@usdoj.gov

> /s/*James B. Vogts*
> James B. Vogts