# Exhibit A

Case 1:11-cv-01401-RMC   Document 26-1   Filed 09/27/11   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:11-cv-01401-RMC |
| B. TODD JONES, Acting Director, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES | ) ) ) ) | (consolidated with 11-cv-1402) |
| Defendant | ) ) ) | |

## AFFIDAVIT OF JAMES B. VOGTS

1. I am an attorney of record for the National Shooting Sports Foundation, Inc. ("NSSF") in the above-captioned case. This affidavit is submitted in support of NSSF's request for expedited discovery that is essential to NSSF's opposition to defendant's motion for summary judgment.

2. I am familiar with the allegations of NSSF's Verified Complaint in this case and the burden NSSF has to prove its claims for declaratory and injunctive relief.

3. I have reviewed defendant's Motion for Summary Judgment, supporting Memorandum, Statement of Material Facts and the Declaration of Arthur Herbert filed on September 23, 2011. I have also reviewed and analyzed the administrative record filed on September 12, 2011 by the defendant.

4. Defendant has argued that he is entitled to summary judgment because ATF's decision to impose an obligation on all federally licensed retail firearms dealers in Arizona, California, New Mexico and Texas to report to ATF their sales of two or more semiautomatic

1

rifles capable of accepting a detachable magazine and with a caliber greater than .22 made at one time or within five consecutive business days did not exceed its statutory authority and was a "focused and limited effort to collect data . . . in order to further a law enforcement need." (Dkt. 24-1, p.44). Defendant has argued that "[f]irearms tracing is an essential starting point for identifying and eliminating illicit sources and distribution chains of firearms in the United States." (Dkt. 24-1, p. 12). Defendant has highlighted throughout his summary judgment motion the role that firearms trace data played in ATF's decision to issue the July 12, 2011 demand letter to what defendant characterizes as a "narrow subset of FFLS" located in Arizona, California, New Mexico and Texas because trace data revealed these states to be the "top four source locations . . . for all firearms recovered in Mexico." (Dkt. 24-1, pp. 2 & 8). The redacted results of the trace database queries made by ATF are in the administrative record at Dkt. 22-6, ATF AR 0391 – 0552. Trace data kept and maintained by ATF is not available to NSSF and it has no ability duplicate the queries made by ATF of the data or make queries of its own.

5. Trace database queries were performed by ATF and made part of the administrative record. (Dkt. 22-6, ATF AR 0391 -0552). The queries appear to have been electronically completed. NSSF assumes that ATF has the ability to further electronically sort the data and make electronic counts of relevant data. In the non-electronic format provided in the administrative record, neither NSSF nor the Court has the same ability.

6. My review and analysis of the results of the trace database queries made by ATF suggests that ATF's conclusion that "significant investigative leads . . . in pursuing firearms trafficking to Mexico" will result if each of the approximately 8,500 federally licensed retail firearms dealers in Arizona, California, New Mexico and Texas were required to report multiple sales of certain rifles to ATF is not supported by the evidence ATF gathered and considered.

(Dkt. 22-7, ATF AR 0741). ATF's conclusion that "[f]ailure to collect this information" from these licensed retail sellers is "likely to hinder ongoing law enforcement efforts to combat firearms trafficking and reduce violent crime along the southwest border and in Mexico" also does not appear to be supported by the evidence. (Dkt. 22-7, ATF AR 0743).

7.  For example, the trace database queries made by ATF suggest that approximately 7,100 of the 8,534 federally licensed retail firearms sellers in the four states (83.2%) have not sold a rifle with a caliber of more than .22 that was later recovered in Mexico by law enforcement authorities in 2008, 2009 and 2010. (Dkt. 22-6, ATF AR 0448 – 0507). The trace database queries also suggest that approximately 8,041 of the same 8,534 firearms sellers (94.2%) did not sell more than one rifle with a caliber of more than .22 that was later recovered in Mexico during the same three-year period. (Dkt. 22-6, ATF AR 0448 – 0507). The identity of these sellers appears to have been redacted by defendant from the documents included in the administrative record.

8.  The trace database queries made by ATF also suggest that, despite ATF's focus on the time between the initial retail sale of a firearm and its recovery by law enforcement as a possible indicator of illegal firearms trafficking, only 124 of the 8,534 federally licensed retail firearms dealers in the four states (1.5%) sold more than one rifle with a caliber of more than .22 that was later recovered in Mexico within three years of its initial retail sale. (Dkt. 22-6, ATF AR 0510 – 0513).

9.  ATF appears to have run queries of the trace database that revealed the identity of licensed retail firearms sellers located across the country which sold rifles with a caliber of more than .22 that were later recovered in Mexico. If my interpretation of the trace query results is correct, ATF successfully identified 103 federally licensed retail sellers out of the 54,616 doing

business across the country, which sold more than two rifles with a caliber of more than .22 that were later recovered in Mexico within three years of their initial retail. Some of those retail dealers were located in Washington, Oklahoma, Nevada, Florida and Illinois, states in which dealers are not required to report multiple sales of the rifles. (Dkt. 22-6, ATF AR 0510 – 0512).

10. Neither the administrative record nor any other factual material submitted by defendant in support of his summary judgment motion reveals why ATF apparently rejected its own firearms trace data and instead chose to impose a multiple sales reporting requirement based only on a retail seller's location in one of the four states that share a border with Mexico.

11. By relying on the trace data queries in support of his summary judgment motion, defendant has injected trace data queries into the case and made information regarding the trace data discoverable. Without discovery, NSSF can only offer its interpretations of the trace data included in the administrative record. Left undiscovered, however, defendant has the unchallengeable ability to characterize NSSF's interpretations of the data as erroneous. In contrast, NSSF will not have the ability to counter defendant's characterizations of the evidence in opposition to defendant's summary judgment motion and will be prevented from demonstrating that the evidence fails to show a rational connection between the facts relating to illegal firearms trafficking to Mexico and the decision made by ATF to require all licensed retail dealers in the four states to report multiple sales of the specified rifles. I reasonably believe that discovery on the trace database queries performed by ATF and the conclusions ATF formed or failed to form based on the results of those queries will demonstrate that ATF's exercise of demand letter authority under 18 U.S.C. §923(g)(5)(a) was not narrowly or appropriately tailored to serve its stated purpose of developing law enforcement leads on illegal firearms trafficking into Mexico.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 27, 2011

                                                /s/*James B. Vogts*
                                                James B. Vogts