```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


NATIONAL SHOOTING SPORTS          :
FOUNDATION, INC.,                 :
                                  :
             Plaintiff,           :          Docket No. CA 11-1401
        vs.                       :
                                  :             Washington, D.C.
KENNETH MELSON,                   :          Thursday, September 1, 2011
                                  :                12:15 p.m.
                                  :
             Defendant.           :
---------------------------x




                 TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE ROSEMARY M. COLLYER
                  UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:          JAMES B. VOGTS, Esquire
                            Swanson, Martin & Bell, LLP
                            330 North Wabash
                            Suite 3300
                            Chicago, IL  60611

                            VINCENT E. VERROCCHIO, Esquire
                            Venable LLP
                            575 7th Street, NW
                            Washington, DC  20004


                            RICHARD E. GARDINER, Esquire
                            3925 Chain Bridge Road
                            Suite 403
                            Fairfax, VA  22030
```

Appearances continued:

For the Defendant:          LESLEY FARBY, Esquire
                            DANIEL RIESS, Esquire
                            JESSICA LEINWAND, Esquire
                            SANDRA SCHRAIBMAN, Esquire
                            U.S. Department of Justice
                            20 Massachusetts Ave., NW
                            Washington, DC  20531

Court Reporter:             CRYSTAL M. PILGRIM, RPR
                            Official Court Reporter
                            United States District Court
                            District of Columbia
                            333 Constitution Avenue, NW
                            Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1            THE DEPUTY CLERK:  Civil action 11-1401, National

2    Shooting Sports Foundation, Incorporated, et al versus Kenneth

3    Melson.

4         For the Plaintiffs James Vogts, Vincent Verrocchio and

5    Richard Gardiner.

6         For the defense Daniel Reiss, Lesley Farby, Sandra

7    Schraibman and Jessica Leinwand.

8            THE COURT:  Good morning, afternoon whatever,

9    everybody.  Thank you for coming.

10        I of course haven't gotten real briefs from both sides

11   yet and I know there's an argument about what the schedule

12   should be, and whether we should do a preliminary injunction or

13   just go right to the merits.

14        And it seemed to me after reading the papers from the

15   plaintiffs that the plaintiffs have shown, and this is without

16   hearing from the Government, so you have to understand it's

17   kind of a one-sided reaction, that the plaintiffs have at least

18   made out what appears to be a prima facia case that ATF has

19   gone beyond it's authority.

20        But I'm very skeptical of whether there is irreparable

21   harm sufficient to get a preliminary injunction which is why I

22   thought that that was the only thing that you should focus on

23   today.

24        I know that I read of course the plaintiff's argument

25   about irreparable harm, but I think it is not up to date with

1  the law in the District of Columbia which has recently become

2  more, well, it's done two things.  One, it's become more

3  insistent that a plaintiff show merit on all four of the

4  criteria for getting an injunction and while there is still the

5  possibility of unequal levels of evidence on each one, a

6  sliding scale concept is no longer in such favor with the

7  Circuit, and as a result the emphasis is slightly different

8  than it's been in the past.

9       But more particularly, the Circuit has recently become

10 quite particular about the level of evidence necessary to show

11 irreparable harm and in terms of sliding scale and everything,

12 it's particularly so that even a strong case on the merits

13 won't be sufficient for an injunction if there isn't some

14 degree of irreparable harm.

15      The plaintiffs are relying on economic loss and the

16 cost.  Let me quote what their brief says in summary.  This is

17 a summary sentence so don't think I just read your summary

18 sentence, but this is the summary sentence.

19      It says these compliance requirements and the procedures

20 and costs required to maintain compliance are certainly ongoing

21 and can never be recouped.  That is per se irreparable harm.

22      And the plaintiffs cite, as I would if I were they, a

23 number of cases including some District Court cases from this

24 Circuit which would appear to support that argument.

25      I don't think the Circuit exactly supports that now and

1  it's position on the nature of the irreparable harm when it's

2  economic has to be more than just anything.  It has to be both

3  certain and great, and so I will direct you to the review of

4  Smoking Everywhere which is a case you cite from the District

5  Court where the District Court said any loss of income that

6  cannot be recovered is irreparable.

7       The Circuit sustained the District Court but did so only

8  after finding that there really was irreparable harm on

9  different bases than just loss of income.  So I just wanted to

10 sort of tee that up and say that it seems to me that's a very

11 serious flaw in the request for a preliminary injunction at

12 this point, and I want you to address it.

13      But I also think that in light of my concerns about the

14 merits, we should do expedited briefing and get this addressed

15 as quickly as we can with a reasonably expedited, I put in

16 reasonably before expedited.  I don't know they that they go

17 together but with a reasonably expedited schedule.

18      Who is going to talk for the plaintiff or are you just

19 going to throw up your hands and say oh, well.  No, somebody is

20 going talk, okay.

21      Sir, which wonderful lawyer are you?

22           MR. VERROCCHIO:  Good morning, Your Honor.  I'm

23 Vincent Verrocchio from Venable.

24           THE COURT:  Yes.

25           MR. VERROCCHIO:  With your permission, Your Honor,

1    Mr. Vogts who is admitted pro hac vice will address the Court.

2            THE COURT:  That will be fine.

3            MR. VERROCCHIO:  Thank you, Your Honor.

4            MR. VOGTS:  Good afternoon, Your Honor.

5            THE COURT:  Good afternoon, sir.

6            MR. VOGTS:  Jim Vogts on behalf of the National

7    Shooting Sports Foundation.

8        My client was cognizant of the Winter's decision and how

9    courts in this District and the Circuit sitting above it has

10   addressed it in the irreparable harm requirement.  I believe we

11   discussed that situation in footnote 8 of our brief.

12       And we read the evolving law I guess on that subject to

13   basically say that, you know, a litigant has to make a positive

14   showing now on all four requirements.  It's not sufficient that

15   you are absent on one of the four but you are really strong on

16   two of the three or three of the three.  I believe that --

17           THE COURT:  I agree.  It's not quite clear as to how

18   strong strong has to be, but there has to be at least a

19   positive showing on all four.

20           MR. VOGTS:  Some injury.

21           THE COURT:  Right.

22           MR. VOGTS:  I think we have pled in our verified

23   complaint the existence of some injury.  It may not be the

24   greatest economic injury that a litigant has ever had in moving

25   for a preliminary injunctive relief, but there clearly is an

1    injury.  It's an economic injury and it clearly is irreparable.

2         The Government is not about to write a check at the end

3    of this case saying here, we'll compensate you for the economic

4    losses of income and expenses that you have incurred.  So I do

5    think that we have made a sufficient prima facia showing on the

6    irreparable injury requirement to warrant at least getting to

7    the hearing on preliminary injunctive relief.

8         The affidavit we submitted in support of our motion for

9    a preliminary injunction comes from a retail dealer with stores

10   in three of the four effected states, five total stores.  They

11   sell a very substantial amount of these types of rifles that

12   are subject to this multiple sales reporting requirement.

13        They've had to put in a substantial amount of time up to

14   August 14th, the effective day of the requirement and then now

15   on an ongoing basis thereafter they're putting in a fairly

16   substantial amount of time just to comply with this

17   requirement.

18             THE COURT:  Let me ask you this.  Which part of the

19   requirements because there's more than one requirement if you

20   take it apart.  There's a requirement that a seller of guns not

21   only keep track of which guns and to whom and address and that

22   sort of thing which it already has to do, but that he now or

23   she keep track of more than, more than one gun sold of certain

24   kinds sold to the same person or entity within a five day

25   period.

1              MR. VOGTS:  Correct.

2              THE COURT:  There's that requirement which is new.

3  And then there's the requirement that that information be sent

4  to the ATF in Washington or to it's regional office in

5  Washington.

6              MR. VOGTS:  National Tracing Center which I believe

7  is in West Virginia.

8              THE COURT:  Well, it amounts to the national

9  location.

10             MR. VOGTS:  Sure.

11             THE COURT:  That's a separate requirement under the

12 law.

13         Is the first one as offensive to you as the second?

14             MR. VOGTS:  Well, they're both equally offensive

15 under different provisions of the Gun Control Act.

16         The first requirement that -- they're actually almost

17 identical in the sense.  Because what the ATF is running afoul

18 of is the requirement that these federally licensed deals

19 report this information.

20             THE COURT:  But the report is different than have it

21 available to be reviewed.  I mean, I understand your point

22 about the report.  But that's sending it to West Virginia.

23 That's reporting it.  Noting it, keeping track of it in your

24 store so that if an ATF agent, who I guess at the moment comes

25 by once a year, no more, if an agent comes by he or she can say

1   let me see your reports, let me see your records, and can tell

2   that this dealer has sold two or more of these particular

3   weapons to an individual within a five day period.

4         So I don't see that that requirement by itself is so

5   materially adverse that by itself it would, even if it's beyond

6   ATF's authority, that it would support an injunction.

7              MR. VOGTS:  Well, merely creating that record --

8              THE COURT:  Right.

9              MR. SCARPELLI:  -- within a gun store --

10             THE COURT:  Right.

11             MR. VOGTS:  -- a multiple sale of one or more of

12  these rifles to the same unlicensed person within five

13  consecutive business days can be a fairly onerous task for any

14  given gun seller depending on number one, how it chooses to

15  organize it's form 4473s, the law allows that gun seller to

16  organize them by alphabetical name of purchaser or by what's

17  called serial transaction number which for all intents and

18  purposes is the date on which that gun was acquired from a

19  distributor or manufacturer of the gun.

20        So what we have called staggered sales identifying

21  those, capturing that information over the course of five

22  consecutive business days can be a fairly onerous task

23  depending on the volume of sales that gun seller makes, the

24  number of sales persons that person has on the floor.

25             If the ATF agent is to come by the gun store once a year

1   to do a compliance inspection or has reasonable cause and has a

2   warrant to go in and inspect the records, that ATF agent is

3   going to have to sit down with all of the records and really go

4   through the same onerous review that the gun seller would have

5   to to just capture those multiple sales within five consecutive

6   business days.

7           THE COURT:  That's their problem, I'm not going to

8   worry about them having to do that.

9           But my question to you is and we're just talking

10  preliminary relief here, we're not talking about the actual

11  merits of whether ATF has the authority to require the keeping

12  of the records we're talking about.

13          I'm talking about preliminary relief.  And it seems to

14  me for purposes of preliminary relief keeping track of, since

15  they already have to keep track of every sale, keeping track of

16  whether one or more guns is sold to the same person within a

17  five day period while perhaps an encumbrance, while perhaps

18  beyond ATF's authority, you may or may not win on either of

19  those points, doesn't seem to me to be worthy of preliminary

20  relief.

21          And so it's the issue of whether or not for preliminary

22  relief, this is my analysis, whether or not one has to report

23  the sales to the ATF.  But that's not the basis for your

24  request for preliminary relief.  Your request for preliminary

25  relief is based on the cost and burdens associated with keeping

1    track of it.

2         As to that, I think, you know, you're in business.

3    Everybody has regulatory burdens that are burdensome and this

4    one may be you may well win in the end.  But I'm just talking

5    preliminary relief.  And I can't see that there's irreparable

6    harm in that.

7         The cost associated, most of the cost associated with it

8    has already been incurred to get ready for August 14th to

9    rearrange whatever your filing, if I can use that term, system

10   is and now you just got to sort of do it until we figure out

11   whether you are going to win or lose on the merits.  If I can

12   get you to win or lose on the merits by November, seems to me

13   to be pretty good.

14        MR. VOGTS:  Well, I appreciate Your Honor's analysis

15   and I understand it.

16        THE COURT:  And you just politely disagree.  Please,

17   go ahead.

18        MR. VOGTS:  Only in this sense that and I, your

19   comment that the costs primarily have already been incurred and

20   I know that's something that the Government wrote in one of its

21   briefs to the Court.

22        In reality the ongoing costs they're every bit as

23   significant as the costs already incurred on a daily basis.  By

24   the close of business these reports have to be, the sales have

25   to be identified, the reports have to be prepared and those

1   reports have to be sent to the ATF by fax or else you are in

2   violation of the law and the next time that compliance

3   inspection comes, they are going to look at dates you sent

4   those multiple sales reports and if they weren't done by 5 p.m.

5   on Friday, you know, that's a violation that could lead to a

6   license revocation hearing.

7           So the ongoing burdens on these sellers --

8           THE COURT:  Does the ATF really act with such

9   ironclad approach?

10          MR. VOGTS:  I can speak with personal knowledge that

11  they have the authority to do so and they have in some

12  instances, yes.  Dealers have incredible record keeping

13  requirements that they have to adhere to and if they don't

14  adhere to them and the ATF comes acalling, they find them.

15  They work hard and they find them.  The agents are well versed

16  in the laws and regulations and they know what to look for and

17  they find them.

18          With regard to the reporting requirement we have also

19  alleged that the reporting of these multiple sales and the

20  submission of the reports to a Government facility runs afoul

21  of Section 926 A of the Gun Control Act which prohibits

22  reporting of any firearm transaction sales information to a

23  Government facility unless that reporting obligation existed in

24  the Firearms Owner's Protection Act was passed in 1986.

25          So it's not an economic burden per se on the seller, but

1   it is I think worthy of preliminary injunctive relief to

2   prevent that violation of the Gun Control Act from occurring.

3          THE COURT:  Yes.  And this is, but that sort of goes

4   to the merits, and this is where the Circuit's insistence that

5   there be a positive showing on all four elements for

6   preliminary relief seems to me to particularly bear down

7   because while the Government, and I would let them argue, says

8   that there's no merit to even the underlying complaint, and I

9   am not deciding that, but it seems to me that it's not, there's

10  certainly not anything frivolous to your complaint and there

11  seems to be some serious issue here about what Congress

12  intended and what the law permits and what ATF wishes to do.

13  So I and I, I see that and I understand that part.

14         But I still need to find irreparable harm and the mere

15  violation, I don't mean to say mere, don't let me undercut your

16  position that way, but the violation of the statute standing

17  alone unless it has irreparable consequences and the

18  consequences have to be great and imminent.  I grant you the

19  immense of them, but the greatness of them seems to me not to

20  be present to constitute irreparable harm.

21         And so I mean, I don't see how I can issue an injunction

22  having reached that conclusion, but it seems to me nonetheless

23  I need to be responsive to your complaint and to be on top of

24  this and not let it kind of sit around.  We need to move

25  forward and we need to get it fully briefed and we need to get

1   an administrative record and we need to decide this as quickly

2   as that can be done.

3        I just can't quite get there to irreparability of the

4   harm because at least a significant portion of the cost

5   involved have already been incurred.  The nuisance value, the

6   burden, the day to day oh, gees, do I have to do this kind of

7   thing, I grant you that's there.  But on any given day, I don't

8   know how many guns actually get sold in Arizona and Texas and

9   New Mexico and where's the fourth state?

10            MR. VOGTS:  California.

11            THE COURT:  California, Southern California.  I don't

12   know how many guns actually get sold by any one seller.  I

13   suppose it could be lots.  But anyway in as an across the board

14   thing I just, I just don't see irreparability.

15            MR. VOGTS:  Your Honor, as you know, there's two

16   plaintiffs --

17            THE COURT:  Yes.

18            MR. VOGTS:  -- in this consolidated action and with

19   your permission I would yield the podium to Mr. Gardiner.

20            THE COURT:  Oh, Mr. Gardiner, yes, I didn't mean to

21   overlook Mr. Gardiner.

22        Mr. Gardiner, you may be able to add something to this

23   and make me say ah-ha.

24            MR. GARDINER:  Well, first of all, Your Honor, I

25   think you're right about the four factors that they, the

1   sliding scale, I think after Winters seems to have largely

2   disappeared.  But --

3           THE COURT:  It's sort of there and remains to be seen

4   what one panel and another panel and all of that will make of

5   it.  But here we sit today trying to figure it out.

6           MR. GARDINER:  Right.  But I think Winter talks about

7   likely to suffer irreparable harm.  I think that kind of

8   suggests to me that the harm doesn't have to be a great harm.

9   I don't know that there's any Circuit case law that

10  specifically says that the harm has to be a great harm.

11          THE COURT:  Well, it's Wisconsin Gas isn't it that

12  says great, Wisconsin Gas says that the harm must be both

13  certain and great.

14          MR. GARDINER:  I have not had a chance to look at

15  that.

16          THE COURT:  I know.  Believe me, there are enough

17  cases.  Let me see if I can find you a cite.

18          MR. GARDINER:  But if we get a reply brief, I will be

19  glad to deal with it.

20      (Pause.)

21          THE COURT:  I am sure it's here, I don't see it here

22  off the top of my head.

23      Would you happen to know?

24      No, she doesn't know.

25          MS. FARBY:  I have the cite.

1          THE COURT:  Do you?  Yes, what is it?

2          MS. FARBY:  It's 758.

3          THE COURT:  758.

4          MS. FARBY:  F.2d 669.

5          THE COURT:  F.2d 669, so it's not new.

6          MR. GARDINER:  It's an old case, way predates Winter.

7          THE COURT:  Yes, it's an old case, but it seems to me

8    that Winter -- I mean, I'm looking at, what I'm trying to do is

9    figure out what to do with the law of the D.C. Circuit which

10   given the cases you've cited, you have cited me cases outside

11   of the Circuit too.  But you can find certainly D.C. District

12   Court cases that are consistent with the position you're

13   advancing.  And I can find D.C. Circuit cases which sort of

14   seem to move around and shake the world a little bit.

15        I'm just telling you the way I'm reading all of them

16   collectively.  It seems to me that A, I have to have a positive

17   showing on all and I have to have irreparable harm and whatever

18   the likelihood of the harm has to be, it still has to be

19   irreparable and money as a general proposition isn't considered

20   as irreparable as other harms.  And personally, I think those

21   cases that say even when it's a federal Government.

22        Now Smoking Everywhere the federal Government completely

23   shut down a business.  So it wasn't any money.  They completely

24   shut them out of the country.  You can't come in at all.

25   That's not just some money, that's doing business at all.  That

1   seems to me to be a different kettle of fish, anyway.

2           MR. GARDINER:  Well, I think that's something that we

3   would obviously need to brief a little bit more thoroughly

4   since it's a concern of the Court.

5           The other thing I wanted to, two other points I wanted

6   to mention was with regard to the requirements that the Court

7   was talking about, with all due respect, I think there's a

8   little bit of misunderstanding of what is going on here.

9           The reporting requirement is the requirement that the

10  Government has imposed on the dealers.  The keeping track that

11  is the verification system that they have to set up is a

12  consequence of that.  It's not a separate requirement that the

13  letter, the demand letter imposes.  It's a result of having to

14  file the reports that the dealers therefore have to come up

15  with this system so that they can file the reports.

16          And the duty though that is actually imposed on the

17  dealers by the letter is the duty to file the reports.  And the

18  duty to file the reports is obviously an ongoing duty.  Once

19  the system is set up the Court is right, that cost, if you

20  will, is largely already borne, but the real cost here is the

21  continuing obligation to have to prepare to do the check, the

22  verification and then to file the reports and as Mr. Vogts

23  pointed out, the reports have to be filed by close of business

24  on the day that the second sale takes place.

25          Now if that's a sale that involves one sale that

1  involves two firearms, that's relatively easy to do because you

2  are going to have one 4473 form that will have both firearms on

3  it.  But if you have a situation where you have sold one on

4  Monday and you sell the second one on Friday, then you have

5  got, and you sell it let's say at five o'clock and your

6  business closes at five on Friday, you have got to keep

7  somebody overtime to go back through your system to find out if

8  in the last five days that same person has bought one of the

9  qualifying rifles.

10       So the ongoing nature of it is actually where the

11  greater cost is.  It's setting up the system and depending on

12  the dealer, you know, is a cost that's already been absorbed.

13  But they have to continue to do that every time, every time a

14  qualifying rifle is sold they have to go back and check the

15  records back five days to make sure that that one individual

16  didn't buy a qualifying rifle within the past five days and if

17  he did or she did, then the report has to be gotten out that

18  day.

19       So there is, there is a, a continuing harm and every day

20  that goes by the harm grows and grows.

21       And there's another harm that the Court has not talked

22  about and that is the loss of sales as a result of people not

23  wanting to comply, not wanting their information sent in to a

24  Government data base and that obviously is very hard to

25  quantify as to how much business they have lost.

1          I can represent to the Court that both my clients have

2     told me that they have had customers who have already told them

3     that because of this they're not purchasing a second rifle.

4     And so they've lost, they've lost income.

5          And then the third harm here is that the privacy rights

6     of the customer.  Let's say that somebody does agree to,

7     somebody does buy two qualifying rifles within the five

8     consecutive business days and that information is dutifully

9     sent by the dealer that same day to the Government.  It now is

10    sitting in a Government data base.

11         THE COURT:  That one I understand.  Do we have any

12    customers in this group?  I thought we only had dealers.

13         MR. GARDINER:  We only have dealers.

14         THE COURT:  I understand the point about the

15    purchaser's privacy rights.  But I don't think that the dealers

16    have standing to complain about the purchaser's privacy rights.

17         MR. GARDINER:  With all due respect, Your Honor, I

18    think they do.  I cited a couple of Supreme Court cases right

19    on point that merchants do have the right, do have standing to

20    raise the privacy rights of their customers.

21         THE COURT:  Can you imagine that?  Supreme Court

22    case, what does the Supreme Court know.

23         All right, they're the mavens of standing so if they say

24    they have standing, there must be standing, right.

25         MR. GARDINER:  They have said that there is standing

1   to raise that particularly when the customer doesn't want to

2   come forward because, you know, it's privacy rights are at

3   issue.

4           THE COURT:  Well, it might be although as you say in

5   your papers gun purchasing is not illegal.  So I'm not as

6   concerned about the privacy rights of someone who doesn't want

7   to admit that he buys guns.  Excuse me, everybody knows people

8   in Texas, New Mexico, Arizona, maybe California buy guns and

9   it's perfectly lawful.  That's not the issue.  They don't live

10  in Washington D.C.  It's perfectly lawful.  Turns out maybe

11  it's lawful in Washington D.C. too.

12          So, you know, having to sue about it is one thing.  Not

13  wanting to have their names sent into the ATF well, that's

14  maybe something else.

15          MR. GARDINER:  Well, that's what the reporting

16  requirement requires.

17          THE COURT:  I appreciate that point very much.

18          MR. GARDINER:  Okay.  With regard to Your Honor's

19  suggestion and it's one that we would endorse that there ought

20  to be some expedition in the hearing.  We, Mr. Vogts and I

21  talked before we came in about a possible schedule which I

22  would just like to propose to the Court.

23          THE COURT:  All right.  As long as you are standing

24  up propose away and then the Government can faint and then

25  they'll get up here and respond, how is that.

1          MR. GARDINER:  Okay.  My proposal would be that the

2    Government file it's response by the 15th of this month which

3    is two weeks from today.

4          The Government I would note that the Government has

5    known about this obligation or this reporting possibility since

6    last year when they first proposed it.

7          THE COURT:  Yeah, but they didn't have your precise

8    arguments.  Now you're right.

9          MR. GARDINER:  Presumably they did.

10         THE COURT:  But your arguments are, you know, they

11   are very sharpened, it's like, you know, this case when it gets

12   to the Court of Appeals will be slightly different than the one

13   you are making here.

14         Anyway, go ahead.  Two weeks.

15         MR. GARDINER:  Presumably they were aware of the 9th

16   and 4th Circuit cases which kind of dealt with this issue a

17   little bit a few years ago.  Certainly they were aware because

18   they were involved in them.

19         So for them to come forward and say they don't have

20   enough time between now and the 15th I think is a little bit

21   disingenuous.  They will have had by that time, they have

22   already had a week more than over a week with regard to

23   Mr. Vogts' motion and will be a week tomorrow for my motion.

24         Then we would suggest a reply brief toward the end of

25   the month, maybe the 29th of September and an expedited hearing

```
 1   maybe the first week of October, the week of the 3rd I was
 2   going to suggest the 4th, 5th, 6th, something like that.
 3            THE COURT:  Alrighty.  I don't know what my schedule
 4   is, but right now let me hear from the Government.
 5            MR. GARDINER:  Thank you, Your Honor.
 6            THE COURT:  Thank you, sir.
 7        Who's going to speak for the Government?
 8            MS. FARBY:  Good afternoon, Your Honor.  Lesley Farby
 9   for the defendant.
10            THE COURT:  Nice to see you, Ms. Farby.
11            MS. FARBY:  Thank you, Your Honor.
12        The schedule just proposed by plaintiff's counsel --
13            THE COURT:  Well, let's get to the merits first
14   before we go to the schedule.
15            MS. FARBY:  Absolutely, Your Honor.
16            THE COURT:  The question is I can, presumably over
17   your opposition, I can see some likelihood of success on the
18   merits for parts, at least parts of the plaintiff's arguments
19   if not the whole thing.
20        I as I've indicated have trouble with particularly
21   irreparable harm.  And the question is what's the current law?
22   And how much should I take into account that whatever harm is
23   suffered cannot be recouped from the federal Government because
24   it is a sovereign.
25            So why don't you, that's where the current issue is.
```

1          MS. FARBY:  Absolutely, Your Honor.

2      The standard that plaintiff NSSF has asked the Court to

3  adopt is basically a per se rule that any economic harm of any

4  magnitude is per se irreparable because it can't be recovered

5  against the Government because of sovereign immunity.  That

6  simply is not the law in this Circuit, Your Honor.

7          The Courts have repeatedly rejected the per se rule.

8  One member of this Court, Judge Walton recently remarked in

9  National Mining Association versus Jackson, a 2011 decision,

10  said that the fact that economic losses may be unrecoverable

11  does not absolve the movant from it's considerable burden of

12  proving that those losses are certain, great and actual.  And

13  as Your Honor has already recognized, Plaintiffs have not

14  alleged any harm that is certain, great or actual.

15      The fact that plaintiffs waited until after the

16  requirement had already taken effect suggests that there is no

17  emergency, there is no imminence to the harm that they're

18  complaining about.

19          THE COURT:  Let's just talk about the harm.  I

20  understand that argument which you say undercuts their claims

21  of irreparable harm.  But actually the issue is whether and

22  whether the Circuit would find that the inability to recoupe

23  from the federal Government for the such harm as it is,

24  whatever costs a firearms dealer can track and show that those

25  costs which may later prove not to have been necessary are

1    irreparable because not subject to recoupment.

2         And there are cases that speak to that.

3         MS. FARBY:  There are cases that speak to that, Your

4    Honor.

5         Most Courts in the District have held that in order for

6    even unrecoverable harm to be sufficient to meet the

7    irreparable harm standard it must be so severe as to threaten

8    the loss of the business entirely or it must impose severe

9    economic burdens on the plaintiff.

10        The plaintiffs haven't even alleged here that these

11   burdens are severe, that they threaten to put them out of

12   business.

13        I think it's important to just note what the requirement

14   that they're complaining about does.  It does not prohibit them

15   from selling the rifles in question.  It does not prohibit any

16   purchaser from purchasing the rifles in question.  All it does

17   is require them to submit a one page form to ATF.  The

18   information on that form importantly is information that they

19   have long been required to maintain and keep in their records.

20        THE COURT:  Well, of course, the response is we've

21   been required to maintain but not submit information about guns

22   as we sell them.  We have never been required to track guns as

23   we sell them so that our records are clear that we sold two or

24   more guns to A, B or C and goodness knows, we've never had to

25   tell ATF that we sold a gun today much less that we sold two

1  guns today or we sold ten guns in the last week.

2       So although your point is a fair one it doesn't actually

3  carry you very far.  Because there is a whole new significance

4  to what is being required that you can't quite sweep under the

5  rug.

6            MS. FARBY:  Your Honor, it's actually not the case

7  that this kind of information has not been required to be

8  submitted in the past.

9       For the last 36 years FFLs, federal firearms licensees

10  have been required to report multiple sales of pistols and

11  revolvers or handguns, the exact same information that ATF is

12  now requiring the specific FFLs to report for rifles.  So most

13  FFLs already have in place systems for tracking multiple sales

14  because they do this anyway for handguns and they have been

15  doing so since 1975 as required by law.

16            THE COURT:  And of those just for information sake,

17  how does that particular regulation or law work?  Is it

18  multiple sales at the same time?  Multiple sales within a

19  certain period of time?

20            MS. FARBY:  Precisely, it's a statute, Your Honor.

21  It's part of the Gun Control Act.  And it's precisely the same

22  as the current requirement within five business days.

23            THE COURT:  Okay.

24            MS. FARBY:  And the form is virtually identical to

25  the form that ATF is now requiring FFLs to submit with respect

1    to rifles.

2              THE COURT:  Okay.

3              MS. FARBY:  It's also important to note that FFLs are

4    required as I believe plaintiffs' counsel mentioned, they are

5    required to retain a form 4473 which is the record of every

6    single firearms transaction, and they're required to complete

7    those and maintain them for every transaction.

8         And for, by long standing regulation ATF has required

9    them to keep them in a certain order, either in alphabetical

10   order by name of the purchaser, or in chronological order by

11   the date of sale or disposition or by numerical order, the

12   transaction serial number.

13        So keeping track of these forms and these multiple sales

14   is not nearly so onerous as plaintiff suggests.  It's hardly

15   the kind of severe economic harm that the Courts in this

16   Circuit have required to establish irreparable economic injury.

17   Plaintiffs really have not alleged other ways.  They don't

18   provide specifics to substantiate their claims that this is a

19   severe burden.

20        NSSF says that it's members Sportsman Warehouse which

21   has a total of five retail locations in the effected states, it

22   --

23             THE COURT:  I don't want a whole argument.  You are

24   all prepared for a whole argument, I'm not.  I just want to

25   talk about irreparable harm and I don't need a whole argument.

1    I think I'm good on that.

2        Tell me what schedule you would propose?

3        MS. FARBY:  Well, Your Honor, we already proposed a

4    schedule.

5        THE COURT:  I know but they've proposed one back

6    which would be, which would get this resolved in October

7    instead of November.

8        How complicated is your getting together a record?

9        MS. FARBY:  Well, Your Honor, respectfully we've

10   asked for I believe only one additional week from what they are

11   proposing.  What plaintiffs' counsel failed to mention is that

12   they have filed two additional actions and in two separate

13   districts that are virtually identical and have indicated, and

14   by plaintiffs I mean the same attorney who represents G and G

15   Sales and Foothills Firearms here has filed two additional

16   actions, one in the District of New Mexico, and one in the

17   Western District of Texas.

18       We have moved to transfer venue in both of those cases

19   here but at plaintiffs' request the briefing on our motion to

20   transfer has been delayed and plaintiff has gotten an

21   extension of time to respond to those motions.

22       THE COURT:  Hoping that he get an injunction today

23   undoubtedly.

24       MS. FARBY:  Possibly, Your Honor.

25       And plaintiff has indicated, as plaintiffs' counsel

1  rather has indicated his intent to move for a preliminary

2  injunction in both of those cases in short order.

3       So while we were anticipating this preliminary

4  injunction motion, we were not necessarily anticipating four

5  separate ones in three different districts and so that

6  circumstance, under those circumstances we think that the

7  schedule we proposed is more than reasonable particularly where

8  plaintiffs have not shown that this is an emergency that

9  requires further expedition as Your Honor has recognized.

10       THE COURT:  Okay.  Thank you.

11       Who wants to speak last for the plaintiffs?  You can

12  toss a coin or however you wish.

13       MR. VOGTS:  Your Honor, Jim Vogts for the National

14  Shooting Sports Foundation.

15       You may have noticed that in the proposed schedule that

16  the Government submitted to the Court they've created time in

17  which to file a summary judgment motion and to have that

18  summary judgment motion fully briefed, and I would suggest to

19  the Court that the Government should keep its powder dry

20  so-to-speak on the summary judgment motion.  It's going to

21  inevitably delay getting to the merits of the claim for

22  injunctive relief.  We don't know what this administrative

23  record is going to look like.  We don't know if it's going to

24  be like this or it's going to be like this.  (Demonstrating

25  with hands.)

1          We don't know how the Government is going to use this

2     administrative record in support of a summary judgment motion

3     for the Court now to enter a briefing schedule that presumes

4     periods of time for briefing and a motion that nobody has yet

5     seen I think problematic and it might end up in more delay in

6     getting to the merits of the plaintiffs' claim.

7          So we would like to see any briefing schedule and

8     hearing date be limited to the claim for injunctive relief.

9     And depending on how the Court rules, a summary judgment motion

10    could be moot quite frankly.  Or they would have the ability to

11    make it thereafter.  So.

12              THE COURT:  Well, except that if I go forward to -- I

13    mean, the first issue is whether or not the plaintiffs meet the

14    standard for a preliminary injunction.  And if they don't, then

15    the next thing is to move to briefing on the merits.

16          Now can you immediately appeal the denial of a

17    preliminary injunction?

18              MR. VOGTS:  Yes, you can.

19              THE COURT:  So if I deny a preliminary injunction

20    you're saying you would immediately appeal rather than litigate

21    the merits?

22              MR. VOGTS:  I don't know that we would do that, Your

23    Honor.  I can't make that decision now.

24              THE COURT:  Okay.  Well, I mean, I'm just a Judge in

25    Washington D.C.

1         I understand that there may be a desire to litigate this

2    issue in different fora because goodness knows, different

3    District Court Judges may look at things differently and you

4    may get different results.  Oh, you may, that's the way it

5    goes.

6         It seems to me a waste of time and effort, but

7    plaintiffs are the masters of their own cases and if they wish

8    to spend their money that way, the Government is just going to

9    have to I guess respond accordingly, but I don't want to waste

10   my time.

11        I mean, I have lots of other things to do, but I'm

12   perfectly willing to admit to you and to recognize that you

13   have got a case that needs a prompt disposition.  But I would

14   rather dispose of it, get it done, get you what you need, go

15   up, go down, Government appeal, whoever loses I have no idea, I

16   really have no idea because I don't have complete briefing on

17   the merits, I do have a record like you say.  It seems to me to

18   be a waste of time to sit around and litigate a preliminary

19   injunction now and I think we should just move forward and get

20   this thing done.

21        Now that doesn't, you can either oppose bringing those

22   other cases here so that you get a chance to get different

23   results.  But I don't know what the result is, that's up to

24   you.  You figure out what you want to do.  But I think we

25   should just move ahead and get this done.

1            MR. VOGTS:  By that you mean move to the merits?

2            THE COURT:  Yeah, move to the merits.

3            MR. VOGTS:  I presumed that's where Your Honor was

4    headed when I moved to the podium here.

5            My point was if Your Honor is inclined under Rule 65 to

6    consolidate and move to the merits, let's put this idea of

7    summary judgment off to the side because that's an entirely

8    different form of briefing and entirely different form of a

9    motion.

10           THE COURT:  But that is the merits.

11           MR. VOGTS:  Right.

12           THE COURT:  That is the merits.  I mean, I don't want

13   to litigate the preliminary injunction only to then if I don't

14   grant a preliminary injunction have to litigate the full

15   merits.  That seems to me to be wasting your time and mine and

16   your client's money.

17           And it seems to me to be much more efficient to get this

18   decided at the District Court level here and give you an option

19   to go to the Court of Appeals.  This is a good Circuit to go to

20   Court of Appeals on this kind of issue.  I don't know what

21   they'll do since I don't know what I'll do.  I can't possibly

22   tell you what they'll do, but it's a Circuit that understands

23   some of the points that you're making, some of those sort of

24   policy arguments which really aren't so much at issue here

25   since it's a question of whether ATF is within it's authority

1   or not.

2        I really can't decide whether ATF is within its

3   authority without having an argument about that.  To decide

4   that in the context of likelihood of success on the merits is

5   not to decide it.  It's to postpone that decision.  That's a

6   waste of your time.

7        To be perfectly frank, your motion for preliminary

8   injunction isn't strong enough to warrant spending time on it

9   when we could actually decide this case, decide it up, down,

10  sideways, decide it and I think that's what I, that's my job.

11  That's what I do for a living, I decide cases unless you go to

12  trial.  And so, you know, I think I can, I think I can move

13  ahead.  I can tell the Government get me the administrative

14  record, file your briefs, you file your oppositions, give you

15  another chance to argue, file your replies and let's decide it.

16       Let's get that whole schedule set up.  Let's do this

17  now.  As I say, you want to litigate elsewhere you can, but it

18  would be much faster if you did it here, but that's okay.

19            MR. VOGTS:  Your Honor, my point was a more practical

20  one.  I fully understand your desire to make things as

21  efficient as possible for the Court in that you want to get to

22  the merits.  But we can get to the merits with the present

23  motions for preliminary injunction on file with the

24  Government's opposition to those motions and then the

25  plaintiffs' replies to those motions and we needn't burden the

1  Court and the parties with summary judgment motions, statements

2  of material facts, responses to statement of material facts and

3  all of the stuff that Rule 56 requires in summary judgment

4  motions.  I'm trying to eliminate the amount of briefing and

5  paper that goes to the Court to get to the legal issues.

6         THE COURT:  I appreciate the point you make, but the

7  standard is so different that deciding without any fact record

8  isn't to decide the issue.  It's to decide only based on the

9  record that we have right now whether you have a right to

10 preliminary relief.

11        MR. VOGTS:  I'm to the merits.  Now I'm talking about

12 Your Honor --

13        THE COURT:  But I don't have enough.  I mean, I would

14 think that the defendant would say wait, wait, you can't decide

15 the merits without the record.  How can I go to the merits of

16 whether or not an agency has acted ultra vires without knowing

17 what the agency did?

18        MR. VOGTS:  I think what the agency did is clearly

19 reflected in the demand letter.  I don't know that there are

20 any factual matters that are necessary for the Court to

21 consider.

22        THE COURT:  There may not be.  I mean, what is the

23 administrative record in this matter beyond the record -- I'm

24 sorry -- beyond the letter?

25        MS. FARBY:  May I approach?

1          THE COURT:  Yes.

2          MS. FARBY:  Thank you, Your Honor.

3       There's, I don't believe there's a dispute that this

4   case is a case that can be decided on the basis of an

5   administrative record alone and the local rules.  The local

6   rules do not require statements of material fact or the other

7   kinds of filings that --

8          THE COURT:  Not an APA case.

9          MS. FARBY:  Exactly.  So this is a rather

10  straightforward APA case on the statutory question of ATF's

11  authority.  I can represent that the record will not be

12  thousands of pages.

13         THE COURT:  How big is it?

14         MS. FARBY:  It likely will be in the few hundred

15  pages total.

16         THE COURT:  What does that, I mean, is that federal

17  register things or what?

18         MS. FARBY:  Yes, Your Honor.  The notice that was

19  provided in advance of this letter being issued and the

20  materials that the agency relied upon in deciding to issue this

21  demand letter.

22         THE COURT:  How long will it take you to file the

23  administrative record?

24         MS. FARBY:  A few weeks, Your Honor.

25         THE COURT:  Why is that?

1          MS. FARBY:  Well, it's just a question of gathering

2   -- we anticipate filing the record and moving for summary

3   judgment at the same time.  If it's preferable to the Court we

4   could probably get the record filed in a week and then move for

5   summary judgment some time thereafter.

6          THE COURT:  I mean, I would do that because that

7   gives the plaintiffs more time to know what the record actually

8   is.  I mean, that gives us the right to shorten their time for

9   response without imposing on them a totally impossible task of

10  understanding an entire administrative record and writing a

11  brief at the same time.

12         MS. FARBY:  I think we could file our administrative

13  record within a week and we would still ask that the date for

14  our summary judgment motion I believe was September 23rd.  We

15  still think that's a reasonable date.  It's about a month

16  earlier than we would normally be required to file a responsive

17  pleading under the federal rules.  So we're certainly not

18  seeking to delay things.  We're just trying to make the

19  schedule as Your Honor said reasonable, but expedited.

20         THE COURT:  Well, okay, I have, I don't have in front

21  of me the dates that you suggested.  You suggested your brief

22  be filed on the 23rd of September and when would the plaintiffs

23  file their opposition?

24         MS. FARBY:  October 14th, Your Honor, which is three

25  weeks and we would certainly, if plaintiffs would agree, we

1   would certainly shorten that time frame especially if we

2   produce the record in advance of our summary judgment motion.

3              THE COURT:  How long did you want for a reply?

4              MS. FARBY:  We ask for November 2nd, Your Honor, just

5   over two weeks I believe.

6              THE COURT:  Ms. White, what are we doing the end of

7   October, beginning of November?

8              THE DEPUTY CLERK:  The end of October we are doing

9   the Pray motion hearings.

10             THE COURT:  What's the date of that?

11             THE DEPUTY CLERK:  26th, 27th, 28th.  The beginning

12  of November.

13             THE COURT:  What are we doing on the 24th or 25th?

14             THE DEPUTY CLERK:  Of October?

15             THE COURT:  Yes.  Well, it seems to me that what we

16  can do is just reduce the briefing time a bit.

17       I understand you have other cases going.  I would

18  suggest you tell those other Judges that they could send them

19  here and they'll be taken care of toot sweet ckck but if they

20  choose not to because don't they have huge case loads --

21             MS. FARBY:  Yes, Your Honor.

22             THE COURT:  -- down in those parts of the country?

23             MS. FARBY:  Yes, Your Honor, as we pointed out in our

24  motion to transfer in those cases.

25             THE COURT:  Huge case loads.  I mean, I have to feel

1   sorry for those Judges.  Tell them I extend my great respect.

2        If we had a hearing on this matter on the 25th of

3   October we could have the Government file it's reply by let's

4   say noon on the 21st which would mean that the plaintiffs would

5   have to shorten their time to file an opposition to something

6   like the 12th of October which is a Wednesday.  I would make it

7   noon on the 12th.  And then noon -- when did I say the 21st?

8           MS. FARBY:  For our reply brief, yes, Your Honor.

9           THE COURT:  Right.  And then we can hold a hearing on

10  the 25th.  We can do it either in the morning or the afternoon.

11       I'm not sure if the lawyers for the plaintiffs travel or

12  what.  Do you travel?

13          MR. VOGTS:  Whatever you choose, Your Honor, is fine.

14          THE COURT:  Well, I'd rather do it in the morning if

15  we can.

16       Do you travel, sir?

17          MR. GARDINER:  Well, from Virginia.  It might be

18  easier to do it in the afternoon, the traffic in the morning

19  getting here.

20          THE COURT:  Oh, the traffic is awful.

21          MR. GARDINER:  Not quite as bad midmorning.

22          MR. VOGTS:  I travel from Chicago.  It took me about

23  an hour and a half.

24          THE COURT:  It's much easier to get here from Chicago

25  than it is -- you're just a lucky duck.

1          All right.  Why don't we say two o'clock on the 25th.

2          I know I just caused you to gasp horribly but I think if

3    we move at that speed it will get us in a position to decide

4    this on the merits, get us a full record so that we don't have

5    to deal with preliminary relief and you can assure the Courts

6    in Texas that I will do my best.

7          MS. FARBY:  Your Honor, just to be clear.  For our

8    summary judgment brief, would it be due September 23rd as we

9    had proposed?

10         THE COURT:  Yes.  But the plaintiffs' response is due

11   on the 12th instead of the 14th.  And then your reply is due on

12   the 21st at noon, both of those at noon.  That's for my

13   advantage to tell you the truth.  That's just a small advantage

14   to the Court.  Look at that.  Isn't that nice.  And then we'll

15   have a hearing at two p.m. on the 25th.

16         Everybody can be here on the 25th who needs to be here

17   on the 25th?  Yes.

18         MS. FARBY:  One other question, Your Honor.

19         THE COURT:  Yes.

20         MS. FARBY:  Did the Court want to set a date for the

21   filing of the administrative record?

22         THE COURT:  That would be good if you offered one.

23   But the earlier you can do it, if you can do it in a week or so

24   that would be good because as I say, it gives the plaintiffs

25   more time so that the time I've taken from their reply won't be

1   missed.

2          MS. FARBY:  Thank you, Your Honor.

3          THE COURT:  So make a suggestion, talk to each other

4   and make a suggestion to me and that's the date we'll take in

5   about a week.

6       All right, can we do any more today?  Not today.

7       Thank you very much.

8          MR. VOGTS:  Thank you, Your Honor.

9          THE COURT:  Nice to see you all.  I'm looking forward

10  to it.  Interesting case.

11      (Proceedings concluded at 1:20 p.m.)

12

13                          -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____          _____
/S/Crystal M. Pilgrim, RPR                Date: September 14, 2011

| | |
|---|---|
| **–** | |
| **1/8** | |
| **-ooo  [1]   39/13** | |
| **/** | |
| **/s/Crystal  [1]    40/13** | |
| **1** | |
| 11-1401 [2]   1/4 3/1 | |
| 12:15 [1]   1/6 | |
| 12th [3]   37/6 37/7 38/11 | |
| 14 [1]   40/13 | |
| 1401 [2]   1/4 3/1 | |
| 14th [4]   7/14 11/8 35/24 38/11 | |
| 15th [2]   21/2 21/20 | |
| 1975 [1]   25/15 | |
| 1986 [1]   12/24 | |
| 1:20 [1]   39/11 | |
| **2** | |
| 20 [1]   2/4 | |
| 20001 [1]   2/8 | |
| 20004 [1]   1/18 | |
| 2011 [3]   1/6 23/9 40/13 | |
| 20531 [1]   2/5 | |
| 21st [3]   37/4 37/7 38/12 | |
| 22030 [1]   1/21 | |
| 23rd [3]   35/14 35/22 38/8 | |
| 24th [1]   36/13 | |
| 25th [7]   36/13 37/2 37/10 38/1 38/15 38/16 38/17 | |
| 26th [1]   36/11 | |
| 27th [1]   36/11 | |
| 28th [1]   36/11 | |
| 29th [1]   21/25 | |
| 2nd [1]   36/4 | |
| **3** | |
| 330 [1]   1/15 | |
| 3300 [1]   1/15 | |
| 333 [1]   2/8 | |
| 36 [1]   25/9 | |
| 3925 [1]   1/20 | |
| 3rd [1]   22/1 | |
| **4** | |
| 403 [1]   1/21 | |
| 4473 [2]   18/2 26/5 | |
| 4473s [1]   9/15 | |
| 4th [2]   21/16 22/2 | |
| **5** | |
| 56 [1]   33/3 | |
| 575 [1]   1/18 | |
| 5th [1]   22/2 | |
| **6** | |
| 60611 [1]   1/16 | |
| 65 [1]   31/5 | |
| 669 [2]   16/4 16/5 | |
| 6th [1]   22/2 | |
| **7** | |
| 758 [2]   16/2 16/3 | |
| 7th [1]   1/18 | |
| **9** | |
| 926 [1]   12/21 | |
| 9th [1]   21/15 | |

| | |
|---|---|
| **A** | |
| ability [2]   29/10 40/3 | |
| able [1]   14/22 | |
| about [31]   3/11 3/25 4/10 5/13 7/2 8/22 10/8 10/10 10/12 10/13 13/11 14/25 15/6 17/7 18/22 19/14 19/16 20/6 20/12 20/21 21/5 23/18 23/19 24/14 24/21 26/25 32/3 33/11 35/15 37/22 39/5 | |
| above [3]   6/9 40/3 40/6 | |
| absent [1]   6/15 | |
| Absolutely [2]   22/15 23/1 | |
| absolve [1]   23/11 | |
| absorbed [1]   18/12 | |
| acalling [1]   12/14 | |
| accordingly [1]   30/9 | |
| account [1]   22/22 | |
| acquired [1]   9/18 | |
| across [1]   14/13 | |
| act [6]   8/15 12/8 12/21 12/24 13/2 25/21 | |
| acted [1]   33/16 | |
| action [4]   3/1 14/18 40/8 40/10 | |
| actions [2]   27/12 27/16 | |
| actual [3]   10/10 23/12 23/14 | |
| actually [10]   8/16 14/8 14/12 17/16 18/10 23/21 25/2 25/6 32/9 35/7 | |
| add [1]   14/22 | |
| additional [3]   27/10 27/12 27/15 | |
| address [3]   5/12 6/1 7/21 | |
| addressed [2]   5/14 6/10 | |
| adhere [2]   12/13 12/14 | |
| administrative [10]   14/1 28/22 29/2 32/13 33/23 34/5 34/23 35/10 35/12 38/21 | |
| admit [2]   20/7 30/12 | |
| admitted [1]   6/1 | |
| adopt [1]   23/3 | |
| advance [2]   34/19 36/2 | |
| advancing [1]   16/13 | |
| advantage [2]   38/13 38/13 | |
| adverse [1]   9/5 | |
| affidavit [1]   7/8 | |
| afoul [2]   8/17 12/20 | |
| after [4]   3/14 5/8 15/1 23/15 | |
| afternoon [6]   3/8 6/4 6/5 22/8 37/10 37/18 | |
| against [1]   23/5 | |
| agency [4]   33/16 33/17 33/18 34/20 | |
| agent [4]   8/24 8/25 9/25 10/2 | |
| agents [1]   12/15 | |
| ago [1]   21/17 | |
| agree [3]   6/17 19/6 35/25 | |
| ah [1]   14/23 | |
| ah-ha [1]   14/23 | |
| ahead [4]   11/17 21/14 30/25 32/13 | |
| aided [1]   2/10 | |
| al [1]   3/2 | |
| all [22]   4/3 6/14 6/19 | |

| | |
|---|---|
| 7/17 10/3 13/5 14/24 15/4 16/15 16/17 16/24 16/25 17/7 19/17 19/23 20/23 24/16 26/24 33/3 38/1 39/6 39/9 | |
| alleged [4]   12/19 23/14 24/10 26/17 | |
| allows [1]   9/15 | |
| almost [1]   8/16 | |
| alone [2]   13/17 34/5 | |
| alphabetical [2]   9/16 26/9 | |
| already [14]   7/22 10/15 11/8 11/19 11/23 14/5 17/20 18/12 19/2 21/22 23/13 23/16 25/13 27/3 | |
| Alrighty [1]   22/3 | |
| also [3]   5/13 12/18 26/3 | |
| although [2]   20/4 25/2 | |
| am [4]   13/9 15/21 40/7 40/9 | |
| amount [4]   7/11 7/13 7/16 33/4 | |
| amounts [1]   8/8 | |
| analysis [2]   10/22 11/14 | |
| another [3]   15/4 18/21 32/15 | |
| anticipate [1]   35/2 | |
| anticipating [2]   28/3 28/4 | |
| any [17]   5/5 9/13 12/22 14/7 14/12 15/9 16/23 19/11 23/3 23/3 23/14 24/15 29/7 33/7 33/20 39/6 40/8 | |
| anything [2]   5/2 13/10 | |
| anyway [4]   14/13 17/1 21/14 25/14 | |
| APA [2]   34/8 34/10 | |
| apart [1]   7/20 | |
| appeal [3]   29/16 29/20 30/15 | |
| Appeals [3]   21/12 31/19 31/20 | |
| appear [1]   4/24 | |
| APPEARANCES [2]   1/13 2/1 | |
| appears [1]   3/18 | |
| appreciate [3]   11/14 20/17 33/6 | |
| approach [2]   12/9 33/25 | |
| are [37]   4/15 4/20 5/18 5/21 6/15 6/15 7/12 11/3 11/11 12/1 12/3 12/15 15/16 16/12 18/2 20/2 20/23 21/10 21/11 21/13 23/12 23/25 24/2 24/3 24/11 24/23 26/3 26/4 26/23 27/10 27/13 30/7 33/19 33/20 36/6 36/8 36/13 | |
| aren't [1]   31/24 | |
| argue [2]   13/7 32/15 | |
| argument [8]   3/11 3/24 4/24 23/20 26/23 26/24 26/25 32/3 | |
| arguments [4]   21/8 21/10 22/18 31/24 | |
| Arizona [2]   14/8 20/8 | |
| around [3]   13/24 16/14 30/18 | |
| as [44] | |

Case 1:11-cv-01401-RMC Document 58-8 Filed 02/07/12 Page 42 of 51

## A

ask [3]   7/18 35/13 36/4
asked [2]   23/2 27/10
associated [3]   10/25 11/7
 11/7
Association [1]   23/9
assure [1]   38/5
ATF [20]   3/18 8/4 8/17
 8/24 9/25 10/2 10/11
 10/23 12/1 12/8 12/14
 13/12 20/13 24/17 24/25
 25/11 25/25 26/8 31/25
 32/2
ATF's [3]   9/6 10/18 34/10
attorney [1]   27/14
August [2]   7/14 11/8
authority [8]   3/19 9/6
 10/11 10/18 12/11 31/25
 32/3 34/11
available [1]   8/21
Ave [1]   2/4
Avenue [1]   2/8
aware [2]   21/15 21/17
away [1]   20/24
awful [1]   37/20

## B

back [4]   18/7 18/14 18/15
 27/5
bad [1]   37/21
base [2]   18/24 19/10
based [2]   10/25 33/8
bases [1]   5/9
basically [2]   6/13 23/3
basis [4]   7/15 10/23
 11/23 34/4
be [79]
bear [1]   13/6
because [20]   7/19 8/17
 13/7 14/4 18/1 19/3 20/2
 21/17 22/23 23/4 23/5
 24/1 25/3 25/14 30/2
 30/16 31/7 35/6 36/20
 38/24
become [3]   4/1 4/2 4/9
been [13]   4/8 11/8 11/19
 14/5 18/12 23/25 24/19
 24/21 24/22 25/7 25/10
 25/14 27/20
before [4]   1/10 5/16
 20/21 22/14
beginning [2]   36/7 36/11
behalf [1]   6/6
being [2]   25/4 34/19
believe [9]   6/10 6/16 8/6
 15/16 26/4 27/10 34/3
 35/14 36/5
Bell [1]   1/14
best [2]   38/6 40/3
between [1]   21/20
beyond [5]   3/19 9/5 10/18
 33/23 33/24
big [1]   34/13
bit [7]   11/22 16/14 17/3
 17/8 21/17 21/20 36/16
board [1]   14/13
borne [1]   17/20
both [9]   3/10 5/2 8/14
 15/12 18/2 19/1 27/18
 28/2 38/12

bought [1]   18/8
Bridge [1]   1/20
brief [9]   4/16 6/11 15/18
 17/3 21/24 35/11 35/21
 37/8 38/8
briefed [2]   13/25 28/18
briefing [10]   5/14 27/19
 29/3 29/4 29/7 29/15
 30/16 31/8 33/4 36/16
briefs [3]   3/10 11/21
 32/14
bringing [1]   30/21
burden [5]   12/25 14/6
 23/11 26/19 32/25
burdens [5]   10/25 11/3
 12/7 24/9 24/11
burdensome [1]   11/3
business [14]   9/13 9/22
 10/6 11/2 11/24 16/23
 16/25 17/23 18/6 18/25
 19/8 24/8 24/12 25/22
buy [3]   18/16 19/7 20/8
buys [1]   20/7

## C

CA [1]   1/4
California [4]   14/10
 14/11 14/11 20/8
called [2]   9/17 9/20
came [1]   20/21
can [42]
can't [9]   11/5 14/3 16/24
 23/4 25/4 29/23 31/21
 32/2 33/14
cannot [2]   5/6 22/23
capture [1]   10/5
capturing [1]   9/21
care [1]   36/19
carry [1]   25/3
case [19]   3/18 4/12 5/4
 7/3 15/9 16/6 16/7 19/22
 21/11 25/6 30/13 32/9
 34/4 34/4 34/8 34/10
 36/20 36/25 39/10
cases [19]   4/23 4/23
 15/17 16/10 16/10 16/12
 16/13 16/21 19/18 21/16
 24/2 24/3 27/18 28/2 30/7
 30/22 32/11 36/17 36/24
cause [1]   10/1
caused [1]   38/2
Center [1]   8/6
certain [7]   5/3 7/23
 15/13 23/12 23/14 25/19
 26/9
certainly [7]   4/20 13/10
 16/11 21/17 35/17 35/25
 36/1
CERTIFICATE [1]   40/1
certify [2]   40/2 40/7
Chain [1]   1/20
chance [3]   15/14 30/22
 32/15
check [3]   7/2 17/21 18/14
Chicago [3]   1/16 37/22
 37/24
choose [2]   36/20 37/13
chooses [1]   9/14
chronological [1]   26/10
Circuit [16]   4/7 4/9 4/24
 4/25 5/7 6/9 15/9 16/9

16/11 16/13 21/16 23/6
 23/22 26/16 31/19 31/22
circuit's [1]   13/4
circumstance [1]   28/6
circumstances [1]   28/6
cite [4]   4/22 5/4 15/17
 15/25
cited [3]   16/10 16/10
 19/18
Civil [1]   3/1
ckck [1]   36/19
claim [3]   28/21 29/6 29/8
claims [2]   23/20 26/18
clear [3]   6/17 24/23 38/7
clearly [3]   6/25 7/1
 33/18
client [1]   6/8
client's [1]   31/16
clients [1]   19/1
close [2]   11/24 17/23
closes [1]   18/6
cognizant [1]   6/8
coin [1]   28/12
collectively [1]   16/16
COLLYER [1]   1/10
COLUMBIA [3]   1/1 2/7 4/1
come [5]   9/25 16/24 17/14
 20/2 21/19
comes [5]   7/9 8/24 8/25
 12/3 12/14
coming [1]   3/9
comment [1]   11/19
compensate [1]   7/3
complain [1]   19/16
complaining [2]   23/18
 24/14
complaint [4]   6/23 13/8
 13/10 13/23
complete [2]   26/6 30/16
completely [2]   16/22
 16/23
compliance [4]   4/19 4/20
 10/1 12/2
complicated [1]   27/8
comply [2]   7/16 18/23
computer [1]   2/10
computer-aided [1]   2/10
concept [1]   4/6
concern [1]   17/4
concerned [1]   20/6
concerns [1]   5/13
concluded [1]   39/11
conclusion [1]   13/22
CONFERENCE [1]   1/10
Congress [1]   13/11
consecutive [4]   9/13 9/22
 10/5 19/8
consequence [1]   17/12
consequences [2]   13/17
 13/18
consider [1]   33/21
considerable [1]   23/11
considered [1]   16/19
consistent [1]   16/12
consolidate [1]   31/6
consolidated [1]   14/18
constitute [1]   13/20
Constitution [1]   2/8
context [1]   32/4
continue [1]   18/13
continued [1]   2/1

**C**

continuing [2]   17/21 18/19
Control [4]   8/15 12/21 13/2 25/21
correct [2]   8/1 40/2
cost [9]   4/16 10/25 11/7 11/7 14/4 17/19 17/20 18/11 18/12
costs [6]   4/20 11/19 11/22 11/23 23/24 23/25
could [8]   12/5 14/13 29/10 32/9 35/4 35/12 36/18 37/3
counsel [5]   22/12 26/4 27/11 27/25 40/7
country [2]   16/24 36/22
couple [1]   19/18
course [4]   3/10 3/24 9/21 24/20
COURT [39]   1/1 2/6 2/6 2/7 4/23 5/5 5/5 5/7 6/1 11/21 16/12 17/4 17/6 17/19 18/21 19/1 19/18 19/21 19/22 20/22 21/12 23/2 23/8 28/16 28/19 29/3 29/9 30/3 31/18 31/19 31/20 32/21 33/1 33/5 33/20 35/3 38/14 38/20 40/5
courts [5]   6/9 23/7 24/5 26/15 38/5
created [1]   28/16
creating [1]   9/7
criteria [1]   4/4
CRYSTAL [2]   2/6 40/13
current [3]   22/21 22/25 25/22
customer [2]   19/6 20/1
customers [3]   19/2 19/12 19/20

**D**

D.C [7]   1/5 16/9 16/11 16/13 20/10 20/11 29/25
daily [1]   11/23
DANIEL [2]   2/2 3/6
data [2]   18/24 19/10
date [11]   3/25 9/18 26/11 29/8 35/13 35/15 36/10 38/20 39/4 40/5 40/13
dates [2]   12/3 35/21
day [11]   7/14 7/24 9/3 10/17 14/6 14/6 14/7 17/24 18/18 18/19 19/9
days [8]   9/13 9/22 10/6 18/8 18/15 18/16 19/8 25/22
DC [3]   1/18 2/5 2/8
deal [2]   15/19 38/5
dealer [5]   7/9 9/2 18/12 19/9 23/24
dealers [5]   12/12 17/10 17/14 17/17 19/12 19/13 19/15
deals [1]   8/18
dealt [1]   21/16
decide [13]   14/1 32/2 32/3 32/5 32/9 32/9 32/10 32/11 32/15 33/8 33/8

decided [2]   31/18 34/4
deciding [3]   13/9 33/7 34/20
decision [4]   6/8 23/9 29/23 32/5
defendant [4]   1/7 2/2 22/9 33/14
defense [1]   3/6
degree [1]   4/14
delay [3]   28/21 29/5 35/18
delayed [1]   27/20
demand [3]   17/13 33/19 34/21
Demonstrating [1]   28/24
denial [1]   29/16
deny [1]   29/19
Department [1]   2/4
depending [4]   9/14 9/23 18/11 29/9
desire [2]   30/1 32/20
did [10]   5/7 18/17 18/17 21/9 32/18 33/17 33/18 36/3 37/7 38/20
didn't [3]   14/20 18/16 21/7
different [14]   4/7 5/9 8/15 8/20 17/1 21/12 28/5 30/2 30/2 30/4 30/22 31/8 31/8 33/7
differently [1]   30/3
direct [1]   5/3
disagree [1]   11/16
disappeared [1]   15/2
discussed [1]   6/11
disingenuous [1]   21/21
dispose [1]   30/14
disposition [2]   26/11 30/13
dispute [1]   34/3
distributor [1]   9/19
DISTRICT [18]   1/1 1/1 1/11 2/7 2/7 4/1 4/23 5/4 5/5 5/7 6/9 16/11 24/5 27/16 27/17 30/3 31/18 40/5
districts [2]   27/13 28/5
do [43]
Docket [1]   1/4
does [11]   12/8 19/6 19/7 19/22 23/11 24/14 24/14 24/15 24/16 25/17 34/16
doesn't [7]   10/19 15/8 15/24 20/1 20/6 25/2 30/21
doing [5]   16/25 25/15 36/6 36/8 36/13
don't [40]   4/17 4/25 5/16 9/4 12/13 13/15 13/15 13/21 14/7 14/11 14/14 15/9 15/21 19/15 20/9 21/19 22/3 22/25 26/17 26/23 26/25 28/22 28/23 29/1 29/14 29/22 30/9 30/16 30/23 31/12 31/13 31/20 31/21 33/13 33/19 34/3 35/20 36/20 38/1 38/4
done [6]   4/2 12/4 14/2 30/14 30/20 30/25

down [6]   13/3 13/6 16/23 30/15 32/9 36/22
dry [1]   28/19
duck [1]   37/25
due [5]   17/7 19/17 38/8 38/10 38/11
dutifully [1]   19/8
duty [4]   17/16 17/17 17/18 17/18

**E**

each [2]   4/5 39/3
earlier [2]   35/16 38/23
easier [2]   37/18 37/24
easy [1]   18/1
economic [11]   4/15 5/2 6/24 7/1 7/3 12/25 23/3 23/10 24/9 26/15 26/16
effect [1]   23/16
effected [2]   7/10 26/21
effective [1]   7/14
efficient [2]   31/17 32/21
effort [1]   30/6
either [4]   10/18 26/9 30/21 37/10
elements [1]   13/5
eliminate [1]   33/4
else [2]   12/1 20/14
elsewhere [1]   32/17
emergency [2]   23/17 28/6
emphasis [1]   4/7
employed [1]   40/8
encumbrance [1]   10/17
end [6]   7/2 11/4 21/24 29/5 36/6 36/8
endorse [1]   20/19
enough [4]   15/16 21/20 32/8 33/13
enter [1]   29/3
entire [1]   35/10
entirely [3]   24/8 31/7 31/8
entity [1]   7/24
equally [1]   8/14
especially [1]   36/1
Esquire [7]   1/14 1/17 1/20 2/2 2/2 2/3 2/3
establish [1]   26/16
et [1]   3/2
even [6]   4/12 9/5 13/8 16/21 24/6 24/10
ever [1]   6/24
every [7]   10/15 11/22 18/13 18/13 18/19 26/5 26/7
everybody [4]   3/9 11/3 20/7 38/16
everything [1]   4/11
Everywhere [2]   5/4 16/22
evidence [2]   4/5 4/10
evolving [1]   6/12
exact [1]   25/11
exactly [2]   4/25 34/9
except [1]   29/12
Excuse [1]   20/7
existed [1]   12/23
existence [1]   6/23
expedited [6]   5/14 5/15 5/16 5/17 21/25 35/19
expedition [2]   20/20 28/9
expenses [1]   7/4

**E**

extend [1]   37/1
extension [1]   27/21

**F**

F.2d [2]   16/4 16/5
facia [2]   3/18 7/5
facility [2]   12/20 12/23
fact [4]   23/10 23/15 33/7
  34/6
factors [1]   14/25
facts [2]   33/2 33/2
factual [1]   33/20
failed [1]   27/11
faint [1]   20/24
fair [1]   25/2
Fairfax [1]   1/21
fairly [3]   7/15 9/13 9/22
far [1]   25/3
FARBY [4]   2/2 3/6 22/8
  22/10
faster [1]   32/18
favor [1]   4/6
fax [1]   12/1
federal [7]   16/21 16/22
  22/23 23/23 25/9 34/16
  35/17
federally [1]   8/18
feel [1]   36/25
few [3]   21/17 34/14 34/24
FFLs [5]   25/9 25/12 25/13
  25/25 26/3
figure [4]   11/10 15/5
  16/9 30/24
file [17]   17/14 17/15
  17/17 17/18 17/22 21/2
  28/17 32/14 32/14 32/15
  32/23 34/22 35/12 35/16
  35/23 37/3 37/5
filed [5]   17/23 27/12
  27/15 35/4 35/22
filing [3]   11/9 35/2
  38/21
filings [1]   34/7
financially [1]   40/9
find [9]   12/14 12/15
  12/17 13/14 15/17 16/11
  16/13 18/7 23/22
finding [1]   5/8
fine [2]   6/2 37/13
firearm [1]   12/22
firearms [7]   12/24 18/1
  18/2 23/24 25/9 26/6
  27/15
first [7]   8/13 8/16 14/24
  21/6 22/1 22/13 29/13
fish [1]   17/1
five [15]   7/10 7/24 9/3
  9/12 9/21 10/5 10/17 18/5
  18/6 18/8 18/15 18/16
  19/7 25/22 26/21
flaw [1]   5/11
floor [1]   9/24
focus [1]   3/22
Foothills [1]   27/15
footnote [1]   6/11
fora [1]   30/2
foregoing [1]   40/2
form [9]   9/15 18/2 24/17
  24/18 25/24 25/25 26/5

forms [1]   26/13

forward [6]   13/25 20/2
  21/19 29/12 30/19 39/9
FOUNDATION [4]   1/3 3/2
  6/7 28/14
four [8]   4/3 6/14 6/15
  6/19 7/10 13/5 14/25 28/4
fourth [1]   14/9
frame [1]   36/1
frank [1]   32/7
frankly [1]   29/10
Friday [3]   12/5 18/4 18/6
frivolous [1]   13/10
front [1]   35/20
full [2]   31/14 38/4
fully [3]   13/25 28/18
  32/20
further [3]   28/9 40/7
  40/9

**G**

GARDINER [7]   1/20 3/5
  14/19 14/20 14/21 14/22
  16/6
Gas [2]   15/11 15/12
gasp [1]   38/2
gathering [1]   35/1
gees [1]   14/6
general [1]   16/19
get [31]   3/21 5/14 11/8
  11/12 13/25 13/25 14/3
  14/8 14/12 15/18 20/25
  22/13 27/6 27/22 30/4
  30/14 30/14 30/19 30/22
  30/22 30/25 31/17 32/13
  32/16 32/21 32/22 33/5
  35/4 37/24 38/3 38/4
gets [1]   21/11
getting [6]   4/4 7/6 27/8
  28/21 29/6 37/19
give [2]   31/18 32/14
given [3]   9/14 14/7 16/10
gives [3]   35/7 35/8 38/24
glad [1]   15/19
go [6]   3/13 5/16 10/2
  10/3 11/17 18/7 18/14
  21/14 22/14 29/12 30/14
  30/15 31/19 31/19 32/11
  33/15
goes [4]   13/3 18/20 30/5
  33/5
going [18]   5/18 5/19 5/20
  10/3 10/7 11/11 12/3 17/8
  18/2 22/2 22/7 28/20
  28/23 28/23 28/24 29/1
  30/8 36/17
gone [1]   3/19
good [10]   3/8 5/22 6/4
  6/5 11/13 22/8 27/1 31/19
  38/22 38/24
goodness [2]   24/24 30/2
got [4]   11/10 18/5 18/6
  30/13
gotten [3]   3/10 18/17
  27/20
Government [28]   3/16 7/2
  11/20 12/20 12/23 13/7
  16/21 16/22 17/10 18/24
  19/9 19/10 20/24 21/2
  21/4 21/4 22/4 22/7 22/23

23/5 23/23 23/16 28/19
29/1 30/8 30/15 32/13
37/3
Government's [1]   32/24
grant [3]   13/18 14/7
  31/14
great [9]   5/3 13/18 15/8
  15/10 15/12 15/13 23/12
  23/14 37/1
greater [1]   18/11
greatest [1]   6/24
greatness [1]   13/19
group [1]   19/12
grows [2]   18/20 18/20
guess [3]   6/12 8/24 30/9
gun [25]   7/23 8/15 9/9
  9/14 9/15 9/18 9/19 9/23
  9/25 10/4 12/21 13/2 20/5
  24/25 25/21
guns [12]   7/20 7/21 10/16
  14/8 14/12 20/7 20/8
  24/21 24/22 24/24 25/1
  25/1

**H**

ha [1]   14/23
hac [1]   6/1
had [11]   6/24 7/13 15/14
  19/2 19/12 21/21 21/22
  23/16 24/24 37/2 38/9
half [1]   37/23
handguns [2]   25/11 25/14
hands [2]   5/19 28/25
happen [1]   15/23
hard [2]   12/15 18/24
hardly [1]   26/14
harm [36]   3/21 3/25 4/11
  4/14 4/21 5/1 5/8 6/10
  11/6 13/14 13/20 14/4
  15/7 15/8 15/8 15/10
  15/10 15/12 16/17 16/18
  18/19 18/20 18/21 19/5
  22/21 22/22 23/3 23/14
  23/17 23/19 23/21 23/23
  24/6 24/7 26/15 26/25
harms [1]   16/20
has [41]
have [100]
haven't [2]   3/10 24/10
having [5]   10/8 13/22
  17/13 20/12 32/3
he [5]   7/22 8/25 18/17
  20/7 27/22
head [1]   15/22
headed [1]   31/4
hear [1]   22/4
hearing [10]   3/16 7/7
  12/6 20/20 21/25 29/8
  37/2 37/9 38/15 40/9
hearings [1]   36/9
held [1]   24/5
here [24]   7/3 10/10 13/11
  15/5 15/21 15/21 17/8
  17/20 19/5 20/25 21/13
  24/10 27/15 27/19 30/22
  31/4 31/18 31/24 32/18
  36/19 37/19 37/24 38/16
  38/16
his [1]   28/1
hold [1]   37/9
Honor [41]

**H**

Honor's [2]   11/14 20/18
HONORABLE [1]   1/10
Hoping [1]   27/22
horribly [1]   38/2
hour [1]   37/23
how [17]   6/8 6/17 9/14
  13/21 14/8 14/12 18/25
  20/25 22/22 25/17 27/8
  29/1 29/9 33/15 34/13
  34/22 36/3
however [1]   28/12
huge [2]   36/20 36/25
hundred [1]   34/14

**I**

I'd [1]   37/14
I'll [1]   31/21
I'm [20]   3/20 5/22 10/7
  10/13 11/4 16/8 16/8
  16/15 16/15 20/5 26/24
  27/1 29/24 30/11 33/4
  33/11 33/11 33/23 37/11
  39/9
I've [2]   22/20 38/25
idea [3]   30/15 30/16 31/6
identical [3]   8/17 25/24
  27/13
identified [1]   11/25
identifying [1]   9/20
IL [1]   1/16
illegal [1]   20/5
imagine [1]   19/21
immediately [2]   29/16
  29/20
immense [1]   13/19
imminence [1]   23/17
imminent [1]   13/18
immunity [1]   23/5
important [2]   24/13 26/3
importantly [1]   24/18
impose [1]   24/8
imposed [2]   17/10 17/16
imposes [1]   17/13
imposing [1]   35/9
impossible [1]   35/9
inability [1]   23/22
INC [1]   1/3
inclined [1]   31/5
including [1]   4/23
income [4]   5/5 5/9 7/4
  19/4
Incorporated [1]   3/2
incredible [1]   12/12
incurred [5]   7/4 11/8
  11/19 11/23 14/5
indicated [4]   22/20 27/13
  27/25 28/1
individual [2]   9/3 18/15
inevitably [1]   28/21
information [12]   8/3 8/19
  9/21 12/22 18/23 19/8
  24/18 24/18 24/21 25/7
  25/11 25/16
injunction [19]   3/12 3/21
  4/4 4/13 5/11 7/9 9/6
  13/21 27/22 28/2 28/4
  29/14 29/17 29/19 30/19
  31/13 31/14 32/8 32/23
injunctive [5]   6/25 7/7

injury [7]   6/20 6/23 6/24
  7/1 7/1 7/6 26/16
insistence [1]   13/4
insistent [1]   4/3
inspect [1]   10/2
inspection [2]   10/1 12/3
instances [1]   12/12
instead [2]   27/7 38/11
intended [1]   13/12
intent [1]   28/1
intents [1]   9/17
interested [1]   40/10
Interesting [1]   39/10
involved [2]   14/5 21/18
involves [2]   17/25 18/1
ironclad [1]   12/9
irreparability [2]   14/3
  14/14
irreparable [26]   3/20
  3/25 4/11 4/14 4/21 5/1
  5/6 5/8 6/10 7/1 7/6 11/5
  13/14 13/17 13/20 15/7
  16/17 16/19 16/20 22/21
  23/4 23/21 24/1 24/7
  26/16 26/25
is [128]
isn't [6]   4/13 15/11
  16/19 32/8 33/8 38/14
issue [14]   10/21 13/11
  13/21 20/3 20/9 21/16
  22/25 23/21 29/13 30/2
  31/20 31/24 33/8 34/20
issued [1]   34/19
issues [1]   33/5
it [94]
it's [58]
its [3]   11/20 28/19 32/2
itself [2]   9/4 9/5

**J**

Jackson [1]   23/9
JAMES [2]   1/14 3/4
JESSICA [2]   2/3 3/7
Jim [2]   6/6 28/13
job [1]   32/10
JUDGE [3]   1/11 23/8 29/24
Judges [3]   30/3 36/18
  37/1
judgment [13]   28/17 28/18
  28/20 29/2 29/9 31/7 33/1
  33/3 35/3 35/5 35/14 36/2
  38/8
just [35]   3/13 4/17 5/2
  5/9 5/9 5/18 7/16 10/5
  10/9 11/4 11/10 11/16
  14/3 14/14 14/14 16/15
  16/25 20/22 22/12 23/19
  24/13 25/16 26/24 29/24
  30/8 30/19 30/25 35/1
  35/18 36/4 36/16 37/25
  38/2 38/7 38/13
Justice [1]   2/4

**K**

keep [7]   7/21 7/23 10/15
  18/6 24/19 26/9 28/19
keeping [8]   8/23 10/11
  10/14 10/15 10/25 12/12
  17/10 26/13
KENNETH [2]   1/6 3/2

kettle [1]   17/1
kind [8]   3/17 13/24 14/6
  15/7 21/16 25/7 26/15
  31/20
kinds [2]   7/24 34/7
know [34]   3/11 3/24 5/16
  6/13 11/2 11/20 12/5
  12/16 14/8 14/12 14/15
  15/9 15/16 15/23 15/24
  18/12 19/22 20/2 20/12
  21/10 21/11 22/3 27/5
  28/22 28/23 29/1 29/22
  30/23 31/20 31/21 32/12
  33/19 35/7 38/2
knowing [1]   33/16
knowledge [1]   12/10
known [1]   21/5
knows [3]   20/7 24/24 30/2

**L**

largely [2]   15/1 17/20
last [5]   18/8 21/6 25/1
  25/9 28/11
later [1]   23/25
law [12]   4/1 6/12 8/12
  9/15 12/2 13/12 15/9 16/9
  22/21 23/6 25/15 25/17
lawful [3]   20/9 20/10
  20/11
laws [1]   12/16
lawyer [1]   5/21
lawyers [1]   37/11
lead [1]   12/5
least [3]   3/17 6/18 7/6
  14/4 22/18
legal [1]   33/5
LEINWAND [2]   2/3 3/7
LESLEY [3]   2/2 3/6 22/8
less [1]   24/25
let [9]   4/16 7/18 9/1 9/1
  13/7 13/15 13/24 15/17
  22/4
let's [9]   18/5 19/6 22/13
  23/19 31/6 32/15 32/16
  32/16 37/3
letter [7]   17/13 17/13
  17/17 33/19 33/24 34/19
  34/21
level [2]   4/10 31/18
levels [1]   4/5
license [1]   12/6
licensed [1]   8/18
licensees [1]   25/9
light [1]   5/13
like [9]   20/22 21/11 22/2
  28/23 28/24 28/24 29/7
  30/17 37/6
likelihood [3]   16/18
  22/17 32/4
likely [2]   15/7 34/14
limited [1]   29/8
litigant [2]   6/13 6/24
litigate [6]   29/20 30/1
  30/18 31/13 31/14 32/17
little [5]   16/14 17/3
  17/8 21/17 21/20
live [1]   20/9
living [1]   32/11
LLP [2]   1/14 1/17
loads [2]   36/20 36/25
local [2]   34/5 34/5

**L**

location [1]   8/9
locations [1]   26/21
long [5]   20/23 24/19 26/8
 34/22 36/3
longer [1]   4/6
look [6]   12/3 12/16 15/14
 28/23 30/3 38/14
looking [2]   16/8 39/9
lose [2]   11/11 11/12
loses [1]   30/15
loss [5]   4/15 5/5 5/9
 18/22 24/8
losses [3]   7/4 23/10
 23/12
lost [3]   18/25 19/4 19/4
lots [2]   14/13 30/11
lucky [1]   37/25

**M**

machine [1]   2/10
made [2]   3/18 7/5
magnitude [1]   23/4
maintain [4]   4/20 24/19
 24/21 26/7
make [12]   6/13 14/23 15/4
 18/15 29/11 29/23 32/20
 33/6 35/18 37/6 39/3 39/4
makes [1]   9/23
making [2]   21/13 31/23
manufacturer [1]   9/19
many [2]   14/8 14/12
Martin [1]   1/14
Massachusetts [1]   2/4
masters [1]   30/7
material [3]   33/2 33/2
 34/6
materially [1]   9/5
materials [1]   34/20
matter [3]   33/23 37/2
 40/6
matters [1]   33/20
mavens [1]   19/23
may [15]   6/23 10/18 10/18
 11/4 11/4 14/22 23/10
 23/25 28/15 30/1 30/3
 30/4 30/4 33/22 33/25
maybe [5]   20/8 20/10
 20/14 21/25 22/1
me [36]   3/14 4/16 5/10
 7/18 9/1 9/1 10/14 10/19
 11/12 13/6 13/9 13/15
 13/19 13/22 14/23 15/8
 15/16 15/17 16/7 16/10
 16/16 17/1 19/2 20/7 22/4
 27/2 30/6 30/17 31/15
 31/17 32/13 35/21 36/15
 37/22 39/4 40/4
mean [18]   8/21 13/15
 13/21 14/20 16/8 27/14
 29/13 29/24 30/11 31/1
 31/12 33/13 33/22 34/16
 35/6 35/8 36/25 37/4
meet [2]   24/6 29/13
MELSON [2]   1/6 3/3
member [1]   23/8
members [1]   26/20
mention [2]   17/6 27/11
mentioned [1]   26/4
merchants [1]   19/19

memeber [2]   13/14 13/22
merely [1]   9/7
merit [2]   4/3 13/8
merits [27]   3/13 4/12
 5/14 10/11 11/11 11/12
 13/4 22/13 22/18 28/21
 29/6 29/15 29/21 30/17
 31/1 31/2 31/6 31/10
 31/12 31/15 32/4 32/22
 32/22 33/11 33/15 33/15
 38/4
Mexico [3]   14/9 20/8
 27/16
midmorning [1]   37/21
might [3]   20/4 29/5 37/17
mine [1]   31/15
Mining [1]   23/9
missed [1]   39/1
misunderstanding [1]   17/8
moment [1]   8/24
Monday [1]   18/4
money [5]   16/19 16/23
 16/25 30/8 31/16
month [3]   21/2 21/25
 35/15
moot [1]   29/10
more [21]   4/2 4/2 4/9 5/2
 7/19 7/23 7/23 8/25 9/2
 9/11 10/16 17/3 21/22
 24/24 28/7 29/5 31/17
 32/19 35/7 38/25 39/6
morning [5]   3/8 5/22
 37/10 37/14 37/18
most [3]   11/7 24/5 25/12
motion [17]   7/8 21/23
 21/23 27/19 28/4 28/17
 28/18 28/20 29/2 29/4
 29/9 31/9 32/7 35/14 36/2
 36/9 36/24
motions [6]   27/21 32/23
 32/24 32/25 33/1 33/4
movant [1]   23/11
move [12]   13/24 16/14
 28/1 29/15 30/19 30/25
 31/1 31/2 31/6 32/12 35/4
 38/3
moved [2]   27/18 31/4
moving [2]   6/24 35/2
MR [1]   16/6
Mr. [8]   6/1 14/19 14/20
 14/21 14/22 17/22 20/20
 21/23
Mr. Gardiner [4]   14/19
 14/20 14/21 14/22
Mr. Vogts [3]   6/1 17/22
 20/20
Mr. Vogts' [1]   21/23
Ms. [2]   22/10 36/6
Ms. Farby [1]   22/10
Ms. White [1]   36/6
much [9]   18/25 20/17
 22/22 24/25 31/17 31/24
 32/18 37/24 39/7
multiple [10]   7/12 9/11
 10/5 12/4 12/19 25/10
 25/13 25/18 25/18 26/13
must [4]   15/12 19/24 24/7
 24/8
my [17]   5/13 6/8 10/9
 10/22 15/22 19/1 21/1
 21/23 22/3 30/10 31/5

**N**

name [2]   9/16 26/10
names [1]   20/13
national [7]   1/3 3/1 6/6
 8/6 8/8 23/9 28/13
nature [2]   5/1 18/10
nearly [1]   26/14
necessarily [1]   28/4
necessary [3]   4/10 23/25
 33/20
need [9]   13/14 13/23
 13/24 13/25 13/25 14/1
 17/3 26/25 30/14
needn't [1]   32/25
needs [2]   30/13 38/16
neither [1]   40/7
never [3]   4/21 24/22
 24/24
new [6]   8/2 14/9 16/5
 20/8 25/3 27/16
next [2]   12/2 29/15
nice [3]   22/10 38/14 39/9
no [10]   1/4 4/6 5/19 8/25
 13/8 15/24 23/16 23/17
 30/15 30/16
nobody [1]   29/4
nonetheless [1]   13/22
noon [5]   37/4 37/7 37/7
 38/12 38/12
normally [1]   35/16
North [1]   1/15
not [60]
note [3]   21/4 24/13 26/3
notes [1]   40/4
notice [1]   34/18
noticed [1]   28/15
Noting [1]   8/23
November [5]   11/12 27/7
 36/4 36/7 36/12
now [21]   4/25 6/14 7/14
 7/22 11/10 16/22 17/25
 19/9 21/8 21/20 22/4
 25/12 25/25 29/3 29/16
 29/23 30/19 30/21 32/17
 33/9 33/11
NSSF [2]   23/2 26/20
nuisance [1]   14/5
number [5]   4/23 9/14 9/17
 9/24 26/12
numerical [1]   26/11
NW [3]   1/18 2/4 2/8

**O**

o'clock [2]   18/5 38/1
obligation [3]   12/23
 17/21 21/5
obviously [3]   17/3 17/18
 18/24
occurring [1]   13/2
October [8]   22/1 27/6
 35/24 36/7 36/8 36/14
 37/3 37/6
off [2]   15/22 31/7
offensive [2]   8/13 8/14
offered [1]   38/22
office [1]   8/4
official [1]   2/6
oh [5]   5/19 14/6 14/20

Case 1:11-cv-01401-RMC Document 21 Filed 08/07/12 Page 47 of 51

**O**

oh... [2]   30/4 37/20
okay [9]   5/20 20/18 21/1
 25/23 26/2 28/10 29/24
 32/18 35/20
old [2]   16/6 16/7
once [3]   8/25 9/25 17/18
one [35]   3/17 4/2 4/5
 6/15 7/19 7/23 8/13 9/11
 9/14 10/16 10/22 11/4
 11/20 14/12 15/4 17/25
 18/2 18/3 18/4 18/8 18/15
 19/11 20/12 20/19 21/12
 23/8 24/17 25/2 27/5
 27/10 27/16 27/16 32/20
 38/18 38/22
one-sided [1]   3/17
onerous [4]   9/13 9/22
 10/4 26/14
ones [1]   28/5
ongoing [6]   4/20 7/15
 11/22 12/7 17/18 18/10
only [9]   3/22 5/7 7/21
 11/18 19/12 19/13 27/10
 31/13 33/8
oOo [1]   39/13
oppose [1]   30/21
opposition [4]   22/17
 32/24 35/23 37/5
oppositions [1]   32/14
option [1]   31/18
order [6]   24/5 26/9 26/10
 26/10 26/11 28/2
organize [2]   9/15 9/16
other [11]   16/20 17/5
 17/5 26/17 30/11 30/22
 34/6 36/17 36/18 38/18
 39/3
otherwise [1]   40/10
ought [1]   20/19
our [11]   6/11 6/22 7/8
 24/23 27/19 35/12 35/14
 36/2 36/23 37/8 38/7
out [12]   3/18 11/10 15/5
 16/9 16/24 17/23 18/7
 18/17 20/10 24/11 30/24
 36/23
outcome [1]   40/10
outside [1]   16/10
over [4]   9/21 21/22 22/16
 36/5
overlook [1]   14/21
overtime [1]   18/7
own [1]   30/7
Owner's [1]   12/24

**P**

p.m [4]   1/6 12/4 38/15
 39/11
page [1]   24/17
pages [3]   34/12 34/15
 40/3
panel [2]   15/4 15/4
paper [1]   33/5
papers [2]   3/14 20/5
part [3]   7/18 13/13 25/21
particular [3]   4/10 9/2
 25/17
particularly [6]   4/9 4/12
 13/6 20/1 22/20 28/7

parties [2]   33/1 40/8
parts [3]   22/18 22/18
 36/22
passed [1]   12/24
past [3]   4/8 18/16 25/8
Pause [1]   15/20
people [2]   18/22 20/7
per [5]   4/21 12/25 23/3
 23/4 23/7
perfectly [4]   20/9 20/10
 30/12 32/7
perhaps [2]   10/17 10/17
period [4]   7/25 9/3 10/17
 25/19
periods [1]   29/4
permission [2]   5/25 14/19
permits [1]   13/12
person [5]   7/24 9/12 9/24
 10/16 18/8
personal [1]   12/10
personally [1]   16/20
persons [1]   9/24
PILGRIM [2]   2/6 40/13
pistols [1]   25/10
place [2]   17/24 25/13
plaintiff [9]   1/4 1/14
 4/3 5/18 23/2 24/9 26/14
 27/20 27/25
plaintiff's [3]   3/24
 22/12 22/18
plaintiffs [22]   3/4 3/15
 3/15 3/17 4/15 4/22 14/16
 23/13 23/15 24/10 26/17
 27/14 28/8 28/11 29/13
 30/7 35/7 35/22 35/25
 37/4 37/11 38/24
plaintiffs' [7]   26/4
 27/11 27/19 27/25 29/6
 32/25 38/10
pleading [1]   35/17
Please [1]   11/16
pled [1]   6/22
podium [2]   14/19 31/4
point [9]   5/12 8/21 19/14
 19/19 20/17 25/2 31/5
 32/19 33/6
pointed [2]   17/23 36/23
points [3]   10/19 17/5
 31/23
policy [1]   31/24
politely [1]   11/16
portion [1]   14/4
position [4]   5/1 13/16
 16/12 38/3
positive [4]   6/13 6/19
 13/5 16/16
possibility [2]   4/5 21/5
possible [2]   20/21 32/21
possibly [2]   27/24 31/21
postpone [1]   32/5
powder [1]   28/19
practical [1]   32/19
Pray [1]   36/9
precise [1]   21/7
precisely [2]   25/20 25/21
predates [1]   16/6
preferable [1]   35/3
preliminary [28]   3/12
 3/21 5/11 6/25 7/7 7/9
 10/10 10/13 10/14 10/19
 10/21 10/24 10/24 11/5

parties [3]   13/1 13/6 28/1 28/3 29/14
 29/17 29/19 30/18 31/13
 31/14 32/7 32/23 33/10
 38/5
prepare [1]   17/21
prepared [2]   11/25 26/24
present [2]   13/20 32/22
presumably [3]   21/9 21/15
 22/16
presumed [1]   31/3
presumes [1]   29/3
pretty [1]   11/13
prevent [1]   13/2
previously [1]   40/6
prima [2]   3/18 7/5
primarily [1]   11/19
privacy [6]   19/5 19/15
 19/16 19/20 20/2 20/6
pro [1]   6/1
probably [1]   35/4
problem [1]   10/7
problematic [1]   29/5
procedures [1]   4/19
proceedings [3]   2/10
 39/11 40/5
produce [1]   36/2
produced [1]   2/10
prohibit [2]   24/14 24/15
prohibits [1]   12/21
prompt [1]   30/13
proposal [1]   21/1
propose [3]   20/22 20/24
 27/2
proposed [7]   21/6 22/12
 27/3 27/5 28/7 28/15 38/9
proposing [1]   27/11
proposition [1]   16/19
Protection [1]   12/24
prove [1]   23/25
provide [1]   26/18
provided [2]   34/19 40/4
proving [1]   23/12
provisions [1]   8/15
purchaser [3]   9/16 24/16
 26/10
purchaser's [2]   19/15
 19/16
purchasing [3]   19/3 20/5
 24/16
purposes [2]   9/18 10/14
put [4]   5/15 7/13 24/11
 31/6
putting [1]   7/15

**Q**

qualifying [4]   18/9 18/14
 18/16 19/7
quantify [1]   18/25
question [9]   10/9 22/16
 22/21 24/15 24/16 31/25
 34/10 35/1 38/18
quickly [2]   5/15 14/1
quite [6]   4/10 6/17 14/3
 25/4 29/10 37/21
quote [1]   4/16

**R**

raise [2]   19/20 20/1
rather [5]   28/1 29/20
 30/14 34/9 37/14
reached [1]   13/22

**R**

reaction [1]   3/17
read [3]   3/24 4/17 6/12
reading [2]   3/14 16/15
ready [1]   11/8
real [2]   3/10 17/20
reality [1]   11/22
really [8]   5/8 6/15 10/3
 12/8 26/17 30/16 31/24
 32/2
rearrange [1]   11/9
reasonable [4]   10/1 28/7
 35/15 35/19
reasonably [3]   5/15 5/16
 5/17
recently [3]   4/1 4/9 23/8
recognize [1]   30/12
recognized [2]   23/13 28/9
record [25]   9/7 12/12
 14/1 26/5 27/8 28/23 29/2
 30/17 32/14 33/7 33/9
 33/15 33/23 33/23 34/5
 34/11 34/23 35/2 35/4
 35/7 35/10 35/13 36/2
 38/4 38/21
recorded [1]   2/10
records [7]   9/1 10/2 10/3
 10/12 18/15 24/19 24/23
recoupe [1]   23/22
recouped [2]   4/21 22/23
recoupment [1]   24/1
recovered [2]   5/6 23/4
reduce [1]   36/16
reflected [1]   33/19
regard [4]   12/18 17/6
 20/18 21/22
regional [1]   8/4
register [1]   34/17
regulation [2]   25/17 26/8
regulations [1]   12/16
regulatory [1]   11/3
Reiss [1]   3/6
rejected [1]   23/7
related [1]   40/7
relatively [1]   18/1
relied [1]   34/20
relief [16]   6/25 7/7
 10/10 10/13 10/14 10/20
 10/22 10/24 10/25 11/5
 13/1 13/6 28/22 29/8
 33/10 38/5
relying [1]   4/15
remains [1]   15/3
remarked [1]   23/8
repeatedly [1]   23/7
replies [2]   32/15 32/25
reply [7]   15/18 21/24
 36/3 37/3 37/8 38/11
 38/25
report [7]   8/19 8/20 8/22
 10/22 18/17 25/10 25/12
Reporter [2]   2/6 2/6
reporting [9]   7/12 8/23
 12/18 12/19 12/22 12/23
 17/9 20/15 21/5
reports [12]   9/1 11/24
 11/25 12/1 12/4 12/20
 17/14 17/15 17/17 17/18
 17/22 17/23
represent [2]   19/1 34/11

represents [1]   5/1
request [4]   5/11 10/24
 10/24 27/19
require [3]   10/11 24/17
 34/6
required [14]   4/20 24/19
 24/21 24/22 25/4 25/7
 25/10 25/15 26/4 26/5
 26/6 26/8 26/16 35/16
requirement [21]   6/10 7/6
 7/12 7/14 7/17 7/19 7/20
 8/2 8/3 8/11 8/16 8/18
 9/4 12/18 17/9 17/9 17/12
 20/16 23/16 24/13 25/22
requirements [5]   4/19
 6/14 7/19 12/13 17/6
requires [3]   20/16 28/9
 33/3
requiring [2]   25/12 25/25
resolved [1]   27/6
respect [4]   17/7 19/17
 25/25 37/1
respectfully [1]   27/9
respond [3]   20/25 27/21
 30/9
response [4]   21/2 24/20
 35/9 38/10
responses [1]   33/2
responsive [2]   13/23
 35/16
result [4]   4/7 17/13
 18/22 30/23
results [2]   30/4 30/23
retail [2]   7/9 26/21
retain [1]   26/5
review [2]   5/3 10/4
reviewed [1]   8/21
revocation [1]   12/6
revolvers [1]   25/11
RICHARD [2]   1/20 3/5
RIESS [1]   2/2
rifle [3]   18/14 18/16
 19/3
rifles [8]   7/11 9/12 18/9
 19/7 24/15 24/16 25/12
 26/1
right [21]   3/13 6/21 9/8
 9/10 14/25 15/6 17/19
 19/18 19/19 19/23 19/24
 20/23 21/8 22/4 31/11
 33/9 33/9 35/8 37/9 38/1
 39/6
rights [6]   19/5 19/15
 19/16 19/20 20/2 20/6
Road [1]   1/20
ROSEMARY [1]   1/10
RPR [2]   2/6 40/13
rug [1]   25/5
rule [4]   23/3 23/7 31/5
 33/3
rules [4]   29/9 34/5 34/6
 35/17
running [1]   8/17
runs [1]   12/20

**S**

said [4]   5/5 19/25 23/10
 35/19
sake [1]   25/16
sale [6]   9/11 10/15 17/24
 17/25 17/25 26/11

sales [2]   17/17 7/12 9/20 9/23
 9/24 10/5 10/23 11/24
 12/4 12/19 12/22 18/22
 25/10 25/13 25/18 25/18
 26/13 27/15
same [12]   7/24 9/12 10/4
 10/16 18/8 19/9 25/11
 25/18 25/21 27/14 35/3
 35/11
SANDRA [2]   2/3 3/6
say [20]   5/10 5/19 6/13
 8/25 13/15 14/23 16/21
 18/5 19/6 19/23 20/4
 21/19 23/20 30/17 32/17
 33/14 37/4 37/7 38/1
 38/24
saying [2]   7/3 29/20
says [7]   4/16 4/19 13/7
 15/10 15/12 15/12 26/20
scale [3]   4/6 4/11 15/1
schedule [14]   3/11 5/17
 20/21 22/3 22/12 22/14
 27/2 27/4 28/7 28/15 29/3
 29/7 32/16 35/19
SCHRAIBMAN [2]   2/3 3/7
se [5]   4/21 12/25 23/3
 23/4 23/7
second [4]   8/13 17/24
 18/4 19/3
Section [1]   12/21
see [13]   9/1 9/1 9/4 11/5
 13/13 13/21 14/14 15/17
 15/21 22/10 22/17 29/7
 39/9
seeking [1]   35/18
seem [2]   10/19 16/14
seemed [1]   3/14
seems [17]   5/10 10/13
 11/12 13/6 13/9 13/11
 13/19 13/22 15/1 16/7
 16/16 17/1 30/6 30/17
 31/15 31/17 36/15
seen [2]   15/3 29/5
sell [5]   7/11 18/4 18/5
 24/22 24/23
seller [7]   7/20 9/14 9/15
 9/23 10/4 12/25 14/12
sellers [1]   12/7
selling [1]   24/15
send [1]   36/18
sending [1]   8/22
sense [2]   8/17 11/18
sent [6]   8/3 12/1 12/3
 18/23 19/9 20/13
sentence [3]   4/17 4/18
 4/18
separate [4]   8/11 17/12
 27/12 28/5
September [6]   1/6 21/25
 35/14 35/22 38/8 40/13
serial [2]   9/17 26/12
serious [2]   5/11 13/11
set [4]   17/11 17/19 32/16
 38/20
setting [1]   18/11
severe [5]   24/7 24/8
 24/11 26/15 26/19
shake [1]   16/14
sharpened [1]   21/11
she [4]   7/23 8/25 15/24
 18/17

Case 1:11-cv-01401-RMC   Document 50   Filed 02/07/12   Page 49 of 51

**S**

SHOOTING [4]   1/3 3/2 6/7 28/14
short [1]   28/2
shorten [3]   35/8 36/1 37/5
shorthand [1]   2/10
should [8]   3/12 3/12 3/22 5/14 22/22 28/19 30/19 30/25
show [3]   4/3 4/10 23/24
showing [5]   6/14 6/19 7/5 13/5 16/17
shown [2]   3/15 28/8
shut [2]   16/23 16/24
side [1]   31/7
sided [1]   3/17
sides [1]   3/10
sideways [1]   32/10
significance [1]   25/3
significant [2]   11/23 14/4
simply [1]   23/6
since [6]   10/14 17/4 21/5 25/15 31/21 31/25
single [1]   26/6
sir [4]   5/21 6/5 22/6 37/16
sit [4]   10/3 13/24 15/5 30/18
sitting [2]   6/9 19/10
situation [2]   6/11 18/3
skeptical [1]   3/20
sliding [3]   4/6 4/11 15/1
slightly [2]   4/7 21/12
small [1]   38/13
Smoking [2]   5/4 16/22
so [51]
so-to-speak [1]   28/20
sold [12]   7/23 7/24 9/2 10/16 14/8 14/12 18/3 18/14 24/23 24/25 24/25 25/1
some [12]   4/13 4/23 6/20 6/23 12/11 13/11 16/25 20/20 22/17 31/23 31/23 35/5
somebody [4]   5/19 18/7 19/6 19/7
someone [1]   20/6
something [6]   11/20 14/22 17/2 20/14 22/2 37/5
sorry [2]   33/24 37/1
sort [7]   5/10 7/22 11/10 13/3 15/3 16/13 31/23
Southern [1]   14/11
sovereign [2]   22/24 23/5
speak [6]   12/10 22/7 24/2 24/3 28/11 28/20
specific [1]   25/12
specifically [1]   15/10
specifics [1]   26/18
speed [1]   38/3
spend [1]   30/8
spending [1]   32/8
SPORTS [4]   1/3 3/2 6/7 28/14
Sportsman [1]   26/20
staggered [1]   9/20
standard [4]   23/2 24/7

standing [9]   13/16 19/16 19/19 19/23 19/24 19/24 19/25 20/23 26/8
state [1]   14/9
stated [1]   40/6
statement [1]   33/2
statements [2]   33/1 34/6
states [6]   1/1 1/11 2/7 7/10 26/21 40/4
STATUS [1]   1/10
statute [2]   13/16 25/20
statutory [1]   34/10
stenographic [1]   40/4
still [5]   4/4 13/14 16/18 35/13 35/15
store [3]   8/24 9/9 9/25
stores [2]   7/9 7/10
straightforward [1]   34/10
Street [1]   1/18
strong [5]   4/12 6/15 6/18 6/18 32/8
stuff [1]   33/3
subject [3]   6/12 7/12 24/1
submission [1]   12/20
submit [3]   24/17 24/21 25/25
submitted [3]   7/8 25/8 28/16
substantial [3]   7/11 7/13 7/16
substantiate [1]   26/18
success [2]   22/17 32/4
such [3]   4/6 12/8 23/23
sue [1]   20/12
suffer [1]   15/7
suffered [1]   22/23
sufficient [5]   3/21 4/13 6/14 7/5 24/6
suggest [4]   21/24 22/2 28/18 36/18
suggested [2]   35/21 35/21
suggestion [3]   20/19 39/3 39/4
suggests [3]   15/8 23/16 26/14
Suite [2]   1/15 1/21
summary [17]   4/16 4/17 4/17 4/18 28/17 28/18 28/20 29/2 29/9 31/7 33/1 33/3 35/2 35/5 35/14 36/2 38/8
support [4]   4/24 7/8 9/6 29/2
supports [1]   4/25
suppose [1]   14/13
Supreme [3]   19/18 19/21 19/22
sure [4]   8/10 15/21 18/15 37/11
sustained [1]   5/7
Swanson [1]   1/14
sweep [1]   25/4
sweet [1]   36/19
system [6]   11/9 17/11 17/15 17/19 18/7 18/11
systems [1]   25/13

**T**

take [4]   7/20 22/22 34/22

taken [5]   23/16 36/19 38/25 40/5 40/9
takes [1]   17/24
talk [5]   5/18 5/20 23/19 26/25 39/3
talked [2]   18/21 20/21
talking [7]   10/9 10/10 10/12 10/13 11/4 17/7 33/11
talks [1]   15/6
task [3]   9/13 9/22 35/9
tee [1]   5/10
tell [8]   9/1 24/25 27/2 31/22 32/13 36/18 37/1 38/13
telling [1]   16/15
ten [1]   25/1
term [1]   11/9
terms [1]   4/11
Texas [4]   14/8 20/8 27/17 38/6
than [13]   4/8 5/2 5/9 7/19 7/23 7/23 8/20 21/12 21/22 28/7 29/20 35/16 37/25
Thank [10]   3/9 6/3 22/5 22/6 22/11 28/10 34/2 39/2 39/7 39/8
that [246]
that's [32]   5/10 8/11 8/22 8/23 10/7 10/23 11/20 12/5 14/7 16/25 16/25 17/2 17/25 18/1 18/12 20/9 20/13 20/15 22/25 30/4 30/23 31/3 31/7 32/5 32/10 32/10 32/11 32/18 35/15 38/12 38/13 39/4
their [14]   4/16 10/7 18/23 19/20 20/13 23/20 24/19 26/18 30/7 30/8 35/8 35/23 37/5 38/25
them [25]   9/16 10/8 12/14 12/14 12/15 12/17 13/7 13/19 13/19 16/15 16/24 19/2 21/18 21/19 24/11 24/14 24/17 24/22 24/23 26/7 26/9 26/9 35/9 36/18 37/1
then [17]   7/14 8/3 17/22 18/4 18/17 19/5 20/24 20/24 24/19 29/14 31/13 32/24 35/4 37/7 37/9 38/11 38/14
there [25]   3/20 4/4 4/13 5/8 6/18 6/25 13/5 13/10 14/3 14/7 15/3 15/16 18/19 18/19 19/24 19/25 20/19 23/16 23/17 24/2 24/3 25/3 30/1 33/19 33/22
there's [14]   3/11 7/19 7/20 8/2 8/3 11/5 13/8 13/9 14/15 15/9 17/7 18/21 34/3 34/3
thereafter [3]   7/15 29/11 35/5
therefore [1]   17/14
these [11]   4/19 7/11 8/18 9/2 9/12 11/24 12/7 12/19

**T**

these... [3]   24/10 26/13
26/13
they [53]
they'll [4]   20/25 31/21
31/22 36/19
they're [9]   7/15 8/14
8/16 11/22 19/3 19/23
23/17 24/14 26/6
they've [5]   7/13 19/4
19/4 27/5 28/16
thing [9]   3/22 7/22 14/7
14/14 17/5 20/12 22/19
29/15 30/20
things [6]   4/2 30/3 30/11
32/20 34/17 35/18
think [32]   3/25 4/17 4/25
5/13 6/22 7/5 11/2 13/1
14/25 15/1 15/6 15/7
16/20 17/2 17/7 19/15
19/18 21/20 24/13 27/1
28/6 29/5 30/19 30/24
32/10 32/12 32/12 33/14
33/18 35/12 35/15 38/2
third [1]   19/5
this [61]
thoroughly [1]   17/3
those [23]   9/21 10/5
10/19 11/25 12/4 16/20
23/12 23/24 25/16 26/7
27/18 27/21 28/2 28/6
30/21 31/23 32/24 32/25
36/18 36/22 36/24 37/1
38/12
though [1]   17/16
thought [2]   3/22 19/12
thousands [1]   34/12
threaten [2]   24/7 24/11
three [6]   6/16 6/16 6/16
7/10 28/5 35/24
through [2]   10/4 18/7
throw [1]   5/19
Thursday [1]   1/6
time [29]   7/13 7/16 12/2
18/13 18/13 21/20 21/21
25/18 25/19 27/21 28/16
29/4 30/6 30/10 30/18
31/15 32/6 32/8 35/3 35/5
35/7 35/8 35/11 36/1
36/16 37/5 38/25 38/25
40/5
today [8]   3/23 15/5 21/3
24/25 25/1 27/22 39/6
39/6
together [2]   5/17 27/8
told [2]   19/2 19/2
tomorrow [1]   21/23
too [2]   16/11 20/11
took [1]   37/22
toot [1]   36/19
top [2]   13/23 15/22
toss [1]   28/12
total [3]   7/10 26/21
34/15
totally [1]   35/9
toward [1]   21/24
Tracing [1]   8/6
track [11]   7/21 7/23 8/23
10/14 10/15 10/15 11/1
17/10 23/24 24/22 26/13

tracking [1]   25/13
traffic [2]   37/18 37/20
transaction [5]   9/17
12/22 26/6 26/7 26/12
transcript [3]   1/10 2/10
40/3
transcription [1]   2/10
transfer [3]   27/18 27/20
36/24
travel [4]   37/11 37/12
37/16 37/22
trial [1]   32/12
trouble [1]   22/20
true [1]   40/2
truth [1]   38/13
trying [4]   15/5 16/8 33/4
35/18
Turns [1]   20/10
two [17]   4/2 6/16 9/2
14/15 17/5 18/1 19/7 21/3
21/14 24/23 24/25 27/12
27/12 27/15 36/5 38/1
38/15
types [1]   7/11

**U**

U.S [1]   2/4
ultra [1]   33/16
under [6]   8/11 8/15 25/4
28/6 31/5 35/17
undercut [1]   13/15
undercuts [1]   23/20
underlying [1]   13/8
understand [10]   3/16 8/21
11/15 13/13 19/11 19/14
23/20 30/1 32/20 36/17
understanding [1]   35/10
understands [1]   31/22
undoubtedly [1]   27/23
unequal [1]   4/5
UNITED [4]   1/1 1/11 2/7
40/4
unless [3]   12/23 13/17
32/11
unlicensed [1]   9/12
unrecoverable [2]   23/10
24/6
until [2]   11/10 23/15
up [15]   3/25 5/10 5/19
7/13 17/11 17/14 17/19
18/11 20/24 20/25 29/5
30/15 30/23 32/9 32/16
upon [1]   34/20
us [3]   35/8 38/3 38/4
use [2]   11/9 29/1

**V**

VA [1]   1/21
value [1]   14/5
Venable [2]   1/17 5/23
venue [1]   27/18
verification [2]   17/11
17/22
verified [1]   6/22
VERROCCHIO [3]   1/17 3/4
5/23
versed [1]   12/15
versus [2]   3/2 23/9
very [8]   3/20 5/10 7/11
18/24 20/17 21/11 25/3
39/7

Page 150 of 51

**V** (cont.)

VINCENT [3]   1/17 3/4 5/23
violation [5]   12/2 12/5
13/2 13/15 13/16
vires [1]   33/16
Virginia [3]   8/7 8/22
37/17
virtually [2]   25/24 27/13
VOGTS [7]   1/14 3/4 6/1
6/6 17/22 20/20 28/13
Vogts' [1]   21/23
volume [1]   9/23

**W**

Wabash [1]   1/15
wait [2]   33/14 33/14
waited [1]   23/15
Walton [1]   23/8
want [12]   5/12 20/1 20/6
26/23 26/24 30/9 30/24
31/12 32/17 32/21 36/3
38/20
wanted [3]   5/29 17/5 17/5
wanting [3]   18/23 18/23
20/13
wants [1]   28/11
Warehouse [1]   26/20
warrant [3]   7/6 10/2 32/8
9/18 12/24 17/6 17/7 22/1
31/3 31/5 32/19 34/18
35/14 40/9
was [14]   3/22 5/8 6/8
Washington [9]   1/5 1/18
2/5 2/8 8/4 8/5 20/10
20/11 29/25
wasn't [1]   16/23
waste [4]   30/6 30/9 30/18
32/6
wasting [1]   31/15
way [5]   13/16 16/6 16/15
30/4 30/8
ways [1]   26/17
we [75]
we'll [3]   7/3 38/14 39/4
we're [5]   10/9 10/10
10/12 35/17 35/18
we've [3]   24/20 24/24
27/9
weapons [1]   9/3
Wednesday [1]   37/6
week [11]   21/22 21/22
21/23 22/1 22/1 25/1
27/10 35/4 35/13 38/23
39/5
weeks [5]   21/3 21/14
34/24 35/25 36/5
well [25]   4/2 5/19 8/8
8/14 9/7 11/4 11/14 12/15
14/24 15/11 17/2 20/4
20/13 20/15 22/13 24/20
27/3 27/9 29/12 29/24
35/1 35/20 36/15 37/14
37/17
were [6]   4/22 21/15 21/17
21/18 28/3 28/4
weren't [1]   12/4
West [2]   8/7 8/22
Western [1]   27/17
what [41]
what's [3]   9/16 22/21
36/10

**W**

whatever [6]   3/8 11/9
 16/17 22/22 23/24 37/13
when [9]   5/1 16/21 20/1
 21/6 21/11 31/4 32/9
 35/22 37/7
where [7]   5/5 13/4 18/3
 18/10 22/25 28/7 31/3
where's [1]   14/9
whether [14]   3/12 3/20
 10/11 10/16 10/21 10/22
 11/11 23/21 23/22 29/13
 31/25 32/2 33/9 33/16
which [30]   3/21 4/1 4/24
 5/4 5/21 7/18 7/21 7/22
 8/2 8/6 9/17 9/18 12/21
 16/9 16/13 20/21 21/2
 21/16 23/20 23/25 26/5
 26/20 27/6 27/6 28/17
 31/24 35/24 37/4 37/6
 40/8
while [5]   4/4 10/17 10/17
 13/7 28/3
White [1]   36/6
who [8]   5/18 6/1 8/24
 19/2 20/6 27/14 28/11
 38/16
Who's [1]   22/7
whoever [1]   30/15
whole [6]   22/19 25/3
 26/23 26/24 26/25 32/16
whom [1]   7/21
why [4]   3/21 22/25 34/25
 38/1
will [15]   5/3 6/1 6/2
 15/4 15/18 17/20 18/2
 21/12 21/21 21/23 34/11
 34/14 34/22 38/3 38/6
willing [1]   30/12
win [4]   10/18 11/4 11/11
 11/12
Winter [3]   15/6 16/6 16/8
Winter's [1]   6/8
Winters [1]   15/1
Wisconsin [2]   15/11 15/12
wish [2]   28/12 30/7
wishes [1]   13/12
within [13]   7/24 9/3 9/9
 9/12 10/5 10/16 18/16
 19/7 25/18 25/22 31/25
 32/2 35/13
without [6]   3/15 32/3
 33/7 33/15 33/16 35/9
won't [2]   4/13 38/25
wonderful [1]   5/21
work [2]   12/15 25/17
world [1]   16/14
worry [1]   10/8
worthy [2]   10/19 13/1
would [41]
write [1]   7/2
writing [1]   35/10
wrote [1]   11/20

**Y**

Yeah [2]   21/7 31/2
year [3]   8/25 9/25 21/6
years [2]   21/17 25/9
yes [17]   5/24 12/12 13/3
 14/17 14/20 16/1 16/7
 29/18 34/15 34/18 36/15
 36/21 36/23 37/8 38/10
 38/17 38/19
yet [2]   3/11 29/4
yield [1]   14/19
you [119]
you're [7]   11/2 14/25
 16/12 21/8 29/20 31/23
 37/25
you've [1]   16/10
your [76]